IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AIRBUS SAS,<br>AIRBUS DS GOVERNMENT SOLUTIONS, INC.,<br>AIRBUS HELICOPTERS, INC.,<br>AIRBUS U.S. SPACE & DEFENSE, INC.,<br>AIRBUS GROUP, INC.,<br>and AIRBUS DEFENCE AND SPACE LTD.,<br><br>           Plaintiffs,<br><br>   v.<br><br>ANACONDA, INC.,<br><br>           Defendant. | C.A. No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs Airbus SAS, Airbus DS Government Solutions, Inc., Airbus Helicopters, Inc., Airbus U.S. Space & Defense, Inc., Airbus Group, Inc., and Airbus Defence and Space Ltd. (the "Airbus Entities" or "Plaintiffs"), based on personal knowledge as to all acts or events that they have undertaken or witnessed, and upon information and belief as to all others, file this Complaint for Declaratory Judgment against Defendant Anaconda, Inc. ("Anaconda" or "Defendant") and allege as follows:

**NATURE OF THE ACTION**

1. This is a case arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the copyright laws of the United States, 17 U.S.C. § 101, *et seq.*

2. The Airbus Entities seek a declaration that they have not infringed any valid copyright held by Anaconda.

3.	Anaconda claims that the Airbus Entities infringe its copyright in its purportedly copyrighted software, has explicitly threatened to sue certain of the Airbus Entities for copyright infringement, and has demanded millions of dollars from these companies in related licensing fees.

4.	Upon information and belief, Anaconda has obtained one copyright registration relating to its software, which it has referred to as the "Anaconda Distribution": Registration No. TX-9-407-381, titled "Anaconda Distribution and Associated Packages Release 2024.02-01" and dated July 1, 2024 (the "Copyright Registration").

5.	Anaconda has sued at least two other alleged users of its software, asserting, *inter alia,* infringement of the Copyright Registration. *See Anaconda, Inc. v. Dell, Inc.*, 1:24-cv-01527 (W.D. Tex.), Dkt. 1 (Ex. A); *Anaconda, Inc. v. Intel Corporation*, 1:24-cv-00925 (D. Del.), Dkt. 1 (Ex. B).

6.	The Anaconda Distribution corresponds primarily to open-source software created by third-party volunteers, not Anaconda. The balance of the material at issue in the Anaconda Distribution is non-copyrightable. Anaconda's Copyright Registration, therefore, does not correspond to any original work of authorship for which Anaconda has a right to bring a copyright infringement lawsuit against the Airbus Entities, and is invalid. Indeed, Anaconda historically distributed the materials included in the Anaconda Distribution at no charge and with no commercial use restrictions. However, Anaconda has now pivoted its business model from providing these materials at no cost to a new business model. In this new model, Anaconda continues to permit unrestricted downloads of the materials in the Anaconda Distribution, but it threatens to sue (and does sue) companies for alleged copyright infringement based on those

downloads, with an apparent intent to extract arbitrarily large windfall payments from its targets. The Airbus Entities are among the many targets of Anaconda's new business model.

7. As a result, Anaconda has created an actual, substantial, and immediate controversy of sufficient immediacy and reality between the Airbus Entities and Anaconda over the parties' rights and their legal relationship. A judicial declaration confirming that the Airbus Entities have not infringed any valid copyright held by Anaconda is necessary and appropriate.

## JURISDICTION

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 2201 because this action arises under the laws of the United States, including 17 U.S.C. §§ 101, *et seq.*

9. This Court has personal jurisdiction over Anaconda by virtue of Anaconda's incorporation in Delaware and because Anaconda purports to license the Anaconda Distribution pursuant to terms of use that are "governed exclusively by the governing law of Delaware." *See* Ex. C (current terms of service for the Anaconda Distribution), § 15.11. In these terms of service, Anaconda further "consents and submits to the exclusive jurisdiction of courts located within the state of Delaware." *Id.* This action arises out of and relates to Anaconda's assertion that the Airbus Entities have used the Anaconda Distribution inconsistently with the terms of use and thereby made unlicensed copies of the Anaconda Distribution, or portions thereof, which therefore allegedly infringe Anaconda's copyright.

## VENUE

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because Anaconda is subject to personal jurisdiction in this judicial district, and because Anaconda "consents and submits to the exclusive jurisdiction of courts located within the state of Delaware" and has

specified that the terms of use for the Anaconda Distribution "will be governed exclusively by the governing law of Delaware." Ex. C, § 15.11.

11. Venue is further proper in this District with respect to Defendant Anaconda under 28 U.S.C. § 1400(b) because Anaconda is a resident of the state of Delaware through its incorporation under the laws of this state.

## PARTIES

12. Plaintiff Airbus SAS is a *société par actions simplifiée* organized and existing under the laws of France, with its principal place of business in Blagnac, France.

13. Plaintiff Airbus DS Government Solutions, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Plano, Texas.

14. Plaintiff Airbus Helicopters, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Grand Prairie, Texas.

15. Plaintiff Airbus U.S. Space & Defense, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Arlington County, Virginia. Airbus U.S. Space & Defense, Inc. was formerly named "Airbus Defense and Space, Inc."

16. Plaintiff Airbus Group, Inc. is a corporation organized and existing under the laws of Delaware, with its principal place of business in Fairfax County, Virginia.

17. Plaintiff Airbus Defence and Space Ltd. is a limited company organized and existing under the laws of the United Kingdom, with its principal place of business in Hertfordshire, England.

18. Together, Plaintiffs comprise the "Airbus Entities." The Airbus Entities pioneer sustainable aerospace for a safe and united world. Their products include state-of-the-art

airplanes and rotorcraft that are the product of constant innovation in the aerospace, defense, and high-technology industries. The Airbus Entities serve civil and military customers across the globe.

19. Defendant Anaconda is a corporation organized and existing under the laws of Delaware, with its principal place of business in Austin, Texas.

## FACTUAL BACKGROUND

**There is a robust ecosystem of free and open-source software that companies like the Airbus Entities use**

20. Python is a popular free programming language created in 1991. Since its first public release, the Python programming language, as implemented in its interpreter, has been available for free under open-source licenses.

21. A large ecosystem has grown up around the Python programming language and interpreter. Today, there are many thousands of free and open-source software libraries, applications, and interfaces written in Python that are freely available on the Internet—*i.e.*, anyone can download, modify, use, and redistribute them without cost. One example is the Python interpreter itself, which is the free and open-source software that developers use to execute programs written in Python. Another common example is NumPy, a free and open-source Python library often used for mathematical and scientific computing. These types of libraries, applications, and interfaces are sometimes referred to as "packages."

22. Software developers working in Python commonly use special programs referred to as "package managers" or "package installers" to automate the processes of downloading, removing, and updating packages, and ensuring that software development environments include compatible versions of various packages. For example, a software developer might use a package manager to automate updating the version of the Python interpreter on his or her

computer to the most up-to-date version.  A package manager can also automatically install packages that are required for other packages to work properly.  There are many free and open-source package managers commonly used by software developers today.  Examples include "conda" and "pip," both of which are typically used to manage installation, updating, and removal of Python packages.

23. On information and belief, conda was created by Anaconda, then known as Continuum Analytics, in 2012.  The conda application itself is free and open-source software, available on the Internet for anyone to use.  Anaconda's own website explains that "conda, the package installation and environment management software, is free to use by anyone and always has been. It's also open source (and always has been)."

24. Conda works in conjunction with one or more "channels," which are collections of packages.  Conda can be configured to access any number of channels, at which point it can serve as a package manager for the packages in those channels.  Channels are typically hosted on a server, which may be referred to as a "repository," that is often accessible over the Internet.  The server (or repository) can be publicly accessible or protected by authentication requirements.

25. On information and belief, in order for a package in a channel to interface with the conda application, standardized structured metadata must be provided in the package according to a public specification.  *See, e.g.*, Ex. D (excerpt of conda package specification, downloaded from https://docs.conda.io/projects/conda-build/en/stable/resources/package-spec.html, last accessed Feb. 13, 2025).  For example, for the conda application to recognize a package's name, metadata corresponding to that name must be provided in a specific format defined in this specification.  A person seeking to publish a Python package that can be

downloaded and updated with the conda application has no choice but to follow the specification, or else the package at issue will not work with conda.

26. There are various conda channels that programmers can configure conda to access. Some channels are protected by authentication requirements, preventing those without appropriate credentials from accessing them. Others are provided with no protections, such that they can be publicly accessed by anyone.

27. Anaconda hosts both types of conda channels on its servers—*i.e.*, Anaconda hosts some channels that are password- or token-protected, and some that are not.

28. One set of examples of Anaconda-hosted conda channels that can be accessed by anyone without credentials are the "Anaconda Default Channels." The packages within the Anaconda Default Channels are almost all free and open-source packages that Anaconda did not author. Anaconda did not create these packages and is not responsible for the benefits they offer to their users.

29. Anaconda hosts another conda channel that can be accessed by anyone without credentials, called "conda-forge." On information and belief, all, or nearly all, of the third-party free and open-source software available in the Anaconda Default Channels is also available on conda-forge or is otherwise available for free under an open-source license.

30. Anaconda has taken the position that the Anaconda Distribution includes the Anaconda Default Channels (or at least several hundred packages available on the Anaconda Default Channels), the conda application, and various versions of the Python programming language. *See* Ex. A (Dell complaint), ¶ 57.

31. Anaconda hosts both the allegedly proprietary Anaconda Default Channels of the Anaconda Distribution, and the free and open-source conda-forge channel, on its servers in

substantially the same manner. None of these channels are protected by an authentication system. All of them are downloadable by anyone on the Internet without providing credentials or paying a fee.

**Anaconda has repeatedly changed the "terms of service" for the Anaconda Distribution, specifying that the newest terms "supersede" the previous ones**

32. Anaconda purports to license the Anaconda Distribution, including the Anaconda Default Channels themselves, via a "license" or "terms of service" that Anaconda publishes on its website.

33. Anaconda has changed these terms of service over time.

34. Upon information and belief, originally, the terms of service for the Anaconda Distribution specified that the Anaconda Distribution was available for anyone to use without payment. *See, e.g.*, Ex. E (Anaconda 2012 license).

35. In March of 2020, Anaconda published new terms of service for the Anaconda Distribution that stated "we are not granting you permission to use our community site for large-scale commercial activities, such as downloading or mirroring the Repository." Ex. F (Anaconda March 2020 license).[1]

36. Anaconda revised its terms of service again in October of 2020, stating that "we are not granting you permission to use the Repository for commercial activities" and "[f]or users that want to engage in commercial activities or uses that place a heavier burden on our system, we encourage you to contact us to learn more about our commercial offerings." Ex. G (Anaconda October 2020 license). These revised terms of service also stated that use of the

---

[1] This Exhibit F, and Exhibits C, G, and H, were attached to Anaconda's complaint against Dell in *Anaconda, Inc. v. Dell, Inc.*, 1:24-cv-01527 (W.D. Tex.). The Airbus Entities attach them here (with different cover sheets, reflecting the appropriate labeling for this Complaint).

"Repository" by entities with 200 or more employees was considered to be a "commercial activity."

37. Anaconda revised its terms of service for the Anaconda Distribution at least two more times, most recently in March of 2024. Ex. H (Anaconda 2023 terms of service); Ex. C (Anaconda 2024 terms of service). The 2023 terms of service specified that they "supersede[d] all prior negotiations, understandings, or agreements (oral or written), between the Parties regarding the subject matter of these TOS (and all past dealing or industry custom)." Ex. H, § 15.12. The subsequent 2024 terms of service specify that they "supersede[] all prior or contemporaneous communications, understandings or agreements (whether written or oral)" regarding "the subject matter of the[]" terms of service, which includes the Anaconda Distribution:

> These TOS [terms of service] are the complete agreement between the parties regarding the subject matter of these TOS and supersedes all prior or contemporaneous communications, understandings or agreements (whether written or oral) unless a Custom Agreement has been executed where, in such case, the Custom Agreement shall continue in full force and effect and shall control.

Ex. C, § 15.2.

38. The 2024 terms of service also specify that (1) the terms of service, and any disputes arising from them, will be governed by Delaware law, (2) the parties submit to the exclusive jurisdiction of courts within Delaware, and (3) the parties waive their right to a trial by jury:

> THESE TOS, AND ANY DISPUTES ARISING FROM THEM, WILL BE GOVERNED EXCLUSIVELY BY THE GOVERNING LAW OF DELAWARE AND WITHOUT REGARD TO CONFLICTS OF LAWS RULES OR THE UNITED NATIONS CONVENTION ON THE INTERNATIONAL SALE OF GOODS. EACH PARTY CONSENTS AND SUBMITS TO THE EXCLUSIVE JURISDICTION OF COURTS LOCATED WITHIN THE STATE OF DELAWARE. EACH PARTY DOES HEREBY WAIVE HIS/HER/ITS RIGHT TO A TRIAL BY JURY, TO PARTICIPATE AS THE MEMBER OF A CLASS IN ANY PURPORTED CLASS ACTION OR OTHER PROCEEDING OR TO

   NAME UNNAMED MEMBERS IN ANY PURPORTED CLASS ACTION OR OTHER PROCEEDINGS.

*Id.*, § 15.11.

**Anaconda now seeks to monetize its previously free software via its terms of service and threats of litigation**

   39. On information and belief, Anaconda's changes to its terms of service beginning in 2020 were made to monetize its provision of free and open-source software authored by third parties, and Anaconda made these changes without meaningful consultation of those third parties. Further, on information and belief, although Anaconda knew it could take steps to prevent commercial access to conda channels it contended were proprietary or not free for commercial use, Anaconda opted not to do so, at least in the case of the Anaconda Default Channels.

   40. Upon information and belief, since before Anaconda changed its terms and conditions in 2020, it has tracked the IP addresses of devices that download packages from, or otherwise use, the Anaconda Default Channels.

   41. Upon information and belief, Anaconda knew for years that large companies made use of the Anaconda Default Channels without a commercial license with Anaconda, and Anaconda chose not to restrict or prevent that use. Rather, Anaconda acquiesced to that use and allowed companies to believe and understand that their use of the Anaconda Default Channels was not objected to by Anaconda.

   42. Upon information and belief, Anaconda appointed a new CEO in January of 2024 and since then, Anaconda has embarked upon an aggressive campaign to develop revenue streams based on threatening lawsuits against users of the Anaconda Distribution, including companies it previously elected not to threaten or sue.

43. In the past year, Anaconda has filed lawsuits related to the Anaconda Distribution against Dell, Inc., Intel Corporation, and various entities affiliated with the Chinese ecommerce company Alibaba. *See* Ex. A (Dell complaint); Ex. B (Intel complaint); *Anaconda Inc. v. Alibaba Grp. Holding Ltd.*, D-1-GN-24-002361 (Tex. Dist. Ct. 419th).

44. On information and belief, Anaconda has threatened many other companies with litigation related to the Anaconda Distribution. It has also been publicly reported that Anaconda is now threatening academic and non-profit organizations with litigation related to use of the Anaconda Distribution.

45. The Airbus Entities have, in the past, had various commercial dealings with Anaconda related to the Anaconda Distribution. In these dealings, Anaconda has asserted that the scope of the Airbus Entities' license to use the Anaconda Distribution is governed by the terms of service identified above, including the current terms of service (attached as Exhibit C) that supersedes all prior terms of service. Upon information and belief, since at least 2023, although Anaconda believed that the Airbus Entities made use of the Anaconda Distribution without a license, or beyond the scope of licenses they held, Anaconda chose not to take action against the Airbus Entities or limit their access to the Anaconda Distribution.

46. Since February of 2024, Anaconda and multiple law firms acting on its behalf have sent multiple legal threat and demand letters to the Airbus Entities, or concerning the Airbus Entities, related to alleged unlawful use and copying of the Anaconda Distribution. The first demand letter was directed to "Airbus entities" and attached a draft multi-million dollar "order form" prepared for "Airbus Group," listing billing addresses in France and the UK. The amounts demanded in subsequent follow-on letters have varied by orders of magnitude ranging between six- and eight-figures. Airbus companies specifically identified in Anaconda's

subsequent demand correspondence include Airbus Defense and Space, Inc., Airbus DS Government Solutions, Inc., Airbus U.S. Space & Defense, Inc., and Airbus Helicopters, Inc. On information and belief, Anaconda's references to "Airbus entities" and "Airbus Group," and its allegations in subsequent demand letters, were intended to refer to the Airbus Entities who bring this Complaint.

47. Anaconda sent its most recent demand letter on January 16, 2025 (retransmitted on February 12, 2025). Ex. I (January 16, 2025 letter from Anaconda's outside counsel). It was addressed specifically to Airbus Helicopters, Inc. and Airbus U.S. Space & Defense, Inc., but purports to relate to the issues raised in Anaconda's earlier correspondence addressed to or otherwise concerning the additional Airbus Entities. In this letter, Anaconda contends that Airbus Helicopters, Inc. and Airbus U.S. Space & Defense, Inc. have "access[ed] and use[d] the proprietary repository"—*i.e.*, the Anaconda Default Channels—in a manner that "violates Anaconda's Terms of Service and infringes Anaconda's copyright." *Id.* The Airbus Entities understand that the allegations in this letter are not limited to only Airbus Helicopters, Inc. and Airbus U.S. Space & Defense, Inc., but to the Airbus Entities who bring this Complaint. On information and belief, the Airbus Entities who bring this Complaint comprise the full group of Airbus corporate entities that Anaconda contends or has contended to have made improper use of the Anaconda Distribution.

48. Over the past several months, including on October 4, 2024, and January 21, 2025, the Airbus Entities have attempted to discuss Anaconda's claims with Anaconda and its outside counsel, but have not received a response from Anaconda. The Airbus Entities have received further legal threats from Anaconda since these attempts, and Anaconda has not acknowledged the Airbus Entities' outreach.

49. On information and belief, Anaconda's strategy in its licensing correspondence with Airbus has been to extract a windfall license payment from the Airbus Entities' procurement team and to sue the Airbus Entities if it was unable to do so. Anaconda's price demands varied wildly and did not appear to be calculated in a principled manner or based on legitimate arms-length licensing terms. And Anaconda requested information from Airbus in connection with its licensing correspondence, like the results of "scans" that Anaconda asked Airbus to perform, that did not directly correlate to what Anaconda claimed to require a license. On information and belief, Anaconda sought to maximize a potential license payment for the Airbus Entities' use of free and open-source software, using threats of litigation to increase leverage over the Airbus Entities' procurement personnel.

50. Although Anaconda has accused the Airbus Entities of unlicensed use of the Anaconda Distribution (including copyright infringement), it has never taken measures to block or prevent that use. For example, although Anaconda purports to be able to identify IP addresses associated with the Airbus Entities that allegedly make impermissible access to Anaconda Distribution materials hosted on Anaconda's website, Anaconda has never claimed to block or restrict that access, despite its ability to do so. *See* Ex. A (Dell complaint), ¶¶ 48, 53. To the contrary, Anaconda has claimed that alleged continued access by the Airbus Entities to material that Anaconda could protect but opts not to constitutes further copyright infringement.

**The Anaconda Distribution comprises third-party open-source software and functional, non-expressive software components**

51. The vast majority of the Anaconda Distribution consists of free and open-source software that was authored by individuals and companies other than Anaconda. This software comprises thousands of packages developed over decades by thousands of contributors who provided their source code to the public at no cost in the spirit of collaboration and sharing.

52. In addition to this bulk of software that was not authored by Anaconda, the Anaconda Distribution also contains a small number of packages authored by Anaconda that are dedicated to the public under a free license (*e.g.*, the "conda" package manager application itself).

53. The balance of material that the Airbus Entities understand they are accused of improperly using in the Anaconda Distribution is not copyrightable. This is underscored by Anaconda's allegations related to its alleged copyright in the Anaconda Distribution in its various district court complaints for copyright infringement.

54. For example, Anaconda has alleged that "several hundred of the most popular conda-compatible packages" "form a principal part of the 'Anaconda Distribution'" and are "protected by" Anaconda's alleged copyright. Ex. A (Dell complaint), ¶ 23; *see also id.*, ¶ 64 (alleging that "[t]he Anaconda Distribution and associated conda-compatible packages also contain proprietary material that Anaconda's engineers and employees created at significant effort and expense"). But, on information and belief, the "most popular conda-compatible packages" are free, open-source works authored by third parties other than Anaconda. On information and belief, what Anaconda adds to these packages is merely the metadata that is required by the conda application in order for the packages to function with conda. This metadata is purely functional, and its contents and structure are dictated by a technical specification—it is neither expressive nor creative. *See, e.g.*, Ex. D (excerpt of conda package specification). The metadata is also comprised entirely, or almost entirely, of words and short phrases that contain at most a *de minimis* amount of authorship that is not creative. Further, upon information and belief, some or all of this added metadata is not authored by human authors.

55. Anaconda has also alleged in its pleadings that the "specific selection and arrangement of packages, libraries, code, and other files in the Anaconda Distribution represents the exercise of discretion and creativity of Anaconda's employees and engineers." Ex. A (Dell complaint), ¶ 63. But neither the "selection" nor the "arrangement" is creative. The Anaconda Default Channels, for example, contain undifferentiated collections of thousands of common Python packages. And the thousands of packages included within the channels merely implement the functional goal of including a large number of packages within the Anaconda Default Channels and providing a functional Python environment, not creative or expressive curation or editorialization. Furthermore, the technical specification for the conda application dictates the structure of the Anaconda Default Channels, requiring that files and information be arranged in a specific way in order to function—it, too, is neither expressive nor creative. *See, e.g.*, Ex. D (excerpt of conda package specification).

56. The conda application, another alleged part of the Anaconda Distribution, is free and open-source software licensed under the "BSD" license. *See, e.g.* Ex. J (conda license, downloaded from https://github.com/conda/conda/blob/main/LICENSE, last accessed Feb. 13, 2025). Anaconda has taken the position that "conda, the package installation and environment management software, is free to use by anyone and always has been. It's also open source (and always has been)." Anaconda has thus explicitly licensed copying and use of the conda application at no cost.

## COUNT ONE
### (Declaratory Judgment of No Copyright Infringement)

57. The Airbus Entities repeat and reallege paragraphs 1 through 56 as if fully set forth herein.

58. Anaconda has improperly asserted that the Airbus Entities infringe Anaconda's copyright in the Anaconda Distribution. To the contrary, the Airbus Entities do not infringe, including because the relevant portions of the Anaconda Distribution authored by Anaconda are not copyrightable or are licensed to the Airbus Entities (*e.g.*, the Airbus Entities are expressly licensed to use and copy the conda application).

59. There presently exists an actual controversy with respect to whether Airbus infringes a valid copyright owned by Anaconda, including a controversy with respect to whether Anaconda's contributions to the Anaconda Distribution are copyrightable and the validity of Anaconda's Copyright Registration in the Anaconda Distribution.

60. Anaconda's contributions to the Anaconda Distribution lack the creativity and originality necessary for copyright to subsist.

61. Many of Anaconda's contributions to the Anaconda Distribution consist primarily of non-copyrightable words and short phrases.

62. On information and belief, many of Anaconda's contributions to the Anaconda Distribution are not authored by humans.

63. Anaconda's contributions to the Anaconda Distribution are functional, relating to the ability of various packages to function with the free and open-source conda application. Many of these contributions are dictated by the conda specification and thus are not creative. Anaconda's contributions are further non-copyrightable in view of 17 U.S.C. § 102(b) and the functionality and merger doctrines.

64. The mere collection of packages in the Anaconda Default Channel is also not copyrightable—it is a non-creative grouping of a large number of common and popular Python packages that are grouped for the purpose of a providing a functional Python environment.

65. The Airbus Entities seek a declaration that the Airbus Entities cannot have infringed Anaconda's copyright in the Anaconda Distribution because Anaconda's contributions to the Anaconda Distribution are not copyrightable, and Anaconda's related Copyright Registration is invalid.

66. A judicial declaration that Airbus does not infringe any valid copyright in the Anaconda Distribution owned by Anaconda, including because Anaconda's contributions to the Anaconda Distribution are not copyrightable and Anaconda's Copyright Registration is invalid, furthers the policies of the Copyright Act to serve the public good, including by preventing Anaconda from abusing improper copyright infringement allegations to extract payments from those who may use the Anaconda Distribution.

## **Prayer for Relief**

**WHEREFORE**, the Airbus Entities respectfully request that the Court enter judgment as follows:

a. Anaconda's contributions to the Anaconda Distribution are not copyrightable subject matter for purposes of the Copyright Act, 17 U.S.C. § 101, *et seq.*, Anaconda's Copyright Registration is invalid, and the Airbus Entities therefore do not infringe any such Anaconda-owned copyright in the Anaconda Distribution.

b. The Airbus Entities are to be granted such other and further relief as this Court may deem just and proper.

Dated: February 13, 2025                    Respectfully submitted,

By: */s/ Grayson P. Sundermeir*

Grayson P. Sundermeir (#6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
(302) 652-5070
sundermeir@fr.com

OF COUNSEL:
Frank E. Scherkenbach (*pro hac vice* forthcoming)
Adam Kessel (*pro hac vice* forthcoming)
Andrew Pearson (*pro hac vice* forthcoming)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
Facsimile: (617) 542-8906
scherkenbach@fr.com; kessel@fr.com; pearson@fr.com

Shaun Van Horn (*pro hac vice* forthcoming)
FISH & RICHARDSON P.C.
60 South 6th Street, Suite 3200
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696
vanhorn@fr.com

*Attorneys for Plaintiffs Airbus Entities*