# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AIRBUS SAS,<br>AIRBUS DS GOVERNMENT SOLUTIONS, INC.,<br>AIRBUS HELICOPTERS, INC.,<br>AIRBUS U.S. SPACE & DEFENSE, INC.,<br>AIRBUS AMERICAS, INC., and<br>AIRBUS DEFENCE AND SPACE LTD.,<br><br>  Plaintiffs and Counterclaim Defendants,<br><br>  v.<br><br>ANACONDA, INC.,<br><br>  Defendant and Counterclaim Plaintiff. | C.A. No. 25-178-CFC-SRF |

## PLAINTIFFS' SECOND AMENDED ANSWER TO DEFENDANT ANACONDA, INC.'S COUNTERCLAIMS TO PLAINTIFFS' COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs-Counterclaim-Defendants Airbus SAS, Airbus DS Government Solutions, Inc., Airbus Helicopters, Inc., Airbus U.S. Space & Defense, Inc., Airbus Americas, Inc.,[1] and Airbus Defence and Space Ltd. (collectively, "Airbus Entities" or "Plaintiffs"), by and through their attorneys, answer the counterclaims ("Counterclaims," D.I. 11) of Defendant Anaconda, Inc. ("Anaconda" or "Defendant") as follows:

---

[1] The parties stipulated to amend the caption to replace Airbus Group, Inc. with Airbus Americas, Inc. D.I. 57.

The Airbus Entities deny all allegations and claims in Anaconda's Counterclaims unless expressly admitted in the following paragraphs. Any factual allegations admitted below are admitted only as to the specific admitted facts, and not as to any purported conclusions, characterizations, implications, or speculations that might follow. The Airbus Entities do not individually respond to the unnumbered paragraphs at pages 1-7 of D.I. 11, which appear to be an attempt to summarize Anaconda's Counterclaims. Instead, the Airbus Entities restate and incorporate by reference paragraphs 1–66 of its complaint (D.I. 1), paragraphs 1-86 of its responses below, and their Affirmative Defenses. To the extent a response is required and not explicitly given here, the Airbus Entities deny such allegations.

## **NATURE OF THE ACTION[2]**

1.     Admitted that Anaconda purports to assert Counterclaims under the copyright laws and for breach of contract. The Airbus Entities deny all of Anaconda's Counterclaims.

## **PARTIES**

2.     Admitted.

3.     Admitted.

4.     Admitted.

---

[2] The Airbus Entities adopt the headings utilized in Anaconda's Counterclaims for ease of understanding. The Airbus Entities' adoption of these headings should not be construed as an admission of any allegations.

5.    Admitted.

6.    Admitted.

7.    Airbus Group, Inc. was a corporation organized and existing under the laws of Delaware, with its principal place of business in Fairfax County, Virginia. Airbus Group, Inc. merged with and into Airbus Americas, Inc., a Delaware corporation, on December 31, 2022.

8.    Admitted.

9.    Admitted.

## JURISDICTION AND VENUE

10.    Admitted.

11.    Admitted that the Airbus Entities have consented to personal jurisdiction for purposes of this action.

12.    Admitted that venue is proper in this Court with respect to Airbus Group, Inc., Airbus U.S. Space & Defense, Airbus Helicopters, Inc. and Airbus DS Government Solutions for purposes of this action.

## FACTUAL BACKGROUND

13.    The Airbus Entities are without sufficient information to form a belief as to the truth of the allegations of this paragraph, and on that basis deny them.

14.    Admitted that the term "packages" can refer to collections of software modules and functions.  Admitted that "pandas," "NumPy," and "SciPy" are

3

examples of common open-source tools, which Anaconda did not author.  Further

admitted that software development "environments" can include a number of

separate packages that a developer has installed.  The Airbus Entities are without

sufficient information to form a belief as to the truth of the remaining allegations

of this paragraph, and on that basis deny them.

15.    Admitted that Anaconda developed at least portions of the conda

application and that conda is an open-source package-management system and

environment management system.  The Airbus Entities are without sufficient

information to form a belief as to the truth of the remaining allegations of this

paragraph, and on that basis deny them.

16.    Admitted that the conda package-and environment-management

software is free and open source.  Admitted that Anaconda has created at least

portions of conda-compatible packages, but denied to the extent Anaconda

contends it created the underlying source code corresponding to the "8,000 conda-

compatible packages" at issue in paragraph 16.  Admitted that third parties have

also created conda-compatible packages.  Admitted that some conda-compatible

packages are stored in the Anaconda repository and the Anaconda Distribution.

Anaconda's definition for "Anaconda's Terms of Service" includes at least four

separate documents with service terms that incorporate additional documents as

well.  These documents speak for themselves.  To the extent Anaconda purports to

4

allege what it contends is the proper legal construction of aspects of those documents, or ultimate issues of breach of or compliance with those documents, Anaconda alleges a legal conclusion to which no response is required. Otherwise, the Airbus Entities deny Anaconda's factual allegations to the extent they do not accurately represent the documents' true content and context. The Airbus Entities are without sufficient information to form a belief as to the truth of the remaining allegations of this paragraph, and on that basis denies them.

17.    The Airbus Entities are without sufficient information to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

### The Anaconda Distribution

18.    Admitted that Anaconda purports to offer a software distribution that it refers to as the "Anaconda Distribution;" however, the term "Anaconda Distribution" is not clearly defined in Anaconda's Counterclaims. The Airbus Entities are without sufficient information to form a belief as to the truth of the remaining allegations in this paragraph, and on that basis denies them.

19.    The Airbus Entities deny that the activities allegedly performed by Anaconda that are listed in paragraph 19 reflect "creative choices" or reflects copyrightable subject matter. The Airbus Entities are without sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies them.

5

20.    The Airbus Entities are without sufficient information to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

21.    The Airbus Entities are without sufficient information to form a belief as to the truth of the allegations in this paragraph, and on that basis denies them.

22.    Admitted that Anaconda offers downloads of software it describes as the Anaconda Distribution on its public website.  To the extent the allegations in paragraph 22 purport to describe or quote one or more documents or websites, those documents or websites speak for themselves. To the extent Anaconda purports to allege what it contends is the proper legal construction of aspects of those documents, or ultimate issues of breach of or compliance with those documents, Anaconda alleges a legal conclusion to which no response is required. Otherwise, the Airbus Entities deny Anaconda's factual allegations to the extent they do not accurately represent the documents' true content and context.

**Anaconda's Revised Terms of Service**

23.    Admitted that Anaconda revised its terms of service in March 2020. To the extent the allegations in paragraph 23 purport to describe or quote one or more documents, those documents speak for themselves.  To the extent Anaconda purports to allege what it contends is the proper legal construction of aspects of those documents, or ultimate issues of breach of or compliance with those documents, Anaconda alleges a legal conclusion to which no response is required.

Otherwise, the Airbus Entities deny Anaconda's factual allegations to the extent they do not accurately represent the documents' true content and context.

24.     Admitted that Anaconda revised its Terms of Service at various times. The Airbus Entities are without sufficient information to form a belief as to the truth of the allegation that Anaconda's Terms of Service "have been publicly available on its website" "[s]ince at least 2020," and on that basis denies it.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  The Airbus Entities specifically deny that they have breached any version of the Terms of Service.

25.     To the extent the allegations in paragraph 25 purport to describe or quote the March 2020 Terms of Service, the document speaks for itself.  The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

26.     Anaconda's definition for "Anaconda's Terms of Service" includes at least four separate documents with service terms that incorporate additional documents as well.  These documents speak for themselves.  To the extent Anaconda purports to allege what it contends is the proper legal construction of aspects of those documents, or ultimate issues of breach of or compliance with

those documents, Anaconda alleges a legal conclusion to which no response is required.  Otherwise, the Airbus Entities deny Anaconda's factual allegations to the extent they do not accurately represent the documents' true content and context.  The Airbus Entities further deny that the term "mirroring" has the meaning ascribed to it by Anaconda in footnote 3, and thus deny all allegations that rely or incorporate that definition, including the factual allegations in footnote 3. In particular, the definition of "mirroring" in footnote 3 is inconsistent with how that term is defined and used in the contracts at issue.

27.    To the extent the allegations in paragraph 27 purport to describe or quote Anaconda's March 2020 Terms of Service, the document speaks for itself. The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.

28.    To the extent the allegations in paragraph 28 purport to describe or quote Exhibit A to Anaconda's Counterclaims, the document speaks for itself.  The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.

29.    Admitted that Anaconda revised its terms of service in October 2020. To the extent the allegations in paragraph 29 purport to describe or quote Anaconda's October 2020 Terms of Service, the document speaks for itself.  The

Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.

30.    To the extent the allegations in paragraph 30 purport to describe or quote Anaconda's April 2023 Terms of Service, the document speaks itself.  The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

31.    To the extent the allegations in paragraph 31 purport to describe or quote Anaconda's April 2023 Terms of Service, the document speaks for itself. The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

32.    To the extent the allegations in paragraph 32 purport to describe or quote Anaconda's March 2024 Terms of Service, the document speaks for itself. The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To

the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

33.     To the extent the allegations in paragraph 33 purport to describe or quote the March 2024 Terms of Service, the document speaks for itself.  The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

34.     To the extent the allegations in paragraph 34 purport to describe or quote Anaconda's March 2024 Terms of Service, the document speaks for itself. The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.

35.     To the extent the allegations in paragraph 35 purport to describe or quote Anaconda's March 2024 Terms of Service, the document speaks for itself. The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

36.     To the extent the allegations in paragraph 36 purport to describe or quote the repo.anaconda.com webpage, the webpage speaks for itself.  The Airbus Entities deny the allegations to the extent they do not accurately represent the webpage's true content or context.  The Airbus Entities are without sufficient information to form a belief as to the prior content of the repo.anaconda.com webpage or what Anaconda "has strived to apprise its users of'" and, on that basis, deny the allegations of this paragraph.

37.     To the extent the allegations in paragraph 37 purport to describe or quote the screenshot in paragraph 37, the screenshot speaks for itself.  The Airbus Entities deny the allegations to the extent they do not accurately represent the webpage's true content or context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

38.     The allegations of this paragraph constitute legal conclusions to which no response is required. Otherwise, denied .

## The Asserted Copyright and Protected Material

39.     Admitted that a copyright registration certificate is attached to Anaconda's Counterclaims as Exhibit C.  Otherwise, denied.

40.     Admitted that the copyright registration certificate attached as Exhibit C states that the title of the copyrighted work is "Anaconda Distribution and

Associate Packages Release 2024.02-01." The Airbus Entities are without sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies them.

41.     Denied.

42.     The Airbus Entities deny that selection of a particular version of Python for use with open-source software like pandas, which Anaconda did not itself create, is an exercise of "creative discretion and judgment" or is entitled to copyright protection. The Airbus Entities are without sufficient information to form a belief as to the truth of the remaining allegations in this paragraph and on that basis denies them.

43.     Denied as to the Airbus Entities. Otherwise, the Airbus Entities are without sufficient information to form a belief as to the truth of the allegations in this paragraph and on that basis denies them.

### Airbus Entities' Unauthorized Use of the Anaconda Distribution and Associated Packages

44.     The allegations of this paragraph constitute a legal conclusion to which no response is required. To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

45.     Admitted.

46.     Denied.

47.     Admitted.

48.     Admitted.

49.     Admitted that Airbus Group, Inc. had more than 200 employees from
March 2020 to December 2022.  Airbus Group, Inc. merged with and into Airbus
Americas, Inc., a Delaware corporation, on December 31, 2022.

50.     Admitted.

51.     The allegations of this paragraph constitute a legal conclusion to
which no response is required.  To the extent this paragraph alleges that certain
facts compel a legal conclusion, denied.

52.     Admitted that on March 1, 2023, Airbus Defence and Space, Ltd. paid
for a one year 50 user license.  Otherwise, denied.

53.     Admitted that in February 2024 Anaconda sent an e-mail to an Airbus
Defence and Space Ltd. employee contending that "Anaconda (including the
installers, premium repo and also mirroring this repo) is heavily used in several
parts of Airbus" and attempting to introduce the Airbus employee to whom appear
to be sales representatives who sought to sell a larger software license to Airbus
Defence and Space Ltd. or the Airbus Entities more broadly.  Also in February
2024, Anaconda sent a cease and desist letter to unspecified "Airbus entities"
demanding that they "cease and desist any and all unauthorized usage beyond
[their] contracted amount."  To the extent the allegations in paragraph 53 purport
to describe or quote one or more of those documents, those documents speak for

13

themselves.  The Airbus Entities further deny these allegations to the extent they do not accurately represent the documents' true content and context.

54.     The Airbus Entities deny that Anaconda attempted to negotiate "an appropriate license."  Instead, Anaconda's apparent strategy with Airbus has been to extract a windfall license payment and its price demands in its licensing correspondence do not appear to have been calculated in a principled manner or based on legitimate arms-length licensing terms.  Admitted that Anaconda directed a demand letter to certain "Airbus entities" on February 27, 2024, stating certain factual and legal positions, with which the Airbus Entities disagree.  Admitted that the letter of February 27, 2024 included a demand for "scans," and admitted that the Airbus Entities did not provide the demanded "scans" to Anaconda, but denied that the demanded scans were configured to provide accurate or useful information regarding the software that Anaconda purports to own and/or have a right to license.  To the extent the allegations in paragraph 54 purport to describe or quote one or more documents, those documents speak for themselves. The Airbus Entities further deny these allegations to the extent they do not accurately represent the documents' true content and context.

55.     Admitted.

56.     The allegations of this paragraph constitute a legal conclusion to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

57.     Admitted that Anaconda directed demand letters to Airbus SAS, Airbus DS Government Solutions, Inc., Airbus Helicopters, Inc., Airbus U.S. Space & Defense, Inc., and Airbus Group, Inc.  Admitted that in February 2024 Anaconda sent an e-mail to an Airbus Defence and Space Ltd. employee contending that "Anaconda (including the installers, premium repo and also mirroring this repo) is heavily used in several parts of Airbus" and attempting to introduce the Airbus employee to what Airbus believes were sales representatives who sought to sell a larger software license to Airbus Defence and Space Ltd. or the Airbus Entities more broadly.  To the extent the allegations in paragraph 57 purport to describe or quote one or more documents, those documents speak for themselves.  The Airbus Entities deny the allegations to the extent they do not accurately represent the documents' true content and context.  Admitted that the Airbus Entities did not renew the license or pay for further licenses, otherwise denied.

58.     Admitted that in February 2024, Anaconda sent a cease and desist letter to unspecified "Airbus entities" demanding that they "cease and desist any and all unauthorized usage beyond [their] contracted amount."  To the extent the

15

allegations in paragraph 58 purport to describe or quote the February 27, 2024 letter, the letter speaks for itself. The Airbus Entities deny the allegations to the extent they do not accurately represent the letter's true content and context. Anaconda's allegations regarding "over 28,000 packages" and "mirror[ing]" of unspecified "Proprietary Components" are vague and unclear, including in view of Anaconda's inconsistent definition of "mirror[ing]," and Airbus notes that Anaconda has not provided the records upon which it apparently purports to base these allegations, and denies these allegations on these bases. The Airbus Entities will investigate these allegations in the course of discovery. The remaining allegations of this paragraph constitute legal conclusions to which no response is required. To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

59.    The Airbus Entities are without sufficient information to form a belief as to the truth of the allegations set forth in this paragraph, and on that basis denies them.

60.    The allegations of this paragraph constitute legal conclusions to which no response is required. To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

61.     The allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

62.     The Airbus Entities do not "allow their employees, and/or other individuals acting at their direction or on their behalf," to make unlawful or unauthorized use of software.  Otherwise, the allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

63.     The allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

64.     The allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

65.     The allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

66.     The allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

67.    The allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.  To the extent the allegations in paragraph 67 purport to describe or quote one or more documents, those documents speak for themselves.  The Airbus Entities deny the allegations to the extent they do not accurately represent the documents' true content and context.

68.    The allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

69.    Admitted that in February 2024, Anaconda sent a cease and desist letter to unspecified "Airbus entities" demanding that they "cease and desist any and all unauthorized usage beyond [their] contracted amount."  To the extent the allegations in paragraph 69 purport to describe or quote one or more documents, those documents speak for themselves.  The Airbus Entities deny the allegations to the extent they do not accurately represent the documents' true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

70.    To the extent the allegations in paragraph 70 purport to describe or quote the May 20, 2024 letters, the letters speak for themselves.  The Airbus

Entities deny the allegations to the extent they do not accurately represent the documents' true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

71.     To the extent the allegations in paragraph 71 purport to describe or quote the January 16, 2024 letter, the letter speaks for itself.  The Airbus Entities deny the allegations to the extent they do not accurately represent the document's true content and context.  The remaining allegations of this paragraph constitute legal conclusions to which no response is required.  To the extent this paragraph alleges that certain facts compel a legal conclusion, denied.

## COUNT I
### Direct Copyright Infringement

72.     The Airbus Entities incorporate by reference its responses in the preceding paragraphs 1-71.

73.     Denied.

74.     Denied.

75.     Denied.

76.     Denied.

77.     Denied.

78.     Denied.

79.     Denied.

## COUNT II
### Breach of Contract

80.     The Airbus Entities incorporate by reference its responses in the

preceding paragraphs 1-79.

81.     Denied.

82.     Denied.

83.     Denied.

84.     Denied.

85.     Denied.

86.     Denied.

### PRAYER FOR RELIEF

The Airbus Entities deny that Anaconda is entitled to any relief, including

any of the relief sought in paragraphs (A) through (J) of Anaconda's Prayer for

Relief.  To the extent that any statement in the Prayer for Relief is deemed factual,

it is denied.

### JURY DEMAND

The Airbus Entities deny that Anaconda is entitled to trial by jury on any

issue because, *inter alia*, Anaconda waived its right to a jury trial under the

contract at issue.

## **AFFIRMATIVE DEFENSES**

The Airbus Entities repeat and reallege ¶¶ 1–66 of their Complaint (D.I. 1) and ¶¶ 1–86 of this Answer as if fully set forth therein.  The Airbus Entities' additional factual allegations are not restricted to any particular Affirmative Defense—rather, allegations pleaded under one such defense may apply to others. Nor does the fact that a defense is recited below constitute an admission that the Airbus Entities bear any burden on any such defense.  Rather, the Airbus Entities plead these allegations and defenses in good faith to put Anaconda on notice of the issues to be litigated.

## **FIRST DEFENSE**
### **(Failure to State a Claim)**

1.      Anaconda's Counterclaims fail, in whole or in part, to state a claim upon which relief may be granted as a matter of law.

## **SECOND DEFENSE**
### **(Lack of Copyrightable Subject Matter)**

2.      Anaconda's copyright claims are barred because the subject matter purportedly covered by Anaconda's asserted copyright registration is unprotectable and otherwise ineligible for protection, including because (a) it lacks original expression as required by 17 U.S.C. § 102(a); (b) it encompasses ideas, procedures, processes, systems, methods of operations, concepts, principles or discovery as

prohibited by 17 U.S.C. § 102(b); and (c) it is functional or utilitarian as excluded

from protection by 17 U.S.C. § 101.

### THIRD DEFENSE
### (Invalid Copyright Registration)

3.     Anaconda's copyright claims are barred because the copyright

registration at issue is invalid and/or was obtained through knowing and material

misstatements or omissions in the application submitted to the United States

Copyright Office.

### FOURTH DEFENSE
### (Dedication to the Public)

4.     Anaconda's copyright claims are barred because Anaconda has

dedicated to the public some or all of the underlying material and is estopped from

claiming any infringement of any such public domain materials.  By way of non-

limiting example, Anaconda's own website explains that "conda, the package

installation and environment management software, is free to use by anyone and

always has been. It's also open source (and always has been)."

### FIFTH DEFENSE
### (Implied License or Permission)

5.     Anaconda's claims of copyright infringement are barred because the

Airbus Entities have an implied license or permission to use the copyrighted

materials. By way of non-limiting example, Anaconda's own website explains that

"conda, the package installation and environment management software, is free to use by anyone and always has been.  It's also open source (and always has been)."

## SIXTH DEFENSE
### (No Damages or Limitation of Damages)

6.    Anaconda's claims for damages are barred or limited, including as specified by the contract at issue.

## SEVENTH DEFENSE
### (No Injunctive Relief)

7.    Anaconda is not entitled to injunctive relief as, at a minimum, Anaconda has not suffered any irreparable injury.  Anaconda has an adequate remedy at law for its alleged injuries.

## EIGHTH DEFENSE
### (Abandonment)

8.    Anaconda's copyright claims are barred, in whole or in part, by the doctrine of abandonment.

9.    The Airbus Entities repeat and reallege exemplary paragraphs 6, 26–28, 31, 39–41, 45, 50, and 56 of their Complaint, D.I. 1, as if fully set forth herein.

10.    Anaconda tracked IP addresses associated with devices that accessed and downloaded packages and installers from repo.anaconda.com (including the Anaconda Default Channels), since prior to the date it purported to change the terms relating to use of that repository.  D.I. 11, Answer ¶ 40.  On information and belief, Anaconda knew for years that companies made use of the Anaconda Default

Channels without a separate paid license (despite requiring one, according to Anaconda) based on its server logs. Further, on information and belief, Anaconda knew, based on its logs, that companies like the Airbus Entities sought to use the free conda-forge repository. However, Anaconda elected not to inform those companies of alleged improper or errant use of the non-conda-forge repositories (such as the Anaconda Default Channels) for years. On information and belief, Anaconda either decided to relinquish any rights it had to pursue claims for alleged improper or errant use of its alleged proprietary repositories or software, or sought to capitalize on purportedly errant use of those repositories or software by allowing instances of alleged improper use to accrue over an extended period of time.

11.     On information and belief, Anaconda does not block, or at a minimum does not consistently block, IP addresses associated with devices at large companies from accessing Anaconda's allegedly proprietary repository despite having the technical capability of doing so.

12.     On information and belief, although Anaconda believed that the Airbus Entities made use of the Anaconda Distribution without a license, or beyond the scope of the licenses they held, for years, Anaconda chose not to take action against the Airbus Entities or limit their access to the Anaconda Distribution.

24

13.    Further, Anaconda has made multiple public statements affirming its abandonment.  For example, Anaconda has repeatedly stated that "conda, the package installation and environment management software, is free to use by anyone and always has been. It's also open source (and always has been)." Anaconda's CEO has made similar statements. In connection with the 2020 change to Anaconda's terms and conditions, Anaconda's CEO stated that the restrictions to the Anaconda Default Channels do not apply "[e]ven if you are using Anaconda for commercial purposes[;] if you are just doing small one-off research projects or just learning data science, this is no real burden to our systems, and these changes do not apply to you either." D.I. 11, Ex. A. Anaconda's CEO further described the changes as "only affect[ing] non-licensed, significant commercial usage of [Anaconda's] public cloud repository," stating that Anaconda "will *soon* start reaching out to such companies[.]" *Id.* (emphasis added).  Anaconda did not claim that the Airbus Entities' use of the Anaconda Distribution infringed Anaconda's rights until years after these statements were made.  On information and belief, as to the Airbus Entities, Anaconda's CEO's statement and reflects either a decision to forego pursuit of claims against the Airbus Entities related to alleged "non-licensed" use of its allegedly proprietary repositories or software, or to encourage such use.

## NINTH DEFENSE
### (Waiver)

14.    Anaconda's claims are barred, in whole or in part, by the doctrine of waiver.

15.    The Airbus Entities repeat and reallege exemplary paragraphs 9–13 of these Defenses as if fully set forth therein.

## TENTH DEFENSE
### (Estoppel)

16.    Anaconda's claims are barred, in whole or in part, by the doctrine of estoppel.

17.    The Airbus Entities repeat and reallege exemplary paragraphs 9–13 of these Defenses as if fully set forth therein.

18.    Further, Anaconda has engaged in conduct encouraging use of the Anaconda Distribution in a manner it now claims constitutes copyright infringement and breach of contract.  On information and belief, Anaconda did so with the intention to cause such use and to lead users to believe that such use was not impermissible.  For example, on information and belief, Anaconda distributes installers for software that it brands as "free," such as miniconda, but that come preconfigured to retrieve packages from Anaconda's allegedly proprietary repository instead of the free conda-forge repository.  On information and belief, although Anaconda has the technical means to actively warn users from large

companies that such use is allegedly impermissible, or to block this access, Anaconda elects not to do so. On information and belief, Anaconda seeks to induce allegedly impermissible access to its allegedly proprietary repository.

19.    Anaconda has also provided inconsistent notice of the scope of its alleged copyright and contractual rights. For example, Anaconda now appears to claim that packages distributed via its allegedly proprietary repository (accessible at https://repo.anaconda.com) are covered by its copyright and subject to its Terms of Service. However, on information and belief, the majority of packages within this repository come bundled with free and open-source licenses (*e.g.*, in "LICENSE.txt" files), but do not provide a copy of the Terms of Service that Anaconda now contends apply to those packages. Moreover, despite Anaconda's copyright registration expressly disclaiming "[t]hird party computer programs" from the scope of its alleged copyright (D.I. 11, Ex. C), Anaconda now pursues copyright claims related to use of "third party computer programs" that are part of the Anaconda Distribution.

20.    Airbus relied, to its detriment, on Anaconda's conduct and failure to provide notice commensurate with its claims.

21.    Therefore, Anaconda's claims are barred, in whole or in part, by the doctrine of estoppel.

## ELEVENTH DEFENSE
### (Acquiescence)

22.    Anaconda's claims are barred, in whole or in part, by the doctrine of acquiescence.

23.    The Airbus Entities repeat and reallege exemplary paragraphs 9–13 of these Defenses as if fully set forth therein.

## TWELFTH DEFENSE
### (Lack of Willfulness)

24.    The Airbus Entities have not willfully infringed any valid Anaconda copyright.

## THIRTEENTH DEFENSE
### (Registration as a Prerequisite for Remedies)

25.    Anaconda is barred, in whole or in part, by 17 U.S.C. § 412 from claiming statutory damages or attorney's fees under the Copyright Act to the extent that any alleged acts of infringement occurred before registration of Anaconda's alleged work.

## FOURTEENTH DEFENSE
### (Copyright Misuse)

26.    Anaconda's copyright claims against the Airbus Entities are barred by the doctrine of copyright misuse.

27.    The Airbus Entities repeat and reallege exemplary paragraphs 6, 25, 41–42, and 63 of their Complaint, D.I. 1, as if fully set forth herein.

28.    Anaconda has engaged in copyright misuse by using its copyright in an unlawful attempt to secure and exploit an exclusive right or monopoly not within the limited monopoly granted by the Copyright Office, and which is contrary to public policy.  Anaconda has wrongfully attempted to allege infringement beyond the exclusive rights and limited monopoly granted to it under the Copyright Act.

29.    By way of example, Anaconda misrepresents the scope of its alleged copyright as including works that it does not own and/or did not author.  Anaconda claims that the "over 300 conda-compatible packages in the Anaconda Distribution reflect the heart of the Anaconda Distribution and Anaconda's offerings," and claims that "[t]he copyrighted work reflected in the Asserted Copyright is Release 2024.02-01 of the Anaconda Distribution and the associated Anaconda conda-compatible packages."  D.I. 11, Counterclaims ¶¶ 19, 40; *see also id.* ¶ 73.  But, on information and belief, all, or nearly all, of the packages that Anaconda claims are the "heart" of the Anaconda Distribution are works authored by third parties, in which Anaconda does not own the copyright.  Further, on information and belief, the metadata that Anaconda claims is "proprietary" is machine-generated or largely machine-generated and not subject to copyright protection.  The Airbus Entities incorporate ¶ 49 of these Defenses as if fully stated herein.  Anaconda uses its misrepresentation of the breadth of whatever copyright it may allegedly own to

threaten and extract payments from companies it targets with legal threats and demands, like the Airbus Entities.

30.     Additionally, Anaconda seeks to use its Terms of Service to invoke rights protected by the Copyright Act (*e.g.*, the right to copy) in copyrighted works that it does not own.  For example, Anaconda claims that Airbus's alleged "use, access, installation, downloading, copying, and mirroring of the Anaconda Distribution" (D.I. 11, Counterclaims ¶ 84)—including the alleged copying of third-party works—is a violation of Anaconda's Terms of Service.  Anaconda thus attempts to use its Terms of Service to assert rights equivalent to those that arise under copyright law for works in which it clearly does not own the copyright.

31.     Further, Anaconda's copyright infringement assertion is against the public policy of promoting a vibrant open-source software community in which third-party software developers create software works and publish them for free use by anyone else in the world pursuant to open-source licenses such as the GPL, BSD license, or MIT license.  Anaconda seeks to monetize the free labor of these developers by claiming entitlement to copyright damages associated with use of the software created by these third-party software developers, converting what should be free software into non-free software.

## FIFTEENTH DEFENSE
### (Copyright Preemption)

32.     Anaconda's contract-based claims are preempted, in whole or in part, by federal copyright law.

## SIXTEENTH DEFENSE
### (Contracts Are Void and Unenforceable)

33.     Anaconda's contract-based claims are barred, in whole or in part, because the contract at issue offends public policy and is void and unenforceable.

34.     The Airbus Entities repeat and reallege exemplary paragraphs 26–31 of these Defenses as if fully set forth therein.

## SEVENTEENTH DEFENSE
### (Lack of Notice)

35.     Anaconda's contract-based claims are barred in whole or in part based on lack of notice. The Airbus Entities repeat and reallege exemplary paragraphs 36–39 of these Defenses as if fully set forth herein.

## EIGHTEENTH DEFENSE
### (Vague, Ambiguous, and Otherwise Unintelligible Contract)

36.     Anaconda's contract-based claims are barred in whole or in part because the contract at issue utilizes vague, ambiguous, and otherwise unintelligible term thereby preventing a meeting of the minds as to the scope, rights, reservations, and restrictions of the alleged license.

37.    For example, the March 31, 2024 Terms of Service define "Mirror" or "Mirroring" as "mean[ing] the unauthorized or authorized act of duplicating, copying, or replicating an Anaconda Offering, (e.g. repository, including its contents, files, and data),, [sic] from Anaconda's servers to another location."  D.I. 1-3 at 18.  However, Anaconda's Counterclaims allege a different definition of "Mirroring": "'Mirroring' means to create an exact duplicate or copy of an entire repository, which is then used to supply individual packages to multiple end-users and is updated periodically based on updates to the original repository."  D.I. 11, Counterclaims ¶ 26 n.3.  It is thus not clear, at a minimum based on these conflicting definitions, what constitutes a breach of the Terms of Service, thus illustrating that the Terms of Service are vague, ambiguous, and unintelligible.

38.    As an additional example, Anaconda provides inconsistent statements as to which license terms apply to conda-compatible packages by incorporating different license terms into its conda-compatible packages.  For example, the conda-compatible NumPy package hosted on the allegedly proprietary repo.anaconda.com includes a "LICENSE.txt" file that reproduces the BSD 3-Clause open-source license, with no copy of any version of the Anaconda Terms of Service in the package.  Yet, Anaconda appears to assert that the Anaconda Terms of Service (and not the BSD license) applies to the conda-compatible NumPy package.  *See, e.g.*, D.I. 11, Answer ¶ 21 ("Anaconda admits there are versions of

32

NumPy *outside Anaconda packages* that are currently licensed under the BSD-3-Clause open source license." (emphasis added)).  On information and belief, all of the third party-authored conda-compatible packages hosted on repo.anaconda.com incorporate other license terms, not the Anaconda Terms of Service.  The presence of different, incompatible license terms in the packages renders the Terms of Service vague, ambiguous, and unintelligible to the extent Anaconda alleges that the Terms of Service apply to the packages.

39.     The Airbus Entities repeat and reallege exemplary paragraphs 32–42 and 56 of their Complaint, D.I. 1, as if fully set forth herein.

## NINETEENTH DEFENSE
### (Failure to Mitigate)

40.     Anaconda's claims are barred, in whole or in part, by its failure to mitigate the alleged injury and its failure to mitigate alleged damages.

41.     The Airbus Entities repeat and reallege exemplary paragraphs 9–13 of these Defenses as if fully set forth herein.

## TWENTIETH DEFENSE
### (Unclean Hands)

42.     Anaconda's claims are barred by the doctrine of unclean hands.

43.     The Airbus Entities repeat and reallege exemplary paragraphs 45–49 of their Complaint, D.I.1, and exemplary paragraphs 16–21 and 26–31 of these Defenses as if fully set forth herein.

44.     Further, Anaconda purports to license at least some conda-compatible packages—which correspond primarily to third-party open-source software licensed under a variety of open-source licenses—under Terms of Service that are incompatible with those open-source licenses.  Anaconda's claims against the Airbus Entities thus improperly attempt to derive profit from the works of third-party open-source developers contrary to the licenses promulgated by those developers.  As one example, the Anaconda Distribution contains various packages licensed under the GPL version 2 and version 3 licenses, which require that Anaconda distribute its related works and software under the same open-source as provided in the GPL licenses.  Anaconda does not do so.

**TWENTY-FIRST DEFENSE**
**(Merger Doctrine)**

45.     Anaconda's copyright claims are barred by the merger doctrine.

46.     For each conda-compatible package, the metadata that Anaconda adds to the packages (and apparently claims is copyrightable) is merely the metadata required by the conda application, which is necessary for the package to function with conda.  The Airbus Entities repeat and reallege exemplary paragraphs 25, 54-55, and 63 of their Complaint, D.I. 1, as if fully set forth herein.  The technical specification for the conda application dictates the structure and content of the metadata.  *E.g.,* D.I. 1-4.  The specification requires a singular format for the metadata and specific content, such that there are a limited number of ways to

generate metadata that reflect a particular configuration of a software package. There are not multiple meaningfully different ways of "expressing" this metadata, as failure to create metadata in the manner dictated by the conda specification hinders the conda tool's functionality in managing packages and dependencies—a package may not work with conda if its metadata is not drafted as required by the specification.  Thus, Anaconda's copyright allegations seek to monopolize purely functional configurations of software packages to be used with conda.

### TWENTY-SECOND DEFENSE
#### (*Scènes à Faire*)

47.     Anaconda's copyright claims are barred by the *scènes à faire* doctrine.

48.     The Airbus Entities repeat and reallege exemplary paragraph 46 of these Defenses as if fully set forth herein.

49.     The metadata that Anaconda apparently asserts is copyrightable consist of short and functional pieces of text that are common and necessary to creating metadata in the manner dictated by the conda specification.  Indeed, the specification is an external factor inherent in all conda-compatible software packages that dictates how conda metadata (including conda metadata not authored by Anaconda) are created.  *Cf.* D.I. 11 ¶ 17 (noting "[a]nyone can also create a conda "channel," or a location where conda-compatible packages are stored and can be downloaded by others"; such conda-compatible packages necessarily contain metadata dictated by the conda specification).  The metadata consist

primarily, or entirely, of common text dictated by the conda specification and prevalent and freely available online. The content is in fact so common and standard that it can be—and often is—created automatically using the conda application's "conda skeleton" command or other tools such as "grayskull," which generate conda-compatible configuration files by fetching package metadata from publicly available sources and translating this information into the format dictated by the conda specification.

## TWENTY-THIRD DEFENSE
### (*De Minimis* Doctrine)

50.     Anaconda's copyright claims are barred by the *de minimis* doctrine. For example, on information and belief, all, or nearly all, of the contents of the Anaconda Distribution are also available for free from other sources—such as via conda-forge—that are independent from the sources that Anaconda claims to be proprietary. On information and belief, the additional metadata included in conda-compatible packages obtained via Anaconda Default Channels are substantially identical to the metadata included in packages obtained via free sources (such as conda-forge). Any alleged copying—to the extent it is not subject to any other doctrine of non-copyrightability addressed above—is *de minimis* in both quality and quantity.

## TWENTY-FOURTH DEFENSE
### (No Attorneys' Fees)

51.     Anaconda cannot recover attorneys' fees and has identified no basis

for such recovery.

## TWENTY-FIFTH DEFENSE
### (No Statutory Damages)

52.     Anaconda cannot recover statutory damages for copyright

infringement alongside actual damages and profits under 17 U.S.C. § 504(c)(1).

## TWENTY-SIXTH DEFENSE
### (Standing)

53.     Anaconda lacks standing to sue on at least part of its copyright claim

under Article III of the Constitution.

## TWENTY-SEVENTH DEFENSE
### (Express License or Permission)

54.     Anaconda's claims of copyright infringement are barred, in whole or

in part, because the Airbus Entities have an express license or permission to use the

materials alleged to be copyrighted and infringed.

55.     By way of non-limiting example, Anaconda makes its "recipe" (or

"feedstock") content available under an open-source license, typically the BSD 3-

Clause License.  This license expressly authorizes anyone who receives covered

material (including the Airbus Entities) to redistribute, modify, and use the

material in accordance with the terms and conditions of the license, including

requirements to retain copyright notices and disclaimers when redistributing the

code, and prohibits use of the names of contributors for endorsement purposes

without permission.  Anaconda, by distributing or authorizing distribution of its

feedstock content under open-source licenses, provided an explicit license to any

recipients, including the Airbus Entities.  The Airbus Entities' alleged use of any

such material was fully consistent with and authorized by the relevant licenses.

56.     As another non-limiting example, the Anaconda Distribution that

Anaconda alleges is copyrighted and infringed includes various software packages

licensed under a variety of open-source licenses, such as the GPL version 2 and

version 3 licenses.  The GPL family of licenses require that Anaconda distribute

any works derived from those packages under terms that do not impose restrictions

beyond (or inconsistent with) those provided by those licenses.  The GPL licenses

expressly authorize anyone who receives the covered material, including the

Airbus Entities, to run, copy, modify, and redistribute that material in accordance

with the terms and conditions of the licenses.  In addition to the GPL licenses,

certain other open-source licenses applicable to the packages (*e.g.*, LGPL, AGPL,

APSL licenses) likewise require that Anaconda distribute any works derived from

that licensed content under terms that do not impose any restrictions beyond (or

inconsistent with) those provided by those licenses.  By distributing or authorizing

distribution of works subject to these open-source licenses, Anaconda granted the

rights provided under those licenses to any recipients, including the Airbus

Entities.  The Airbus Entities' alleged use of any such material was thus explicitly

authorized under these open-source licenses.

57.    Further, by way of non-limiting example, Anaconda's own website

(accessible at https://www.anaconda.com/legal) explains that no commercial

license is required for "[a]ll versions of the Anaconda Distribution Installer

downloaded prior to March 31, 2024 . . . [t]hose installers are free to use by

anyone" and "[a]ny packages downloaded from the Repository prior to April 30,

2020 do not require a commercial license for continued use."  *See also*

ANACONDA-AIRBUS_00001428-32.  Thus, the Airbus Entities have not made

unlicensed use or copies of any "versions of the Anaconda Distribution Installer

downloaded prior to March 31, 2024" or "[a]ny packages downloaded from the

Repository prior to April 30, 2020" because no license is required.  To the extent

Anaconda now contends that a license is required for such use, its prior statements

constitute an express or implied license, authorization, and/or permission.

58.    As another non-limiting example, to the extent Anaconda alleges

infringement based on the Airbus Entities' use of third-party software and/or

materials downloaded from a third-party platform or channel, such use was

expressly authorized by valid and enforceable licenses granted by the respective

third parties.  At all relevant times, the Airbus Entities acted within the scope of the

39

rights granted under those licenses.  Accordingly, the Airbus Entities' alleged use of any such material was explicitly authorized under the terms of those licenses.

## TWENTY-EIGHTH DEFENSE
## (Lack of Copyright Protection Under 17 U.S.C. § 103)

59.    Anaconda's claims of copyright infringement are barred, in whole or in part, to the extent the materials alleged to be copyrighted and infringed incorporate open-source material in violation of applicable open-source licenses, as they constitute unlawful derivative works and are therefore not entitled to copyright protection under 17 U.S.C. § 103(a).  The Airbus Entities incorporate by reference paragraph 56 of these Defenses as if fully stated herein.

## RESERVATION OF ADDITIONAL DEFENSES

60.    The Airbus Entities reserve all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure as well as any and all additional defenses that may be available to the Airbus Entities in law or equity, now existing or later arising, as may be discovered over the course of this litigation.

## PRAYER FOR RELIEF

WHEREFORE, the Airbus Entities respectfully request the following relief:

(a)    dismissal of Anaconda's Counterclaims against the Airbus Entities in their entirety with prejudice;

(b)    judgment in the Airbus Entities' favor and against Anaconda on all counts of Anaconda's Counterclaims;

(c)     denial of Anaconda's request for permanent injunctive relief;

(d)     denial of Anaconda's requests for damages;

(e)     denial of Anaconda's request for an order of impounding or destruction;

(f)     denial of Anaconda's request for attorneys' fees, statutory costs, and expenses;

(g)     an award to the Airbus Entities of its attorneys' fees, costs, and non-attorneys' fees incurred in defending against Anaconda's Counterclaims; and

(h)     such other and further relief as the Court deems just and proper.

Dated: November 5, 2025

FISH & RICHARDSON P.C.

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:
Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com; kessel@fr.com;
pearson@fr.com

Olivia T. Nguyen (*pro hac vice*)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
onguyen@fr.com

Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
wade@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-Counterclaim-Defendants Airbus Entities*