# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AIRBUS SAS,
AIRBUS DS GOVERNMENT SOLUTIONS, INC.,
AIRBUS HELICOPTERS, INC.,
AIRBUS U.S. SPACE & DEFENSE, INC.,
AIRBUS AMERICAS, INC., and
AIRBUS DEFENCE AND SPACE LTD.,

    Plaintiffs and Counterclaim Defendants,

    v.

ANACONDA, INC.,

    Defendant and Counterclaim Plaintiff.

**REDACTED PUBLIC VERSION**

C.A. No. 25-178-CFC-SRF

██████████████

---

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR A PRELIMINARY INJUNCTION

Grayson P. Sundermeir (#6517)
**FISH & RICHARDSON P.C.**
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
sundermeir@fr.com

*Attorney for Plaintiffs-Counterclaim-Defendants Airbus*

Dated:  December 8, 2025

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................... 1

II.   BACKGROUND ...................................................................................... 2

      A.   Anaconda Did Not Write, and Its Copyright Does Not Cover, Almost All of AD .............................................................................. 2

           1.   Conda-Compatible Packages ................................................. 3

           2.   Anaconda Distribution ........................................................... 4

III.  LEGAL STANDARD .............................................................................. 5

IV.   ARGUMENT ........................................................................................... 6

      A.   Anaconda Fails to Establish Irreparable Harm .............................. 7

           1.   The Only Alleged Cause of Anaconda's Harm—This Lawsuit—Is Protected by the Litigation Privilege ...................... 7

           2.   Anaconda Fails to Establish Causation and Ignores Its Own Culpability ...................................................................... 8

           3.   Anaconda's Conduct Disproves Irreparable Harm .................... 15

           4.   None of Anaconda's "Downstream Harms" Is Irreparable ........ 17

      B.   Anaconda's Copyright Claim Is Unlikely to Succeed ........................ 18

           1.   Anaconda's Recipes and Package List Are Free and Open-Source ......................................................................... 19

           2.   AD Is Largely Non-Copyrightable ............................................ 19

           3.   17 U.S.C. §103 Bars Anaconda's Copyright Claim ................... 25

      C.   Anaconda's Breach Claim Is Irrelevant ....................................... 27

V.    CONCLUSION ....................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
2023 WL 9061084 (D. Del. Apr. 14, 2023) .................................................15, 16

*Absolut Care of Allegany, LLC v. Anderson Alexander, PLLC*,
2025 WL 1640206 (E.D.N.Y. June 10, 2025) ...................................................18

*Adtile Techs. Inc. v. Perion Network Ltd.*,
2016 WL 3457152 (D. Del. June 23, 2016) ........................................................19

*Apple Comput., Inc. v. Franklin Comput. Corp.*,
714 F.2d 1240 (3d Cir. 1983) ..............................................................................19

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012) .............................................................................9

*Barker v. Huang*,
610 A.2d 1341 (Del. 1992) ...................................................................................7

*Bennington Foods LLC v. St. Croix Renaissance, Grp.*,
528 F.3d 176 (3d Cir. 2008) ..........................................................................17, 27

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
97 F.3d 1504 (1st Cir. 1996)................................................................................24

*Comput. Assocs. Int'l, Inc. v. Altai, Inc.*,
982 F.2d 693 (2d Cir. 1992) ................................................................................23

*ECRI v. McGraw-Hill, Inc.*,
809 F.2d 223 (3d Cir. 1987) ................................................................................18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)..............................................................................................22

*Frerck v. John Wiley & Sons, Inc.*,
850 F. Supp. 2d 889 (N.D. Ill. 2012)..............................................................16, 17

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015) ...............................................................18

*Genentech, Inc. v. Amgen Inc.*,
  2019 WL 3290167 (D. Del. July 18, 2019) ...........................................15, 16, 17

*Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*,
  2022 WL 3536494 (3d Cir. Aug. 5, 2022) .................................................10, 17

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021) ...............................................................................19

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
  882 F.2d 797 (3d Cir. 1989) ....................................................................6

*Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*,
  39 F.4th 1377 (Fed. Cir. 2022) ...............................................................10

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004) ............................................................*passim*

*Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*,
  562 F.3d 553 (3d Cir. 2009) ..................................................................17

*Lorenzana v. S. Am. Rests. Corp.*,
  799 F.3d 31 (1st Cir. 2015) ...................................................................24

*Mazurek v. Armstrong*,
  520 U.S. 968 (1997) .............................................................................5

*Perfect 10, Inc. v. Google, Inc.*,
  653 F.3d 976 (9th Cir. 2011) ................................................................8, 9

*Publ'ns Int'l, Ltd. v. Meredith Corp.*,
  88 F.3d 473 (7th Cir. 1996) ..................................................................24

*Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*,
  38 F.4th 331 (3d Cir. 2022) ...........................................................19, 22, 23

*Rader v. ING Bank*,
  2010 WL 1403962 (D. Del. Apr. 7, 2010) ...................................................7

iii

*Ritchie CT Opps, LLC v. Huizenga Managers Fund, LLC*,
    2019 WL 2319284 (Del. Ch. May 30, 2019)....................................................7, 8

*RJ Control Consultants, Inc. v. Multiject, LLC*,
    100 F.4th 659 (6th Cir. 2024) .............................................................................23

*Sheehan v. AssuredPartners, Inc.*,
    2020 WL 2838575 (Del. Ch. May 29, 2020)........................................................7

*Southco, Inc. v. Kanebridge Corp.*,
    390 F.3d 276 (3d Cir. 2004) ........................................................................23, 24

*Thomson Reuters Enter. Ctr. GMBH v. Ross Intel. Inc.*,
    765 F. Supp. 3d 382 (D. Del. 2025)....................................................................25

*Tomaydo-Tomahhdo, LLC v. Vozary*,
    2015 WL 410712 (N.D. Ohio Jan. 29, 2015) .....................................................25

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) .........................................................................15

**Statutes**

17 U.S.C. §103 ..................................................................................................25, 26

## I.    INTRODUCTION

Anaconda's motion—filed eight months into this litigation and five years since Anaconda started tracking Airbus's accused activities—is premised on factual omissions and legal errors and should be denied.

Anaconda falters right out the gate on irreparable harm.  Anaconda's sole theory—that *this lawsuit* tarnished Anaconda's reputation, causing various downstream harms—is barred by the litigation privilege.  Anaconda also presents no evidence of a causal nexus between the conduct it seeks to enjoin and its alleged harms, relying entirely on an Anaconda executive who asserts the causal link is "obvious" but conceded Airbus has never come up in her conversations with customers.  In contrast, copious evidence withheld until the Friday night before this brief was due shows *Anaconda itself* caused any harms by adopting ███████

████████████████████████████████████████████████

████████████████████████████████████████

Finally, Anaconda waited *years* to seek injunctive relief, and rather than blocking the alleged offending downloads itself, it repeatedly offered Airbus a license.

Anaconda's likelihood-of-success arguments fare no better.  Anaconda's copyright claim concerns <1% of the Anaconda Distribution ("AD"), consisting of small portions of certain so-called "recipe" files that include metadata and a package-download tool that Anaconda does not allege Airbus ever used.  Almost

everything else was created by others and is facially excluded from Anaconda's copyright registration. Setting aside the download tool, what little remains is uncopyrightable: it is functional, and Anaconda's engineers do not express creativity in implementing the functional ideas captured in the portions of "recipes" Anaconda claims to have written.

Further, Anaconda publishes all its "recipes" under open-source licenses permitting free public use. Not only does this undermine Anaconda's claims, it rebuts Anaconda's theory of harm: Anaconda cannot be irreparably harmed by Airbus copying files that Anaconda has licensed the world to copy for free. Anaconda's copyright claim is also statutorily barred by its own violations of the license terms for materials Anaconda itself copied.

Finally, contract claims give rise to money damages, not injunctive relief, with rare exceptions absent here. Anaconda ignores this law entirely.

## II.    BACKGROUND

### A.    Anaconda Did Not Write, and Its Copyright Does Not Cover, Almost All of AD

Anaconda's claim that it "creat[ed]…thousands of…conda-compatible packages" and AD itself greatly overstates its contributions. Br.4, 10-11. The portions of "recipes" in AD that Anaconda contends it created and are the core of its copyright claim comprise *0.1%* of AD. Mellor ¶¶29, 74. Moreover, Anaconda publishes even these minutiae under open-source licenses, allowing anyone to use

2

them freely. *Id.* ¶¶30, 136-142. The balance corresponds almost entirely to "third-party computer programs," which its copyright registration facially excludes. *Id.* ¶¶36, 74.

### 1.    Conda-Compatible Packages

A vast ecosystem of free, open-source ("FOS") software surrounds the Python programming language. *Id.* ¶38. Anaconda's expert provides examples, like NumPy, Pandas, and scikit-learn—all created by others and available for free. Mitzenmacher ¶105; Mellor ¶41. Anaconda downloads this third-party free software and bundles it as "conda-compatible packages," comprising: (1) the FOS software itself and (2) small amounts of metadata. Mellor ¶¶39-41.

Item (1) makes up about 99% of AD's code. *Id.* Anaconda's registration "excludes" such "third-party computer programs." *Id.* ¶36.

Anaconda does not contend its copyright covers all of item (2). Rather, most metadata is copied from third parties or machine-generated. Mitzenmacher ¶86; Mellor ¶¶58-74. Anaconda argues only that a sliver of it is copyrightable: portions of so-called "recipe" files, which provide the instructions used to assemble a conda-compatible package. Br.10; Mitzenmacher ¶64.

"Recipes" specify the "ingredients" in a package—*e.g.*, the software dependencies upon which a package relies—and other configuration information (*e.g.*, requirements and build instructions). They are neither used nor copied when

3

the software in the package is executed.  Mellor ¶¶131-135.  Anaconda claims it created portions of these recipes[1] that are subject to its copyright.  These portions comprise 0.1% of AD, and a miniscule proportion of Anaconda's conda-compatible packages.  Mellor ¶¶73-74.

Although Anaconda claims its recipes drive the value of AD and its repo.anaconda.com packages, *see* Br.4-5, 10, Anaconda *publishes at least 97% of them for free*, for anyone to use, under open-source licenses.  Mellor ¶¶136-142.

### 2.    Anaconda Distribution

AD is a bundle of software comprising: (1) conda, (2) Python, (3) Anaconda Navigator, and (4) roughly 500 conda-compatible packages.

Per Anaconda, "conda…is free to use by anyone," "open source," and "always has been."  Ex. A,[2] -21651.  Anaconda's motion does not assert conda-based infringement.

Python, too, is FOS.  Mellor ¶38.  Anaconda's motion does not assert Python-based infringement.

---

[1] Most contents of these recipes originate from a third-party source called "conda-forge."  Mellor ¶¶60-74.  Despite Anaconda's use of conda-forge recipes, Anaconda violates the open-source license associated with them.  *See* §IV.B.3,

[2] Exhibits are attached to Alexander Pechette's declaration.

Anaconda Navigator is a graphical tool for selecting and downloading FOS software. Anaconda contends Navigator is copyrightable, Br.11, but cites no evidence that Airbus ever used Navigator, nor is Airbus aware of any use.[3]

The ~500 conda-compatible packages are almost entirely excluded from Anaconda's copyright protection, although Anaconda claims that its copyright covers portions of the "recipe" files included in those packages. Mitzenmacher ¶64; Mellor ¶36.

Anaconda never clearly articulates what else its copyright allegedly covers. Its copyrightability argument addresses only the aforementioned portions of "recipes," the "curation" of packages, and Navigator. Br.10-11; Mitzenmacher §VI.

## III.    LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)

---

[3] At best, the record indicates ████████████ Navigator ████████████████████████. *See* Mitzenmacher ¶¶142-143. Anaconda's tabulations of such downloads are irrelevant because they neither bear on purported irreparable harm nor show copyrightability. *See* §§IV.A-B. Anaconda's claim about alleged ███████████████████ is similarly irrelevant—Anaconda's expert does not even claim that "use" of AD creates an allegedly infringing copy of any Anaconda material. Ex. V (200:7-15); Mellor ¶¶131-135 (Anaconda's recipes are not copied when using AD).

(emphasis original).  A preliminary injunction is improper unless it is "the *only* way of protecting the plaintiff from harm."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).[4]

## IV.   ARGUMENT

On irreparable harm: (1) the only purported cause of the harm—this lawsuit—is protected by the litigation privilege; (2) Anaconda fails to establish a nexus between any accused act and any alleged harm while ignoring evidence that establishes *Anaconda's* conduct caused any harm; (3) Anaconda's actions (*e.g.*, undue delay) bely irreparable harm; and (4) any alleged "downstream harms" are not irreparable.

These failings alone are fatal, but if the Court reaches the likelihood-of-success factor, the only relevant material Anaconda authored is not copyrightable because it lacks creative expression.  It is also available for free under open-source licenses.  Finally, Anaconda's own license violations statutorily bar most of its copyright claim.

---

[4] All emphasis and annotations added unless noted otherwise.

## A.    Anaconda Fails to Establish Irreparable Harm

### 1.    The Only Alleged Cause of Anaconda's Harm—This Lawsuit—Is Protected by the Litigation Privilege

The litigation privilege protects a party's statements in litigation that are relevant to the case.  *Rader v. ING Bank*, 2010 WL 1403962, *10 (D. Del. Apr. 7, 2010).  Although this privilege arose in the defamation context, it also applies to "tort" and "contract" claims.  *Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992); *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, *16 (Del. Ch. May 29, 2020).

The litigation privilege bars claims that litigation harmed an opponent's reputation.  In *Ritchie CT Opps, LLC v. Huizenga Managers Fund, LLC*, for example, the court held the privilege precluded injunctive relief premised on the argument that litigation-related statements irreparably harmed the plaintiff's "reputation" and "brand."  2019 WL 2319284, *13-14 (Del. Ch. May 30, 2019).

Like the *Ritchie* plaintiff, Anaconda relies solely on this litigation to attempt to show irreparable harm.  Anaconda's sole fact witness on irreparable harm, Chief Commercial Officer Jane Kim, asserts that ██████████████████████████ ████████████████████████████████ Airbus harmed Anaconda's ██████████████████████████ Kim ¶17.  She also claims these alleged ████████ ██████████████ ████████████████████ ████████████████████████

██████████████████████████████████████████████████████

*Id.* ¶¶18-26.  This ████████████████ of irreparable harm requires evidence of public awareness of Airbus's alleged conduct, hence Anaconda's emphasis on the supposedly public nature of such conduct.  *See* Br.15-17.

Kim's only identification of alleged "public" conduct is "*this lawsuit*."  Kim ¶16.  Indeed, ██████████████████████████████

████████████████████.  *Compare id.* ¶¶13, 17, 21, *with* Ex. B (57:21-58:1, 62:18-63:19, 70:3-21).  Although she tried to pivot to an allegation in her declaration about a conversation between an Airbus employee and Anaconda salespeople (in which she didn't participate), she couldn't identify any evidence the conversation was public.  Ex. B (55:18-57:1, 60:20-24).  Moreover, her sworn account of the conversation is false, and was provided to her by Anaconda's general counsel (who also lacked personal knowledge).  *Id.* (18:23-19:7); D.I.112-2 ¶12.

Because Anaconda's irreparable-harm theory rests entirely on Airbus's litigation activity, the litigation privilege precludes it.  *Ritchie*, 2019 WL 2319284, *13-14.

### 2.  Anaconda Fails to Establish Causation and Ignores Its Own Culpability

Anaconda's irreparable-harm theory also fails for lack of "causal connection" between the alleged irreparable harm and the conduct Anaconda seeks

to enjoin.  *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011); *see also Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012) (requiring "causal nexus").

First, Anaconda's alleged cause of irreparable harm (this lawsuit) is different from the conduct Anaconda seeks to enjoin (download and use of Anaconda's software), which underscores the lack of causal connection.  *See* §IV.A.1.

Second, Anaconda presents no evidence that *any* Airbus conduct caused the alleged harm, while omitting evidence that *Anaconda* is to blame.  Anaconda withheld the most damning evidence on this issue until after close-of-business on the business day before this opposition was due.  This evidence shows that the real reasons for Anaconda's difficulties include ███████████████████ ████████████████████████████████████████ ██████████████████████████ Ex. H, -22002, -22014; Exs. L-N.  None identifies Airbus as a cause.

***As to Airbus:***  Anaconda relies entirely on Kim for causation, Br.15-21, but she offers only conclusory assertions.  She claims this lawsuit ██████████████ ████████████████████████████████████████, and that there's ████████████ between this lawsuit and Anaconda's diminished ████████ ████████ Kim ¶¶17-18, 26.  Yet she cites no evidence for any of this.  *See Perfect 10*, 653 F.3d at 982 (faulting "fail[ure] to submit a statement from even a

single former subscriber who ceased paying for Perfect 10's service because of…Google"); *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, 2022 WL 3536494, *7 (3d Cir. Aug. 5, 2022) (faulting failure to "cite specific instances of the loss of good will"). Indeed, she admitted Airbus hasn't ██████████ ████████████████████ Ex. B (55:4-8). The Court should thus reject Anaconda's irreparable-harm theory. *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022) (affirming this Court's PI denial because movant "did not present any evidence that it lost customers, had customers delay purchases, or struggled to acquire new business because of the ongoing…proceedings").

Anaconda cannot rely on its damages expert for causation. He did not analyze this issue, relying entirely on Kim instead. Malaspina ¶¶6, 38; Ex. C (86:1-87:2).

*As to Anaconda:* ████████████████████ ███████████████████████████████████ ████████████████ Br.17; Kim ¶10. Industry publications reported Anaconda "broaden[ed] its pursuit of what it sees as violators of its shifting terms-of-service" and sent numerous demand letters, including to "[r]esearch and academic organizations" despite previously promising to "*always* offer a free version for academics [and] non-profits." Ex. D, -21617.

Backlash was severe.  One commentator accused Anaconda of "lying" to academic and non-profit institutions.  *Id.*, -21622.  Another said Anaconda's practices exacerbated his institution's "perception of [Anaconda] as an unreliable partner."  *Id.*, -21623.  Another accused Anaconda of "attempting to extort the community" and called for Anaconda to be "crushed without recourse."  *Id.*  Yet another said Anaconda's "Bait and Switch" approach "should be outlawed."  *Id.*

Anaconda's tactics tarnished its reputation.  Kim admitted customers were ███████████████████████████████ by Anaconda's conduct—facts her declaration omits.  Ex. B (123:22-124:1).  An Anaconda co-founder ██████ ██████ and admitted it would take time and effort to "[r]ebuild[]" trust—"the most valuable currency in open source."  Ex. E, -06085, -06087.  Another Anaconda co-founder acknowledged that ████████████████████████ ███████████████████████████████████████ ████████████:

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

Ex. F, -17145.



Ex. G, -20125.  Shortly thereafter, Anaconda revised its ToS again, stripping

protections for licensees, including by removing a damages cap.  D.I.147, 8.



For example, in

that Kim omits from her declaration, she identified



Ex. H, -22002.  In a ███████████████, she admitted ███████ ████████████████████████████████████████████ ███████████████████████████████



Ex. I, -21977.  Anaconda's alleged harm was self-inflicted, as Anaconda (and Airbus's damages expert) extensively documented.  Bell ¶¶44-72.

Although Anaconda and Kim accuse Airbus (without evidence) of causing ████████████████, Br.17, they ignore Anaconda's own records documenting the reasons for ███████  None of these records—also withheld until the eve of this opposition—mentions Airbus.  They instead say prospects ███████████ ███████████████████████████████████████████ ███████



Exs. J-P; *see also* Ex. H, -21995, -22002 (████████████████████████████

████████████████).

Anaconda's last-minute document dump reveals the truth. ████████████████

████████████████████████████████████████ Anaconda omits this,

while simultaneously claiming without evidence that Airbus caused Anaconda's

problems.  It is troubling that these materials were only uncovered during Kim's

November 18 deposition, that Anaconda's counsel shut down questioning about

them, and that Anaconda fought doggedly to withhold them, relenting only after

threatened motion practice with a late and heavily redacted production.  Ex. B

(83:8-84:11, 91:17-92:12, 94:1-97:9, 100:9-101:13, 124:16-125:14); Ex. Q.  That

Anaconda advanced a theory of irreparable harm so thoroughly rebutted by its

internal documents, while failing to even acknowledge their existence, reflects the

weakness of its position.

The Court should find any alleged irreparable harm is attributable to

Anaconda, not Airbus.

### 3.    Anaconda's Conduct Disproves Irreparable Harm

#### a.    *Anaconda's Delay*

"[U]ndue delay…negates the idea of irreparability."  *Genentech, Inc. v.
Amgen Inc.*, 2019 WL 3290167, *2 (D. Del. July 18, 2019) (cleaned up).  This
Court has found a 14-month delay "sufficient by itself to deny the motion."  *Id.* at
*2-3.  Even shorter delays are undue.  *E.g.*, *Wreal, LLC v. Amazon.com, Inc.*, 840
F.3d 1244, 1248 (11th Cir. 2016).

Here, Anaconda's telemetry purports to show Airbus's unauthorized
downloads of Anaconda's software starting in March *2020*.  Mitzenmacher ¶¶140,
150-51.  In February *2024*, Anaconda accused Airbus of "unauthorized usage" and
"breach of Anaconda's [ToS]."  D.I.103-15.  Anaconda then waited until April
2025 to file its claims and October 2025 to seek "preliminary" relief.  Even the
eight-month delay between Airbus's complaint and Anaconda's motion is undue.
*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, 2023 WL 9061084, *9 (D. Del. Apr.
14, 2023).

#### b.    *Anaconda Encouraged and Declined to Block Alleged Use*

Anaconda can block access to its software and has for other enforcement
targets.  Br.7 n.3; Yang ¶19; D.I.1-1 ¶7.  Yet Anaconda chooses not to block
Airbus, despite Airbus informing Anaconda that any access to its software would
be "inadvertent" because Airbus does not seek to use it, and despite ███

15

███████████████████████████████████████████████ that Anaconda

associated with Airbus by May 2024.  D.I.148-5, 2; Mellor ¶¶147-149.

Anaconda's decision not to simply block ██████████████ belies its claim of

irreparable harm based on those downloads.

    Indeed, Anaconda has encouraged Airbus to use its software, because it

wants Airbus to become a paying licensee.  Just one month before Anaconda's

motion, for example, an Anaconda salesperson emailed an Airbus employee,

noting that the employee's alleged usage of Anaconda software "beyond the

standard [ToS]" was "great to see!"  D.I.112-2 Ex. A, 3.  Soon thereafter, he even

told the employee to "feel free to continue as is."  *Id.*, 1.  Although Anaconda's

salesperson was mistaken—the Airbus employee does *not* use Anaconda's

software for his job, D.I.112-2—this messaging is antithetical to the claim that

alleged unlicensed use irreparably harms Anaconda.

### c.    Anaconda Is Willing to License

    Anaconda's entire business is licensing, which proves any "invasion of the

[IP] right can be recompensed with a royalty rather than with an injunction."

*Genentech*, 2019 WL 3290167, *3 (cleaned up); Kim ¶25.  Moreover, Anaconda is

willing to license Airbus and "primarily wants to be compensated with money…for

[alleged] unauthorized use."  *Frerck v. John Wiley & Sons, Inc.*, 850 F. Supp. 2d

889, 893 (N.D. Ill. 2012); Ex. R (offering to "forgive" unauthorized use if Airbus

agreed to $878,000/year license); D.I.103-14; D.I.103-16 (stating alleged "improper use" could be remedied with payment and "commercial agreement"); D.I.112-2 Ex. A.

Having declined to block Airbus's access, sat on its rights for years, and built its business on licensing rather than retaining exclusive rights, Anaconda cannot claim irreparable harm. *Genentech*, 2019 WL 3290167, *3; *Frerck*, 850 F. Supp. 2d at 893.

### 4. None of Anaconda's "Downstream Harms" Is Irreparable

Anaconda argues the ███████████████████████ ███████████████ Br.17, but ████████████ is *monetary*, not irreparable, harm. *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 562 F.3d 553, 557 (3d Cir. 2009); Bell ¶¶76-78. Thus, this alleged harm does not support injunctive relief.

Anaconda tries to parlay █████████████████ into irreparable harm by arguing they *might* impact ████████████████████████████ ██████████████████████ Kim ¶¶20, 23; Br.18-19. But Anaconda cannot "convert monetary harm into irreparable harm simply by claiming" speculative downstream effects. *Bennington Foods LLC v. St. Croix Renaissance, Grp.*, 528 F.3d 176, 179-80 (3d Cir. 2008); *see also Golden Fortune*, 2022 WL 3536494, *7 ("the harm caused must be direct," not "two-step").

17

These alleged harms are also inchoate.  First, Kim admitted ████████ ████████████████████████████████ Ex. B (113:12-18).  Second, she merely posits ███████████████████████████████████████████ ████████████████ Kim ¶23, which is "not enough."  *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *see also Absolut Care of Allegany, LLC v. Anderson Alexander, PLLC*, 2025 WL 1640206, *3 (E.D.N.Y. June 10, 2025).

## B.    Anaconda's Copyright Claim Is Unlikely to Succeed

Anaconda's copyright claim is exceedingly narrow and unrelated to its alleged irreparable harm: Anaconda does not attempt to tie its alleged reputational and financial harm to the sliver of AD it contends is copyrightable and copyrighted.  This alone is fatal.  *See Garcia v. Google, Inc.*, 786 F.3d 733, 744 (9th Cir. 2015) ("[T]here is a mismatch between her substantive copyright claim and the dangers she hopes to remedy through an injunction. Garcia seeks a preliminary injunction under copyright law…Hence, Garcia's harm must stem from copyright—namely, harm to her legal interests as an author.").  Regardless, Anaconda's copyright claim for this minimal material is unlikely to succeed because that material is available under open-source licenses and generally not copyrightable.  Finally, Anaconda's own license violations regarding third-party material within AD statutorily bar its related infringement claim.

### 1.    Anaconda's Recipes and Package List Are Free and Open-Source

Anaconda publishes at least 97% of AD's recipes under open-source licenses.  Mellor ¶¶136-142; Ex. S (117:9-118:20).  Thus, everyone (including Airbus) is freely licensed to these recipes' copyrightable content (if any).  *See Adtile Techs. Inc. v. Perion Network Ltd.*, 2016 WL 3457152, *5-7 (D. Del. June 23, 2016).  Anaconda fails to demonstrate how it could be irreparably harmed by Airbus copying recipes that are free to copy.

Anaconda's list of "curated" packages in AD is also free; Anaconda publishes it online.  Anaconda has not identified any license restrictions on use of this list.  Ex. S (83:3-85:18).

### 2.    AD Is Largely Non-Copyrightable

Computer code may be entitled to "thin" copyright protection only if it contains creative expression.  *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 17-18, 21 (2021); *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 540-41 (6th Cir. 2004).  Functionality is non-copyrightable, *Pyrotechnics Mgmt., Inc. v. XFX Pyrotechnics LLC*, 38 F.4th 331, 338 (3d Cir. 2022), and code is not creative when there are few ways to express the functionality it implements, or when it is dictated by external influences, like a programming language's requirements, *Lexmark*, 387 F.3d at 535-36 (discussing, *e.g.*, *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1253 (3d Cir. 1983)).  Since

Anaconda's minor contributions to AD are purely functional, and because Anaconda's engineers have little to no discretion in expressing their implementation, they are non-copyrightable.

Anaconda Navigator aside,[5] the only material in AD Anaconda contends is copyrightable is (1) portions of "meta.yaml" recipe files, and (2) Anaconda's selection of packages.  Mellor ¶¶75-77.

Meta.yaml recipes accompany most of AD's packages.  Mellor ¶¶44-51. They specify information about how packages are built, such as the package's name and version, information about "dependencies, information about where to get the [code for the packaged software]," and "other ancillary metadata."  Ex. S (91:23-92:5); Mitzenmacher ¶50; Mellor ¶45.  Engineers "must comply with" an external specification that strictly defines the structure and syntax of meta.yaml files, requiring particular organization and syntax for the files to work.  Ex. S (48:1-5); Mellor ¶45.  This specification provides an example of a compliant meta.yaml recipe:

---

[5] It's unclear what license applies to Navigator, which includes no license disclosure.  Regardless, there's no evidence Airbus ever used it, nor that any copying of Navigator caused harm.

```
{% set version = "1.1.0" %}

package:
  name: imagesize
  version: {{ version }}

source:
  url: https://pypi.io/packages/source/i/imagesize/imagesize-{{ version }}.tar.gz
  sha256: f3832918bc3c66617f92e35f5d70729187676313caa60c187eb0f28b8fe5e3b5

build:
  noarch: python
  number: 0
  script: python -m pip install .

requirements:
  host:
    - python
    - pip
  run:
    - python

test:
  imports:
    - imagesize

about:
  home: https://github.com/shibukawa/imagesize_py
  license: MIT
  summary: 'Getting image size from png/jpeg/jpeg2000/gif file'
  description: |
    This module analyzes jpeg/jpeg2000/png/gif image header and
    return image size.
  dev_url: https://github.com/shibukawa/imagesize_py
  doc_url: https://pypi.python.org/pypi/imagesize
  doc_source_url: https://github.com/shibukawa/imagesize_py/blob/master/README.rst
```

Ex. W, -348.  As shown, information like the package's name is specified by typing "package: name:" followed by the name.  Similarly, the source of the package's code is specified by typing "source: url:" followed by a hyperlink. Engineers have no discretion in entering the text string "source: url:," as the specification mandates it.  Mellor ¶¶121-122.  Nor do they have meaningful discretion in inserting the URL—it must be specified.  Ex. S (99:1-101:14).

21

Anaconda argues its recipe contributions are copyrightable based on the "effort" and "discretion and choice" involved in drafting them.  Mitzenmacher ¶64, §VI.C; Br.4-5.  But "effort" does not bestow copyrightability.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 359-64 (1991) ("copyright rewards originality, not effort" or "sweat of the brow").  As to "discretion and choice," Anaconda is off-base because it does not attempt to distinguish between uncopyrightable idea and copyrightable expression, ignores that Anaconda's contributions are purely functional (and functionality is not copyrightable), *Pyrotechnics*, 38 F.4th at 338, and ignores the merger doctrine, which precludes copyright where, as here, "there is only one way or very few ways of expressing the idea."  *Lexmark*, 387 F.3d at 535-36.

Anaconda's expert declaration illustrates these problems.  For example, it contends that Anaconda's addition of "s" in the following meta.yaml excerpt reflects a creative "choice" to use the more secure "https" protocol instead of "http":



Mitzenmacher ¶129.  This contention ignores:

- The ***idea*** of using HTTPS instead of HTTP is not copyrightable. *Pyrotechnics*, 38 F.4th at 337.  What could be copyrightable is a creative expression of that idea (not present here).

- The "https" expression is purely functional. *Id.* at 338. It's an instruction to use a secure protocol. Mellor ¶120. It includes no creative content beyond this function.

- Use of HTTPS can be implemented only by adding "https" to the meta.yaml file, and is thus subject to merger. Ex. S (99:21-100:4); Mellor ¶¶120-123; *Lexmark*, 387 F.3d at 535-36.

These same deficiencies pervade Anaconda's examples of supposed creative choices. Choosing to build a package using particular "host/runtime" dependencies or "package outputs" (Br.10; Mitzenmacher ¶¶105-118) is a (functional) *idea*; ideas are not copyrightable, even if they have benefits. *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 281-84 (3d Cir. 2004). Anaconda never explains how its *expression* of these ideas in a recipe is copyrightable, nor can it. Regarding dependency specification, for example, there are roughly two ways to express it: writing a dependency's name, or using a variable to do the same thing. Mellor ¶¶115-116; Ex. S (138:19-140:13); *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 674 (6th Cir. 2024) ("[T]hat an author can write a software program several ways does not automatically entitle the program to copyright protection.").[6] The same is true for Anaconda's expert's other examples

---

[6] Anaconda cannot circumvent merger by conjuring trivial or obtuse ways to express functional ideas embodied in meta.yaml recipes. *See Comput. Assocs.*

(which go unaddressed in Anaconda's brief).  Mellor ¶¶94-130.  Its expert does not specify *creative* differences in expression of testing commands, (Mitzenmacher ¶¶120-121), and ignores that short, functional phrases like "tests done during build" (*id.* ¶131) are neither creative nor copyrightable.  *Southco*, 390 F.3d at 285-87; *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519-21 (1st Cir. 1996).

Anaconda's engineering declarant analogized Anaconda's meta.yaml recipes to culinary recipes used "[w]hen baking," noting that choices in a recipe impact the result: "chocolate chip cookies can be vastly different, depending on the amount of flour, salt, sugar, baking soda, egg, and chocolate chips, or other ingredients are used."  Lee ¶17.  This is an apt analogy for meta.yaml recipes, which list ingredients (*e.g.*, dependencies), the steps to turn them into a final product (*i.e.*, to build a package), and other related information.  But it is well-established that cooking recipes are not copyrightable.  *Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31, 34-35 (1st Cir. 2015) ("mere listing of ingredients is not subject to copyright protection"); *Publ'ns Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 480 (7th Cir.

_____

*Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 708 (2d Cir. 1992) ("While, hypothetically, there might be a myriad of ways in which a programmer may effectuate certain functions within a program[,] efficiency concerns may so narrow the practical range of choice as to make only one or two forms of expression workable options."); *Lexmark*, 387 F.3d at 535-36, 540 (rejecting alternative expressions as "trivial," "inefficient," and "repetitive").

1996) (list of ingredients and directions lacked "expressive elaboration upon either
of these functional components," like "weav[ed] in creative narrative"); *Tomaydo-
Tomahhdo, LLC v. Vozary*, 2015 WL 410712, *3 (N.D. Ohio Jan. 29, 2015) ("The
identification of ingredients necessary for the preparation of food is a statement of
facts" lacking an "expressive element," thus "recipes are functional directions for
achieving a result and are excluded from copyright protection."), *aff'd*, 629
F.App'x 658 (6th Cir. 2015).

As to Anaconda's selection of packages in AD, Anaconda hasn't argued
there are multiple ways to express this list in its code or identified anything beyond
pure functionality in the expression of the list, and ignores that it includes no
particular arrangement—it is akin to a list of ingredients.  Mellor ¶¶78-79;
*Lexmark*, 387 F.3d at 535-36; *cf. Thomson Reuters Enter. Ctr. GMBH v. Ross
Intel. Inc.*, 765 F. Supp. 3d 382, 393 (D. Del. 2025), *motion to certify appeal
granted*, 2025 WL 1488015 (D. Del. May 23, 2025) (creativity finding based on
"many possible, logical ways to organize" list and "carefully cho[o]s[ing]"
portions of judicial opinions that "distill[], synthesiz[e], or explain[]" and reflect
"editorial expression").

### 3.    17 U.S.C. §103 Bars Anaconda's Copyright Claim

Each recipe Anaconda's expert discusses originated from a third-party
source called "conda-forge."  Mitzenmacher ¶¶99-104.  Anaconda argues that its

modifications to those recipes are copyrightable. Br.10. In works like these based on "preexisting material," copyright protection "does not extend to any part of the work in which such material has been used unlawfully." 17 U.S.C. §103. Yet Anaconda's copyright-infringement theory concerns copies of AD packages in which Anaconda violates the license applicable to the underlying conda-forge recipe and thus uses it unlawfully. Exs. S (178:18-180:4), T, U (noting "conda-forge license violation").

The conda-forge licenses require that all "downstream" "uses of conda-forge's recipes"—such as packages "produce[d]" by the recipes that are included in AD—include a copy of the license and copyright notice. Ex. U. During a conda-forge meeting discussing these license requirements, Anaconda committed to "follow up to ensure recipe licenses are properly handled (copied into packages' metadata directory…)." Ex. T, 2. And although Anaconda internally discussed

███████████████████████████████████████████████████

███████. Ex. S (178:18-180:4). Almost all recipes included in AD—the crux of Anaconda's copyright claim—are thus not protected by copyright, because they are included within packages that make "unlawful use" of related conda-forge recipe files. 17 U.S.C. §103; Mellor ¶¶143-146.

26

### C. Anaconda's Breach Claim Is Irrelevant

To establish irreparable harm from a contract breach, a movant must prove its business "is different from other types of commerce in such a way that normal breach of contract remedies could not provide a remedy." *Bennington*, 528 F.3d at 179. Anaconda neither acknowledges nor addresses this law. Nor could it: Anaconda has repeatedly offered to accept money to resolve Anaconda's breach claim and "forgive" alleged unauthorized use. *E.g.*, Ex. R; D.I.103-14; D.I.103-16. Anaconda does not contend its contract claim warrants an injunction that is independent from its copyright claim, and its requested relief sounds in copyright law, not contract. Br.22 (contending requested injunction "simply requires compliance with the Copyright Act"). Indeed, Anaconda's 2024 ToS limit liability at fees paid to Anaconda or $100. D.I.1-3 §11.1. Anaconda's breach-of-contract claim is thus irrelevant.

## V. CONCLUSION

Accordingly, Anaconda's motion should be denied.

Dated: December 8, 2025

**FISH & RICHARDSON P.C.**

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:

Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com;  kessel@fr.com;
pearson@fr.com; pechette@fr.com

Olivia T. Nguyen (*pro hac vice*)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (858) 839-5070
onguyen@fr.com

Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
wade@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-Counterclaim-Defendants Airbus*

## <u>WORD COUNT VERIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 4,992 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the foregoing document.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 8, 2025, I caused the foregoing to be served *via* electronic mail upon all counsel of record.

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)