# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

AIRBUS SAS,
AIRBUS DS GOVERNMENT SOLUTIONS, INC.,
AIRBUS HELICOPTERS, INC.,
AIRBUS U.S. SPACE & DEFENSE, INC.,
AIRBUS AMERICAS, INC., and
AIRBUS DEFENCE AND SPACE LTD.,

      Plaintiffs and Counterclaim Defendants,

      v.

ANACONDA, INC.,

      Defendant and Counterclaim Plaintiff.

**PUBLIC VERSION**

C.A. No. 25-178-CFC-SRF

███████████████

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO ANACONDA, INC.'S MOTION FOR LEAVE TO FILE AMENDED ANSWER, JOIN A PARTY, AND ASSERT ADDITIONAL COUNTERCLAIMS

Dated: January 7, 2026

Grayson P. Sundermeir (#6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:
Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
Kayleigh E. McGlynn (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com; kessel@fr.com;
pearson@fr.com; pechette@fr.com;
mcglynn@fr.com

Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
wade@fr.com

Olivia T. Nguyen (*pro hac vice*)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
onguyen@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-Counterclaim-Defendants Airbus*

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. NATURE AND STAGE OF PROCEEDINGS...............................................3

III. SUMMARY OF ARGUMENT.....................................................................4

IV. FACTS ...............................................................................................4

    A. Anaconda's New Contract Terms ......................................................6

        1. Material Differences Between the March 2024 and July 2025 Terms ...........................................................6

        2. Anaconda's Purported Notice of the Changes..........................7

        3. Airbus's Response to the New Terms and Anaconda's Follow-Up ..............................................................8

    B. Anaconda's Mid-Litigation Applications for New Copyright Registrations ...............................................................9

V. LEGAL STANDARD ............................................................................10

VI. ARGUMENT.......................................................................................11

    A. Anaconda's Attempt to Replace Its Original Contract Claim With One Based on the July 2025 Terms Is Futile ...........................11

        1. Anaconda Fails to Plausibly Allege Contract Formation via an Agent of Airbus ..............................................11

        2. Anaconda's Group Pleading Fails to Plausibly Allege Breach by Any Particular Airbus Entity, Let Alone All of Them ...............................................................14

    B. Anaconda's Motion Is Brought in Bad Faith and With Dilatory Motive......................................................................15

    C. Anaconda Unduly Delayed in Applying for Copyright Registrations, and Adding New Copyrighted Works to This Case Would Unduly Prejudice Airbus .................................................................18

    D. Adding Copyrighted Works to This Case Does Not Support Judicial Efficiency ...............................................................22

VII. CONCLUSION....................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AA Med. P.C. v. Almansoori*,
 2023 WL 7688688 (E.D.N.Y. Oct. 4. 2023) .........................................10, 18, 19

*Affordable Bus. Interiors, Inc. v. Pomeroy IT Sols. Sales Co.*,
 336 F.R.D. 162 (N.D. Ill. 2020)...........................................................................12

*Akers v. Minn. Life Ins. Co.*,
 35 F. Supp. 3d 772 (S.D.W. Va. 2014).................................................................12

*Alcoa Inc. v. Alcan Rolled Prods.-Ravenswood LLC*,
 2017 WL 5957104 (D. Del. Dec. 1, 2017) ...........................................................21

*BTG Int'l Ltd. v. Actavis Labs. FL, Inc.*,
 2017 WL 529446 (D.N.J. Feb. 8, 2017) ...............................................................22

*Cureton v. NCAA*,
 252 F.3d 267 (3d Cir. 2001) .........................................................................10, 11

*D&G Equip. Co. v. First Nat'l Bank of Greencastle*,
 764 F.2d 950 (3d Cir. 1985) .................................................................................13

*Design With Friends, Inc. . Target Corp.*,
 2023 WL 3434013 (D. Del. May 12, 2023) .....................................................13, 17

*Heckman v. Live Nation Entertainment, Inc.*
 686 F. Supp. 3d 939 (C.D. Cal. 2023) ...........................................................16, 18

*Micro Focus (US), Inc. v. Ins. Servs. Off., Inc.*,
 2021 WL 4061141 (D. Del. Sept. 7, 2021).........................................................13

*Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*,
 433 F. App'x 842 (11th Cir. 2011) ....................................................................12

*RSM Prod. Corp. v. Fridman*,
 643 F. Supp. 2d 382 (S.D.N.Y. 2009) ...............................................................11

*Schmidt v. Skolas*,
 770 F.3d 241 (3d Cir. 2014) ...............................................................................13

*Semiconductor Energy Lab. Co. v. Sanyo N. Am. Corp.*,
    2001 WL 194303 (D. Del. Feb. 22, 2001)..........................................................21

*Site Microsurgical Sys., Inc. v. Cooper Cos.*,
    797 F. Supp. 333 (D. Del. 1992)........................................................................10

*T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*,
    2017 WL 896988 (D. Del. Mar. 7, 2017)..........................................................14

*Yenchik Elliott v. GTC Logistics, Inc.*,
    2025 WL 257603 (M.D. Pa. Jan. 21, 2025)........................................................21

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ................................................................10

Federal Rule of Civil Procedure 68 ..............................................................5, 6, 15

## I.    INTRODUCTION

This is not a garden-variety software dispute.    Anaconda's business is packaging and distributing free and open-source software developed and owned primarily by third parties.  Anaconda historically provided this material for free, with an option to pay for certain uses.  In 2024, Anaconda adopted a litigation-driven model, threatening users with large damages demands for alleged copyright infringement and breach of contract.  But as it pivoted to litigation, Anaconda overlooked that its operative contract expressly limited liability to a trivial sum.  Anaconda now seeks via this motion to rewrite and replace the contract it drafted and originally sued Airbus for allegedly violating.  Anaconda's motion should be denied.

Anaconda answered Airbus's original declaratory complaint with a counterclaim for breach of its then-operative March 2024 Terms.  In response, Airbus raised two key provisions: a jury waiver and a bilateral limitation of liability, the latter capping Anaconda's potential breach damages to $100.  This motion is the culmination of Anaconda's strategy to dodge these provisions, seeking to amend its counterclaim to replace its March 2024 Terms with a new litigation-driven contract ("July 2025 Terms"), which omits the provisions inconvenient to Anaconda's case.  This proposed contract amendment fails both because it is futile—Anaconda has not

and cannot properly allege the requisite contract formation related to the July 2025 Terms—and because it is made in bad faith.

As to contract formation, Anaconda fails to identify any agent with authority to accept the July 2025 Terms on Airbus's behalf, despite agency being essential to its theory of contract formation. Anaconda cannot plausibly plead facts to establish contract formation, because after Anaconda announced its intent to adopt the July 2025 Terms (but before those terms took effect), Airbus notified Anaconda in writing that: (1) it did not, and would not, accept Anaconda's new terms; (2) Airbus employees (other than legal executives) did not have authorization to accept the new terms; and (3) to the extent Anaconda detected access to software it contends is covered by its new terms, such access would be inadvertent. Indeed, Airbus has no need for Anaconda's provision of free software written by third parties that is freely available online.

As to bad faith, contrary to Anaconda's suggestions, Anaconda's "notice" of the July 2025 Terms deceptively omitted its litigation-driven changes. When Airbus discovered Anaconda's mid-litigation attempt to rewrite contract terms upon which Airbus had relied, Airbus told Anaconda that its employees were not authorized to accept Anaconda's new terms. Nevertheless, Anaconda's employees contacted Airbus's employees, encouraging them to use the service that Anaconda simultaneously contends they were forbidden from accessing. Anaconda's actions

smack of unfair gamesmanship—an attempt to use dubious tactics to replace a contract Anaconda deemed unhelpful with one drafted for its litigation objectives.

Finally, Anaconda's attempt to inject four new copyrighted works into the case near the close of fact discovery would unnecessarily complicate the case and prejudice Airbus's defense. Anaconda should not be rewarded for its inexcusable delay in attempting to assert new infringement claims, and it does not even attempt to meet its burden to explain its failure to raise these works—two of which were published months before this lawsuit was filed—at an appropriate stage of this dispute.

## II. NATURE AND STAGE OF PROCEEDINGS

Airbus filed this declaratory judgment action in February 2025 in response to escalating litigation threats from Anaconda. D.I.1. Anaconda counterclaimed, asserting copyright infringement based on Registration No. TX-9-407-381 ("'381 Registration") and breach of contract based on its March 2024 Terms. D.I.11. In its answer to Anaconda's counterclaims, Airbus raised the limitation-of-liability and jury-waiver provisions in Anaconda's asserted contract. D.I.30 at 16, 18. Anaconda now seeks to amend to (1) replace the March 2024 Terms with different terms it published mid-litigation and (2) add four copyrighted works to its infringement

claim based on registrations it applied for mid-litigation.[1]  Fact discovery closes on March 13, 2026.  Trial starts February 2027.[2]

## III.   SUMMARY OF ARGUMENT

1.      The proposed breach counterclaim is futile as Anaconda cannot plausibly allege a contract based on the July 2025 Terms with any Airbus Entity.

2.      Anaconda brought this motion in bad faith and with dilatory motive, improperly attempting to impose on Airbus new contract terms and copyrighted works introduced mid-litigation for tactical advantage.

3.      Anaconda unduly delayed in applying for copyright registrations, and their addition late in fact discovery would unduly prejudice Airbus.

4.      Adding new copyrighted works to this case is not more efficient than a hypothetical separate action on them.

## IV.   FACTS

This case is part of a larger campaign by Anaconda to monetize free and open-source software via its terms of service and threats of litigation.  D.I.1 ¶¶41-42.

In 2024, Anaconda began sending demand letters to various Airbus companies—including most named plaintiffs (collectively, the "Airbus Entities" or "Airbus")—alleging unauthorized use and copying of the Anaconda Distribution

---

[1]  Airbus does not oppose Anaconda's request to add Airbus Atlantic SAS as a party.

[2]  Anaconda's characterizations regarding the state of Airbus's discovery and ESI disclosures (D.I.170 ("Mot.") 3-4) are inaccurate but not relevant here.

and other materials. *Id.* ¶46. The first letter accused unspecified "Airbus entities" of violating Anaconda's terms and attached a multi-million-dollar demand. *Id.* Anaconda subsequently escalated its threats, asserting varying monetary demands, ranging from six- to eight-figures. *Id.* After a year of receiving threats, Airbus filed this case, seeking a declaratory judgment that it does not infringe any valid copyright in the Anaconda Distribution. *Id.* ¶58-66.

In April 2025, Anaconda counterclaimed, alleging infringement of the '381 Registration and breach of Anaconda's March 2024 Terms. D.I.20 Counterclaims ¶¶20, 24, 80-86.

In May 2025, Airbus answered Anaconda's counterclaims. Relevant here, Airbus responded that the asserted contract (1) waived Anaconda's right to a jury and (2) limited Airbus's liability for breach of contract. D.I.30 at 16, 18.

In discovery correspondence, Airbus explained to Anaconda that the limitation of liability in the March 2024 Terms caps Anaconda's potential contract damages to a tiny fraction of litigation costs. Ex. A, 1-2; Ex. B, 1. In response, Anaconda declined to address the provision or explain how it is consistent with Anaconda's apparent claimed contract damages. Ex. B, 2.

Given Anaconda's refusal to engage, Airbus served a Rule 68 offer of judgment on Anaconda's contract claim. Airbus explained that the offer did not reflect that Anaconda's "claim has merit, or that Anaconda has suffered any damages

related to its claims." Ex. C. "Rather, the applicable Limitation of Liability provision in the contract Anaconda alleges to have been breached caps Anaconda's damages at a low number that does not justify expending substantial litigation resources, and is lower than the costs that Anaconda will likely be required to pay under Fed. R. Civ. P. 68(d) should it not accept this offer." *Id.*

Anaconda ignored the offer. Two weeks later, it accused Airbus for the first time of impermissible downloads since the July 2025 Terms went into effect, and notified Airbus that it intended to move to amend. Mot.10 n.3; *see* D.I.169-2 ("PAC") ¶84. This is Anaconda's third motion to amend to substitute its July 2025 Terms for the March 2024 Terms, superseding its previous two motions. D.I.65; D.I.116. This third motion also includes a request to add four new works to Anaconda's copyright infringement claim.

Airbus provides other relevant background below.

## A. Anaconda's New Contract Terms

### 1. Material Differences Between the March 2024 and July 2025 Terms

Anaconda wrongly suggests the July 2025 Terms are "similar" to prior versions. Mot.5. Rather, Anaconda materially changed the limitation-of-liability and jury-waiver provisions.

The March 2024 Terms contained a bilateral limitation of liability, capping Anaconda's contract damages at $100 where, as here, no fees were recently paid.

D.I.1-3 §11.1. This "limitation of liability is cumulative and not per incident" and "applies whether the claims are in warranty, contract, tort (including negligence), infringement, or otherwise, even if either party has been advised of the possibility of such damages." *Id.*[3] These terms also provided that "[e]ach party does hereby waive his/her/its right to trial by jury" for "any disputes arising from" the contract. *Id.* §15.11.

In the July 2025 Terms, Anaconda removed the jury waiver and rewrote the "Limitation of Liability" provision. PAC Ex. A §19. The updated provision no longer caps Anaconda's damages from a counterparty—it purports to only "[c]ap[] how much Anaconda can be held responsible for damages." *Id.*

### 2.    Anaconda's Purported Notice of the Changes

Anaconda alleges it notified Airbus of the changes in its terms "via email" and "public[]" notice. PAC ¶¶28, 75. Anaconda's alleged "notice," although not attached to the PAC, is integral to it, and undermines Anaconda's allegation. For example, Anaconda's emails to Airbus employees regarding the July 2025 Terms purport to identify the "[k]ey changes" in those terms, but deceptively omit any mention of the limitation of liability or jury waiver. Ex. D. The same is true regarding Anaconda's "public" notice—a 2025 blog post that includes a "What We've Changed" section, but also omits mention of Anaconda's deletion of the

---

[3] Copyright claims are excluded. *See id.*

limitation of liability and jury waiver.  Ex. E, -6085.

### 3. Airbus's Response to the New Terms and Anaconda's Follow-Up

On July 11, 2025, before the July 2025 Terms became effective, Airbus notified Anaconda that it would not accept them, and that only legal executives were authorized to accept the terms on Airbus's behalf.  Ex. F, -4331-32.  Anaconda's description of this letter is inaccurate—Airbus did not say it "had no intent to abide by" the July 2025 Terms, as Anaconda claims.  *See* Mot.1.

Rather, this letter states that were an Airbus Entity to accept the terms, an Airbus "legal executive" would notify Anaconda "by letter."  Ex. F, -4332.  It stated that without such a letter, "Anaconda should not interpret any access by Airbus…IP addresses to Anaconda's services allegedly subject to the [July 2025 Terms]…as an agreement on behalf of Airbus or any affiliated company to be bound by the [July 2025 Terms]," because employees were not authorized to accept the terms, and because any such access would be "inadvertent."  *Id.*, -4331.[4]  As Airbus has informed Anaconda, Airbus has no need for Anaconda's services because Anaconda merely repackages the freely-available work of others in the open-source

---

[4] The letter further explained, "To the extent Anaconda seeks to use the provisions of the [July 2025 Terms] to address what Anaconda believes to be inconvenient aspects of its breach of contract claim against Airbus—*e.g.*, related to the limitation of liability provision or jury waiver in the 2024 Anaconda Terms of Service—I reiterate that Airbus does not agree to enter into, or otherwise be bound by, the [July 2025 Terms]."  *Id.*

community.  D.I.1 ¶39.  Had Anaconda actually *wanted* to prevent access to its services, it could have blocked Airbus's access (as Anaconda itself has confirmed). *Id.* ¶50; Ex. G (133:2-134:14); Ex. H (132:9-12).

Instead, Anaconda's employees repeatedly *solicited* Airbus employees, encouraging them to use Anaconda software allegedly subject to Anaconda's terms—conduct that is irreconcilable with counterclaims (and a preliminary injunction motion) ostensibly devised to stop Airbus's alleged use of that software. Ex. I; Ex. J, -117545-55; D.I.112-2 ¶4, Ex. A.  When Anaconda sent these solicitations to Airbus's employees, the parties had been litigating for months and Airbus had already notified Anaconda that it did not seek to use Anaconda's service or accept the July 2025 Terms, and that no Airbus employee was authorized to enter any agreement with Anaconda on Airbus's behalf.

## B.    Anaconda's Mid-Litigation Applications for New Copyright Registrations

Anaconda's new copyright registrations purport to cover versions of the Anaconda Distribution published in June and October 2024 (before this litigation was filed) and June and July 2025.  PAC Exs. C-F.  Inexplicably, Anaconda did not apply to register any of these copyrights until September 18 and 30, 2025 (*id.*)—seven months into this litigation and less than one month before the original deadline to amend pleadings.  *See* D.I.24 ¶2.  Anaconda first informed Airbus of its intent to add these works to the case on October 20.  Ex. Q.

## V.  LEGAL STANDARD

Leave to amend is not automatic and should be denied in cases of "undue delay, bad faith, dilatory motive…undue prejudice, or futility." *Site Microsurgical Sys., Inc. v. Cooper Cos.*, 797 F. Supp. 333, 336 (D. Del. 1992).[5]

Amendment is futile if it would not survive a Rule 12(b)(6) motion.  *Id.*

Bad faith requires assessing whether the motion to amend itself is brought in bad faith.  *See AA Med. P.C. v. Almansoori*, 2023 WL 7688688, *6 (E.D.N.Y. Oct. 4. 2023), *adopted*, 2024 WL 168332 (E.D.N.Y. Jan. 16, 2024).  "[A] finding that a party is seeking leave to amend solely to gain a tactical advantage supports a finding…[of] bad faith."  *Id.*  Courts also find bad faith and dilatory motive "when a party withholds facts clearly known to it prior to the filing of the complaint, particularly when done for some ulterior purpose." *Id.* at *5-6.

Undue delay "focus[es] on the movant's reasons for not amending sooner," and it is the movant's burden to explain its delay.  *Id.* at *4; *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001).  Delay is undue when it "plac[es] an unwarranted burden on the court," such as "when a movant…had previous opportunities to amend." *Cureton*, 252 F.3d at 273.

---

[5] Quotations cleaned up and emphasis added unless otherwise noted.

Prejudice focuses on hardship to the non-moving party, including "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Id.*

## VI. ARGUMENT

### A. Anaconda's Attempt to Replace Its Original Contract Claim With One Based on the July 2025 Terms Is Futile

Anaconda's proposed amendment is futile with respect to its contract claim because it fails to plausibly allege that any, let alone each, Airbus Entity agreed to Anaconda's July 2025 Terms. *Cf.* PAC ¶85. Anaconda's contract formation theory necessarily relies on agency principles, yet neither Anaconda's PAC nor its motion includes allegations that plausibly support such a theory. Nor has Anaconda stated a claim for breach by each Airbus Entity, instead impermissibly lumping the companies together and relying on allegations directed to an unspecified "one or more" of them.

#### 1. Anaconda Fails to Plausibly Allege Contract Formation via an Agent of Airbus

Anaconda fails to plead that any alleged act of contract formation was performed by someone *with authority* to bind an Airbus Entity. This defect is fatal, because Anaconda's theory of contract formation necessarily sounds in agency, requiring allegations showing both the identity of the actor and that the actor had authority—actual or apparent—to bind the principal. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 407 (S.D.N.Y. 2009) ("Plaintiffs may not bootstrap

their claims by stating that others must have acted on behalf of [defendant]");

*Affordable Bus. Interiors, Inc. v. Pomeroy IT Sols. Sales Co.*, 336 F.R.D. 162, 164-65 (N.D. Ill. 2020) ("skeletal allegations" of agency insufficient for contract claim);

*Akers v. Minn. Life Ins. Co.*, 35 F. Supp. 3d 772, 785 (S.D.W. Va. 2014) ("An agent's authority must be conferred by some manifestation by the *principal* that the agent is authorized to act on the principal's behalf." (emphasis original)).

Anaconda's contract formation allegations concern purported downloads and so-called "click-throughs" by unspecified individuals or computers allegedly affiliated with Airbus. *See* PAC ¶¶28, 47, 61, 63.[6] But Anaconda never alleges any such individual (or computer) had authority to contract on Airbus's behalf. This failure arises from Anaconda's attempt to artfully plead around Airbus's letter to Anaconda: Anaconda lacks a good-faith basis to plead an agency relationship because Airbus expressly informed Anaconda that only a "legal executive" communicating "by letter" had authority to bind the company to the July 2025 Terms. Ex. F, -4332. Airbus also stated unequivocally that it would *not accept* the July 2025 Terms. *Id.*, 2. This background precludes Anaconda from pleading facts supporting any plausible inference of contract formation. *See Nat'l Auto Lenders,*

---

[6] Anaconda appears to allege that purported download and click-through "logs" (PAC Ex. G, D.I.101 ¶8, and D.I.99 ¶22, Ex. 2), show acceptance and breach of the July 2025 Terms. However, Anaconda has not made any non-conclusory allegation of an agency relationship in connection with any such download or click-through.

*Inc. v. SysLOCATE, Inc.*, 433 F. App'x 842, 843-44 (11th Cir. 2011) (rejecting enforcement of online terms where plaintiff explicitly "stated it would not accept and that its employees lacked authority to accept"); *D&G Equip. Co. v. First Nat'l Bank of Greencastle*, 764 F.2d 950, 955 (3d Cir. 1985) ("[W]here a third party has reason to know authority does not exist, or once having existed has now been revoked, the agent's acts are ineffective and they do not bind the principal.").[7]

Finally, the Court should reject any argument that it may not consider the letter Airbus sent to Anaconda in resolving this motion. *Cf.* Mot.16 (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). The Court may consider documents of which Anaconda has actual notice and has relied upon in framing its counterclaims, because a party should not "be able to evade accountability for such documents simply by not attaching them to his [pleading]." 770 F.3d at 249-50. Anaconda received Airbus's letter, attempts to plead around it, and mischaracterizes the letter's contents by wrongly claiming that it "informed Anaconda that [Airbus] had no intent to abide by" Anaconda's terms (Mot.1)—the Court should consider it.

---

[7] Anaconda's citations to *Design With Friends* and *Micro Focus* (Mot.17) are inapposite. Unlike here, neither involved a party providing explicit written advance notice that it would not agree to new terms or that its employees lacked authority to enter contracts on its behalf.

### 2. Anaconda's Group Pleading Fails to Plausibly Allege Breach by Any Particular Airbus Entity, Let Alone All of Them

Anaconda also fails to levy specific allegations against the entities it accuses of breach, impermissibly lumping together "one or more…Airbus Entities." *E.g.*, PAC ¶¶84, 87. If only "one" Airbus Entity is alleged to have accepted and breached Anaconda's terms, only that entity should be the target of Anaconda's claim. If Anaconda lacks a good-faith basis to accuse specific Airbus Entities—*e.g.*, because it has no basis to conclude particular entities accepted and breached the terms—it should not include them in its claim.[8] Nevertheless, Anaconda never states which specific entities allegedly accepted and breached its terms, instead treating them all as a combined whole. Such allegations do not satisfy Rule 8's requirements. *See, e.g.*, *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*, 2017 WL 896988, *6-7 (D. Del. Mar. 7, 2017) ("Recent decisions in this court make clear that plaintiffs cannot combine allegations against multiple defendants…[T]he allegations as to [multiple defendants] do not clarify that each defendant committed at least one infringing act" and "[t]herefore…fail[] to meet the minimum pleadings standard").

---

[8] As one example, whereas Anaconda describes the "commercial restriction" in its terms as hinging on whether an organization has "more than 200 employees," *e.g.*, PAC ¶¶26, 29, Anaconda's PAC deletes its prior allegation that Airbus DS Government Solutions, Inc. has more than 200 employees. *See* D.I.169-3 ¶49 (former ¶46). Yet for purposes of its breach claim, Anaconda lumps that entity with all other Airbus Entities. PAC ¶¶84-89.

**B.     Anaconda's Motion Is Brought in Bad Faith and With Dilatory Motive**

First, Anaconda's efforts to bring the July 2025 Terms into this case demonstrate bad faith. Airbus raised the March 2024 Terms' limitation of liability and jury waiver provisions no later than May 19, 2025, in its answer to Anaconda's counterclaims. *Supra* §IV. Airbus also raised these issues in discovery communication, and served a formal Rule 68 offer noting that the limitation of liability provision "caps Anaconda's damages at a low number that does not justify expending substantial litigation resources." Ex. C. At all turns, culminating in this motion, Anaconda's responsive conduct has been underhanded.

Rather than face these issues, Anaconda published new terms with misleading "notice" and no indication to Airbus's counsel, despite their obvious relevance to Airbus's defenses, apparently with an eye towards the contract substitution it now seeks. When Airbus independently discovered this gambit by its own diligence, Airbus unequivocally communicated to Anaconda that Airbus did not agree to the new terms and that no employee (other than a legal executive) was authorized to accept the terms on Airbus's behalf. Undeterred, and in contravention of Airbus's communication, Anaconda's employees then repeatedly solicited Airbus employees to use Anaconda software allegedly subject to the new terms. And finally, after receiving a Rule 68 offer that sought to hold Anaconda to its own contract, Anaconda then moved to substitute the July 2025 Terms for the ones that Anaconda originally

sued on—seeking to eliminate the liability cap and jury waiver while omitting from its motions the true context and intended impact of its amendment. *See supra* §§IV, IV.A.3. Anaconda's failure to disclose any of this (in any of its three motions to amend) underscores its bad faith.

Second, Anaconda's obfuscation of the changes made to the new terms constitutes bad faith as to any alleged acceptance of these terms by Airbus's employees, who Anaconda alleges received its (defective) "notice." As is evident from Anaconda's motion and Exhibits D and E, Anaconda did not inform the public or Airbus that the July 2025 Terms dropped the jury waiver and limitation of liability provisions raised in Airbus's answer to Anaconda's counterclaims.

*Heckman v. Live Nation Entertainment, Inc.* held a contract revision was procedurally unconscionable under similar circumstances. 686 F. Supp. 3d 939, 953 (C.D. Cal. 2023), *aff'd*, 120 F.4th 670 (9th Cir. 2024). As here, the *Heckman* defendants implemented "a significant change in the parties' agreement" "unilaterally" and "in the midst of ongoing litigation." *Id.* (discussing change "from individual, bilateral arbitration to mass arbitration"). Yet they did not notify customers about this "major change." *Id.* The court found "an extreme amount of procedural unconscionability" because, *inter alia*, the defendants' failure to provide "notice of the significant change to the TOU creates a situation of unfair surprise." *Id.*

Here, Anaconda's "notice" of the changes in the July 2025 Terms included a misleading summary, omitting mention of the changes relevant to the defenses Airbus had pleaded. *See supra* §IV.A.2.[9]  To the extent Anaconda contends individuals at Airbus were on notice of the changes in the new terms based on the misleading summary included in Anaconda's "public[] announce[ment]" or "email" regarding those changes (PAC ¶28), Anaconda's contention fails under the same procedural unconscionability rationale of *Heckman*.  In particular, Anaconda does not address the comparable "situation of unfair surprise" faced by any Airbus employee who allegedly accepted the new terms without notice that they were drafted to undermine the terms of Anaconda's prior contract upon which Airbus relied in litigation.  Nor does Anaconda offer any theory explaining how users who downloaded the software long before the terms were changed could have been on notice of (and subject to) future changes.

Further, to the extent Anaconda attempts to avoid unconscionability because it "does not seek to apply the July 2025 Terms retroactively," Mot.20, it has nevertheless stated that its new breach of contract claim would apply to "use of Anaconda software on or after July 15, 2025, ***even if the software was downloaded***

---

[9] Anaconda cites *Design With Friends*, arguing it provided sufficient notice, Mot.19, but its omission of the relevant changes is more like the *Design With Friends* plaintiffs' cease-and-desist letter, which said nothing about their terms of use, and was thus found not to provide notice.  2023 WL 3434013, *3 (D. Del. May 12, 2023).

*or installed prior to that date*." Ex. K, 1. As in *Heckman*, that too constitutes unfair surprise. *See* 686 F. Supp. 3d at 954 (procedural unconscionability where users were deemed to accept materially altered terms merely by continuing to browse a website). This further supports denial of Anaconda's motion as to the contract claim.

Finally, Anaconda's undue delays in applying for new copyright registrations on additional copyrighted works (despite their much earlier publication), and informing Airbus and the Court of its intent to assert these works in the case, demonstrate dilatory motive, which also supports denial of Anaconda's motion. *See supra* §§IV.B; *infra* §VI.C; *AA Med.*, 2023 WL 7688688, *6-7 (undue delay, bad faith, and dilatory practice where, *inter alia*, plaintiff had been aware of the facts that constituted the proposed claim for over a year and "should and could have" added the claim earlier).

### C. Anaconda Unduly Delayed in Applying for Copyright Registrations, and Adding New Copyrighted Works to This Case Would Unduly Prejudice Airbus

Anaconda should not be permitted to add its four new copyrighted works because of its undue delay in pursuing requisite registrations, and the undue prejudice to Airbus that would result from their addition this late in fact discovery.

As to delay, two of the four works that Anaconda seeks to add were published in *June and October 2024*. Anaconda did not seek to register its copyright in them until September 2025—fifteen months later than the June publication, and seven

months after this case was filed.  Anaconda has neither acknowledged nor attempted to justify its failure to seek timely registrations.  *See supra* §IV.B.  Indeed, even Anaconda's June and July 2025 works were not subject to applications until months after publication, and Anaconda did not provide notice of its intent to assert these works until even later, in October 2025.  Mot.7.  Anaconda focuses only on events from its September 2025 applications forward, blaming the government shutdown for the timing of its motion (Mot.10-11), but provides no explanation for not applying earlier and not informing Airbus earlier in discovery that it would seek to add new copyrights into the case.  Courts have found similar delays undue.  *See, e.g.*, *AA Med.*, 2023 WL 7688688, *6-7 (citing cases).

Adding four new registered works corresponding to different versions of the Anaconda Distribution with approximately two months remaining in fact discovery would unduly prejudice Airbus.  Anaconda admits the registrations cover different versions, yet asserts without any support that they "share many similarities" and have "overlap[ping]" "personnel, records, and development."  Mot.12-13.  But Anaconda also admits the "new versions…contain updates and modifications to improve the product" without explaining what those are or why it is important that they be added.  *Id.*, 6.  Presumably, if the differences between these works were insubstantial, Anaconda would have no reason to add them.  Either way—significant differences or not—if new copyrighted works are added to the case, Airbus will have

to take discovery to identify the differences, including, for example, additional source code review, expert copyrightability analysis, and discovery regarding contributors to the works, such as their employment contracts and taking their depositions. This is on top of the extensive technical and copyrightability analysis Airbus has already performed in this case—including significant and costly expert analysis[10]—for purposes of the preliminary injunction. D.I.160, 19-25; D.I.162.

Anaconda suggests it has already been providing discovery on the new works it seeks to add. *See* Mot.12-13. This is inaccurate. Anaconda has not provided infringement contentions for the '381 Registration that is already in the case, nor has it substantively responded to interrogatories outstanding since May seeking basic information about that registration, such as a list of its authors, a description of their authorship, and production of employment or contractor agreements to permit Airbus to investigate work-made-for-hire issues—which are significant here, because some of the biggest contributors to Anaconda's code repositories are not Anaconda employees in the first place and reside outside the United States. Exs. L-M; Exs. N-O (showing foreign developer at foreign third-party company made over

---

[10] Anaconda's suggestion that Airbus's preliminary injunction opposition papers address its new registrations (independently from the '381 Registration) is incorrect. *See* Mot.13 n.5. Anaconda's cited materials do not say otherwise. *See* D.I.163-20 (demonstrating Anaconda's practice of violating conda-forge license, without mentioning any particular Anaconda Distribution version); D.I.162 ¶36 (not stating that expert analyzed other registrations).

1,900 contributions to Anaconda's software in 2025 alone; despite Airbus's discovery requests, Anaconda has not produced any agreements with this developer or his employer).[11]  With discovery into the existing copyright woefully incomplete with approximately two months left in fact discovery, there is simply not enough time to add *new* registered works and for Airbus to obtain discovery on those as well. Extending fact discovery would only magnify the undue prejudice to Airbus, because it would necessitate also moving the expert discovery deadlines and potentially even the trial (*see* D.I.24), adding to the time and expense associated with defending against Anaconda's new copyrighted works and pursuing related discovery.  *See, e.g.*, *Semiconductor Energy Lab. Co. v. Sanyo N. Am. Corp.*, 2001 WL 194303, *3 (D. Del. Feb. 22, 2001) (undue prejudice because additional discovery would be required despite additional patents purportedly "involv[ing] the same technology, witnesses, and products").[12]

---

[11] Notably, authorship cannot be ascertained merely by inspecting Anaconda's code repositories, because those repositories only indicate *who added the code to the repository*, not *who authored the code in the first place*.  Anaconda's own Principal Software Engineer explained, for example, that it is not possible to tell if code in Anaconda's repository was written by a human (as opposed to machine-generated) by inspecting the repository itself.  Ex. P (108:7-23).

[12] *Alcoa* and *Yenchik Elliott*, where amendments clarified or added specificity to existing claims or defenses, are inapposite.  *See* Mot.12-13.

### D. Adding Copyrighted Works to This Case Does Not Support Judicial Efficiency

Anaconda contends that adding new works to this case is more efficient than a hypothetical separate action that it may file on them. That is incorrect. This case may well be dispositive of any separate copyright suit Anaconda may file in the future given the "many similarities" and "overlap" Anaconda alleges. Mot.12-13. At a minimum, resolution of this action would greatly streamline and focus any issue not resolved here. *Cf. BTG Int'l Ltd. v. Actavis Labs. FL, Inc.*, 2017 WL 529446, *9-10 (D.N.J. Feb. 8, 2017). The most efficient course is for the parties to focus the remaining two months on completing the extensive outstanding discovery required, not injecting four new copyrighted works into the case.

## VII. CONCLUSION

For these reasons, the Court should deny Anaconda's motion.

Dated: January 7, 2026

**FISH & RICHARDSON P.C.**

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:

Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
Kayleigh E. McGlynn (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com; kessel@fr.com;
pearson@fr.com; pechette@fr.com;
mcglynn@fr.com

Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
wade@fr.com

Olivia T. Nguyen (*pro hac vice*)
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 400
Redwood City, CA 94063
Telephone: (650) 839-5070
onguyen@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-Counterclaim-Defendants Airbus*

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 4,999 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2026, I caused the foregoing to be served via electronic mail upon all counsel of record.

/s/ Grayson P. Sundermeir
Grayson P. Sundermeir (#6517)