**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

AIRBUS SAS, AIRBUS DS )
GOVERNMENT SOLUTIONS, INC., )
AIRBUS HELICOPTERS, INC., AIRBUS )
AMERICAS, INC., and AIRBUS )
DEFENCE AND SPACE LTD., )
)                    Civil Action No. 25-178-CFC-SRF
Plaintiffs, )
)
v. )
)
ANACONDA, INC., )
)
Defendant. )
_____ )
)
ANACONDA, INC., )
)
Counterclaim-Plaintiff, )
)
v. )
)
AIRBUS SAS, AIRBUS DS )
GOVERNMENT SOLUTIONS, INC., )
AIRBUS HELICOPTERS, INC., AIRBUS )
AMERICAS, INC., and AIRBUS )
DEFENCE AND SPACE LTD., )
)
Counterclaim-Defendants. )
_____ )

**<u>MEMORANDUM ORDER</u>**

At Wilmington this **19th** day of **May, 2026**, the court having considered the parties'

discovery dispute letter submissions and associated filings (D.I. 350; D.I. 351; D.I. 352; D.I. 353;

D.I. 354; D.I. 355; D.I. 356; D.I. 357; D.I. 358; D.I. 359; D.I. 367; D.I. 368; D.I. 373; D.I. 374;

D.I. 375; D.I. 378; D.I. 380), as well as the arguments presented during the hearing on May 12,

2026, IT IS ORDERED that the disputes raised in the pending joint motion for teleconference to

resolve discovery dispute, (D.I. 339), are resolved as follows:

1. **Background.** In this civil action, Anaconda claims that Airbus infringes Anaconda's copyrighted software. (D.I. 1 at ¶ 3) Anaconda contends that internet protocol ("IP") addresses associated with Airbus have downloaded thousands of Anaconda software packages from March of 2020 to March of 2026. (*Id.* at ¶ 40; D.I. 101 at ¶ 140; D.I. 350 at 1) In response to a cease and desist letter from Anaconda, Airbus decommissioned Anaconda software in March of 2024. The decommissioning effort revealed 863 users of Anaconda software across Airbus's commercial aircraft division. (D.I. 350, Ex. B)

2. Prior to decommissioning, Anaconda contends that Airbus's computers were configured to automatically download updated software from Anaconda's proprietary repository. (D.I. 350 at 1) According to Anaconda, its proprietary software enhanced certain aspects of Airbus's operations, rendering related revenues subject to disgorgement. (*Id.*) In response, Airbus alleges that Anaconda fails to connect the use of proprietary Anaconda software to any Airbus products. (D.I. 356 at 1) Airbus contends "Anaconda concedes that various 'Anaconda software' are *not* subject to its claims, including pre-April 2020 versions of Anaconda packages, pre-March 2024 versions of the Anaconda Distribution,[1] and open-source software like 'conda.'" (*Id.* at 1 n.1)

**ANACONDA'S DISPUTES**

3. **Anaconda's motion to compel Airbus to search for, identify, and produce documents related to Airbus's decommissioning of Anaconda Software is GRANTED-IN-PART.[2]** Anaconda moves to compel the production of documents regarding Airbus's efforts to

---

[1] One of the Airbus entities obtained a commercial Anaconda license that expired in March of 2024. (D.I. 201 at 2) (citing D.I. 103-20 at 2).

[2] An additional document from Airbus's privilege log, Entry No. 1155, was submitted to the court during the hearing on May 12, 2026. Anaconda has since withdrawn its dispute regarding this document. (D.I. 380-2 at 3)

decommission Anaconda's software after Anaconda issued a cease-and-desist letter to Airbus in 2024. (D.I. 350 at 1-3)  According to Anaconda, these documents contain the "[p]ure facts" regarding Airbus's usage of Anaconda's software.  (*Id.* at 2)  Anaconda's motion is GRANTED with respect to the portions of Entry Nos. 193 and 930 that pertain to scheduling because this content is purely factual.  An *in camera* review of the balance of the content in the decommissioning documents confirms that Airbus's assertion of the attorney-client privilege is proper.  (D.I. 374, Entry Nos. 927, 919, 193, 411, 941, 1041, 133, 134, 930, 1004)  The balance of the withheld and redacted content discusses the advice given by or requested from Airbus's legal department, as well as the actions taken by Airbus personnel in response to the legal department's advice.  *See In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011) (stating that the attorney-client privilege attaches when a communication is made between privileged persons in confidence for the purpose of obtaining or providing legal assistance for the client).  Factual information regarding Airbus's usage of Anaconda software is not redacted.

4.  Anaconda's motion to compel the production of documents from the Google Drive folder "Anaconda 2024" is not ripe.  Airbus characterizes this as a "new complaint," alleging that the folder is part of the investigation by Airbus's legal team and is therefore privileged.  It does not appear that any documents from this folder were among those selected for the *in camera* review.

5.  Anaconda alleges that Airbus is also refusing to produce other documents showing the full extent of its usage by not producing the documents of non-attorney employee Kamran Shaukat, who maintained a record of all users of Anaconda software at Airbus Defense & Space ("ADS").  Airbus denies that any such record was maintained, and the exhibits cited by

Anaconda do not contradict Airbus's position.  Airbus cannot be compelled to produce a document that is not in its possession.

**6.  Anaconda's motion to compel Airbus to search for, identify, and produce regulatory submissions detailing the software used for performance and safety testing and approval is DENIED without prejudice.**  Anaconda moves to compel the production of certain regulatory submissions to the Federal Aviation Administration ("FAA") and the European Union Aviation Safety Agency ("EASA") detailing and relating to the software used to verify that safety requirements are met by the aircraft's design, in response to Request for Production Nos. 247 to 251.  (D.I. 350 at 3)  In support, Anaconda submits a declaration explaining that aircraft manufacturers like Airbus must perform engineering analyses of their aircraft and produce artifacts from those analyses to the governing regulatory bodies to show that an aircraft design meets all safety and regulatory requirements.  (*Id.*, Ex. W at ¶¶ 2-3)  Anaconda moves to compel the production of these artifacts, which can be analyzed to identify the software used to perform the engineering analyses.  (*Id.* at ¶ 4)

**7.**  The evidence cited by Anaconda in support of its request does not satisfy the proportionality requirement of Federal Rule of Civil Procedure 26(b)(1), which permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  The alleged nexus between the regulatory submissions and the use of Anaconda's software has not been established on this record.  Citing evidence showing that Airbus uses open-source Python software to perform stress testing on Airbus aircraft, Anaconda speculates that Airbus uses proprietary Anaconda software to install the free Python software.[3]  (D.I. 350 at 3)  But one of the exhibits, which Anaconda

---

[3] Python is a software programming language governed by open-source licenses.  (D.I. 11 at ¶

describes as "confirm[ing] that [Airbus] uses Python for stress testing its aircraft," is titled "ISAMI Analyst Release Note" and does not refer to Python at all. (D.I. 350, Ex. Y) Airbus contends that ISAMI does not rely on Anaconda software, and Anaconda did not refute Airbus's representation during the hearing on May 12, 2026. (D.I. 356 at 1)

8. Anaconda also focuses on 30(b)(6) deposition testimony indicating that Anaconda was recommended as a means to install Python from 2021 to 2022 in connection with stress testing performed for a single project, Project EVE. (D.I. 350, Ex. Z at 249:11-250:19) Airbus's discovery responses confirm that a non-infringing pre-2020 version of the Anaconda Distribution was used to install the Python environment used in Project EVE. (D.I. 356, Ex. 5 at 53) Anaconda does not link Project EVE to any regulatory submissions. Anaconda also cites to an email chain and deposition testimony referring to the use of Anaconda software to install Python, but the email chain refers to non-proprietary Anaconda software for Python 2.7. (D.I. 350, Ex. AA) Nothing on this record suggests that the discovery Anaconda seeks on regulatory submissions is likely to reveal information on proprietary versions of Anaconda software that are accused of infringement.

9. **Anaconda's motion to compel Airbus to search for, identify, and produce documents regarding Airbus's aircraft-specific revenues is GRANTED.** Anaconda seeks revenue information on an aircraft-by-aircraft basis "[t]o allow Anaconda to determine which revenues are subject to disgorgement" in response to Request for Production Nos. 12, 70, and 242. (D.I. 350 at 4) Recent deposition testimony confirms that Airbus maintains financial records disclosing aircraft-specific revenues in the ordinary course of business. (D.I. 350, Ex.

---

20) Python projects, libraries, and applications can be organized into "packages." (*Id.* at ¶ 21) Anaconda has developed software for installing Python packages, creating environments for program execution, and managing package dependencies. (*Id.* at ¶ 22)

AB at 280:12-22) Airbus challenges only the relevance of aircraft-specific revenues and does not identify any burden associated with the requested production. (D.I. 356 at 4) The requested discovery is relevant to Anaconda's disgorgement theory to recover indirect profits from Airbus's operations that were allegedly enhanced by the infringement. Accordingly, on or before May 29, 2026, Airbus shall produce documents sufficient to show its revenues on an aircraft-specific basis from 2020 through the present in response to Request for Production Nos. 12, 70, and 242.

**10. Anaconda's motion to compel Airbus to search for, identify, and produce documents regarding Airbus's Skywise revenues is DENIED without prejudice.**[4] Anaconda moves to compel the production of documents showing revenues from Airbus's sale of Skywise, a data analytics platform built on Palantir Technology's Foundry platform, which are responsive to Request for Production Nos. 11, 12, and 16. (D.I. 350 at 4) Anaconda points to Airbus's discovery response confirming the presence and use of Anaconda-related software and packages on Skywise and cites to testimony indicating that Airbus offered Skywise to over 150 customers. (*Id.*, Ex. AC at 14; Ex. AE at 142:10-147:21) In response, Airbus points to the absence of any evidence showing that Foundry incorporates any allegedly infringed Anaconda software, as opposed to free and open source "conda" tools, and stresses that it had no control over the software selected and installed in the Foundry platform. (D.I. 356 at 4)

**11.** Anaconda's discovery requests directed to Skywise revenues are not proportional to the needs of the case under Rule 26(b)(1). In discovery responses served on October 9, 2025, Airbus disclosed that Anaconda-related software and packages are present in the Skywise

---

[4] Anaconda raised this as a theory of infringement for the first time on March 13, 2026, the last day of fact discovery, in its second supplemental responses and objections to Airbus's second set of interrogatories. (D.I. 351, Ex. 11 at 27)

platform, which is built on the cloud-based Foundry platform provided by Palantir. (D.I. 351, Ex. 14 at 14) Airbus stated that Foundry "incorporates a wide range of software that is configured solely by Palantir" and "includes certain Anaconda packages that are sourced and delivered by Palantir. Airbus does not determine the Anaconda software provided in Foundry." (*Id.*)

12. Although relevance is broad, discovery must also be proportional under Rule 26(b)(1). Here, Airbus's creation of Skywise is several steps removed from Anaconda's software, which is installed on the third-party Foundry platform without input from Airbus. The potential relevance of discovery into Skywise revenues is further diminished by the existence of a license agreement between Anaconda and Palantir governing Palantir's use of Anaconda software in the Foundry platform, and Anaconda's resistance to Airbus's pursuit of discovery into the scope of that license agreement. (D.I. 351, Ex. 12) By arguing that discovery into the scope of the Palantir license agreement is "neither relevant to any party's claim or defense, nor reasonably calculated to lead to the discovery of admissible evidence," Anaconda undermines its position that Skywise revenues are relevant to the infringement analysis based on Airbus's use of Palantir's Foundry platform. (*Id.*, Ex. 16 at 97)

**AIRBUS'S DISPUTES**

**13. Airbus's motion to compel the production of documents on Anaconda's privilege log is GRANTED-IN-PART.** Airbus moves to compel the production of the following entry numbers on Anaconda's privilege log: Entry Nos. 15 to 19, 671 to 674, 675, 675-1, 677-1, 679- 1, 684, 685, 688, 704, 705, 722, 723, and 727 to 729. (D.I. 351 at 1-2; D.I. 378) The court has conducted an *in camera* review of the following entries on Anaconda's privilege log that are challenged by Airbus: Entry Nos. 15, 16, 17, 18, 19, 675, 677-1, 704, 722,

723, and 729. The court has also reviewed certain withheld documents which are not challenged by Airbus but were produced by Anaconda to offer additional context: Entry Nos. 676, 676-1, 68, 681, 618, 410, 633, 633-1, 347, and 54. For the reasons set forth below, Airbus's motion to compel the production of certain challenged entries on Anaconda's privilege log is GRANTED-IN-PART as follows:

| CATEGORY | LOG ENTRY NOS. | DISPOSITION |
|---|---|---|
| Content Ownership Document | 671 to 674, 675, 675-1, 677-1, 679-1, 684, and 685 | GRANTED |
| Board Presentations | 15 to 19 | GRANTED-IN-PART |
| Terms of Service Revisions | 688, 704, 705, 722, 723 | GRANTED |

14. ***The Content Ownership Document.*** Airbus contends that Anaconda waived attorney client and work product protection over a document called "Content Ownership Within Conda Packages" (the "Content Ownership Document") by disclosing it to potential investors. The parties agree that this issue pertains to the following entries on Anaconda's privilege log: Entry Nos. 671 to 674, 675, 675-1, 677-1, 679-1, 684, and 685. (D.I. 351 at 1 n.1; D.I. 358 at 1) Anaconda's Chief Product Officer, Chandler Vaughn, drafted the Content Ownership Document at the direction of outside counsel to address a license dispute with Intel. (D.I. 358 at 1 & Ex. A; D.I. 373, Exs. 7, 16) There is no dispute that Vaughn also disclosed the Content Ownership Document to Anaconda's investment banker, Lazard, on two occasions to facilitate Lazard's efforts to raise capital for Anaconda by contacting potential investors and marketing the company to them. (D.I. 351, Ex. 2 at 340:24-341:19)[5]

15. Vaughn first sent the document to Lazard on June 6, 2024, explaining that "it might be helpful context on why conda packaging is differentiated, and what exists inside it at its core

---

[5] Airbus also cites to pages 222 and 223 of this exhibit, but those pages were not attached to its submission. (D.I. 351, Ex. 2)

8

that makes the distribution better." (D.I. 358, Ex. A)  Vaughn informed Lazard it was "free to include in VDR[.]"[6]  (*Id.*)  Vaughn emailed the Content Ownership Document to Lazard again on June 11, 2024 in response to Lazard's request for "the various presentations that you have used for the [due diligence] calls so far" to "share with the relevant teams in the VDR."  (D.I. 351, Ex. 3 at 1)  This second disclosure arose in the context of communications about a specific potential investor seeking information about Anaconda.  (*Id.*)

**16.** Anaconda waived the attorney-client privilege by showing a "conscious disregard of the possibility that an adversary would gain access to the material" when it shared the Content Ownership Document with Lazard so that Lazard could share it with a potential third-party investor. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1430 (3d Cir. 1991) (internal quotation marks omitted).  "A disclosure to a third party waives the attorney-client privilege unless the disclosure is necessary to further the goal of enabling the client to seek informed legal assistance." *Id.* at 1428.  On this record, there is no suggestion that Anaconda made the disclosures to Lazard for the purpose of seeking legal assistance.

**17.** Although "a disclosure to a third party does not necessarily waive the protection of the work-product doctrine," the protection may be waived if the disclosure "enable[s] an adversary to gain access to the information." *Westinghouse*, 951 F.2d at 1428.  The court considers "whether the circumstances surrounding the disclosure evidenced conscious disregard of the possibility that an adversary might obtain the protected materials." *Id.* at 1431.  Here, Vaughn's email disclosing the Content Ownership Document to Lazard arose in the context of Lazard's request for information about Anaconda to share with a potential third-party investor.  (D.I. 351, Ex. 3 at 1)  In that email and the one which preceded it, Vaughn imposed no

---

[6] "VDR" refers to "virtual data room."

restrictions on how Lazard could use or disseminate the document. (*Id.*; D.I. 358, Ex. A) Vaughn testified that he could not "remember a specific instance" of sharing information on content ownership during meetings with investors, without expressly denying such a disclosure was made. (D.I. 358, Ex. B at 221:19-222:12) Regardless of whether the Content Ownership Document was actually disclosed to potential investors, and regardless of whether those potential investors were adversarial to Anaconda, Vaughn's dissemination of the document was "inconsistent with keeping it from an adversary" because he allowed a third party to exercise its discretion for sharing the document. *In re Chevron Corp.*, 633 F.3d 153, 165 (3d Cir. 2011). Consequently, Anaconda waived the work product protection over the Content Ownership Document.

18. ***Business Information***. Airbus also alleges that Anaconda improperly withheld or redacted business information from several documents, many of which did not involve attorneys. The attorney-client privilege protects communications between an attorney and client concerning legal assistance or advice. *Immersion Corp. v. HTC Corp.*, C.A. No. 12-259-RGA, 2014 WL 3948021, at *1 (D. Del. Aug. 7, 2014) (citing *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 231 (3d Cir. 2007)). Communications that relate primarily to business concerns do not fall within the scope of the attorney-client privilege. *Id.* Because "business and legal advice may often be inextricably interwoven[,]" the court looks to the primary purpose of the documents to determine whether the privilege applies. *Id.* (quoting *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 147 (D. Del. 1977)). The court's analysis of the "business information" category is broken into three subcategories: (1) board presentations, and (2) Terms of Service ("TOS") revisions. Airbus withdrew its dispute regarding the assertion of privilege over draft contract revisions. (D.I. 378) The privilege log entries falling into the "business information" category are Entry Nos. 15 to 19,

10

688, 704, 705, 722, 723, and 727 to 729. (D.I. 351 at 1; D.I. 378) The court addresses each category and subcategory in turn.

**19.** <u>Board Presentations</u>. Airbus challenges Anaconda's privilege assertions regarding certain board presentations at Entry Nos. 15 to 19 of Anaconda's privilege log. (D.I. 351 at 2; D.I. 378 at 2 n.1) The court's *in camera* review of Entry Nos. 15 to 19 confirms that the board presentations feature "inextricably interwoven" business and legal advice. *Immersion Corp.*, 2014 WL 3948021, at *1. Although many of the redactions are narrowly tailored and targeted to information that primarily serves the purpose of providing legal advice, some entries redact information that was previously disclosed in other board presentations. For example, Slide 16 of Entry No. 16 contains limited redactions. (D.I. 373, Ex. 2 at Slide 16) Entry No. 17 contains the same slide at Slide 2, yet this presentation is redacted in its entirety. (*Id.*, Ex. 3 at Slide 2) The same is true when Slide 55 of Entry No. 16 is compared with Slide 10 of Entry No. 17. Anaconda's privilege log entries should be consistent across the privilege log. If material is produced in redacted format in one document, that same material should not be withheld in its entirety in another document.

**20.** Certain redactions within these board presentations are also improper. While certain details and internal strategy regarding ongoing litigation may be privileged, other redacted information is publicly available. For example, Anaconda redacts factual statements confirming that it is engaged in mediation / settlement discussions with Intel and disclosing scheduling order deadlines in that litigation. (D.I. 373, Ex. 2 at Slide 55; Ex. 3 at Slide 7) This information is publicly available on the docket for *Anaconda, Inc. v. Intel Corp.*, C.A. No. 24-925-CFC, D.I. 50, D.I. 54 (D. Del.). The fact that Anaconda is actively engaged in litigation with Airbus, Alibaba, and Intel is also publicly available from court records. (D.I. 373, Ex. 2 at Slide 16); *see*

11

*Anaconda, Inc. v. Intel Corp.*, C.A. No. 24-925-CFC (D. Del.); *Hangzhou Jicai Procurement Co., Ltd. v. Anaconda, Inc.*, C.A. No. 24-1092-CFC, D.I. 32 (D. Del. Aug. 19, 2025).  Moreover, generic statements about unpredictability in litigation, raised in the context of general business forecasting challenges and untethered to any particular case, do not constitute legal advice.  (D.I. 373, Ex. 2 at Slide 7)

**21.** In accordance with the foregoing analysis, Anaconda shall produce less-redacted versions of the board presentations at Entry Nos. 15 to 19.  Redacted content should be consistent across each of the presentations.  Moreover, factual statements and publicly available information should not be redacted.

**22.** Terms of Service Revisions.  Airbus objects to Anaconda's assertion of privilege over certain revisions to Anaconda's TOS.  The court's *in camera* review of Entry Nos. 704, 722, and 723 confirms that these comments on versions of the TOS were exchanged between non-attorneys discussing business considerations.  (D.I. 373, Exs. 8-13)  Anaconda has not demonstrated that these communications were "made between privileged persons" for the purpose of obtaining legal assistance.  *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011).  There is no dispute that subsequent communications seeking legal advice were properly withheld.  (*See, e.g., id.*, Ex. 25)  Accordingly, Anaconda shall produce the TOS revisions at Entry Nos. 688, 704, 705, 722, and 723.

**23. Airbus's motion to compel the production of communications and documents related to Anaconda's license agreement with Palantir is DENIED without prejudice.**  Airbus conditionally requests the production of communications and documents regarding Anaconda's license agreement with Palantir in the event that the court grants Anaconda's motion to compel the production of Airbus's Skywise revenues relating to Palantir.  Because the court

denied Anaconda's motion to compel, Airbus's conditional motion to compel is DENIED as moot.

24. **Conclusion.** For the foregoing reasons, IT IS ORDERED that:

  a. Anaconda's motion to compel Airbus to search for, identify, and produce documents related to Airbus's decommissioning of Anaconda Software is GRANTED-IN-PART. The motion is GRANTED with respect to the portions of Entry Nos. 193 and 930 which contain factual information, and it is DENIED without prejudice in all other respects.

  b. Anaconda's motion to compel Airbus to search for, identify, and produce regulatory submissions detailing the software used for performance and safety testing and approval is DENIED without prejudice.

  c. Anaconda's motion to compel Airbus to search for, identify, and produce documents regarding Airbus's aircraft-specific revenues is GRANTED. On or before **May 29, 2026**, Airbus shall produce documents sufficient to show its revenues on an aircraft-specific basis from 2020 through the present in response to Request for Production Nos. 12, 70, and 242.

  d. Anaconda's motion to compel Airbus to search for, identify, and produce documents regarding Airbus's Skywise revenues is DENIED without prejudice.

  e. Airbus's motion to compel the production of the Content Ownership Document is GRANTED. Anaconda shall produce the following entries from its privilege log: Entry Nos. 671 to 674, 675, 675-1, 677-1, 679-1, 684, and 685.

    **f.** Airbus's motion to compel the production of board presentations at Entry Nos. 15 to 19 of Anaconda's privilege log is GRANTED-IN-PART. Anaconda shall produce less-redacted versions of Entry Nos. 15 to 19 consistent with this Memorandum Order.

    **g.** Airbus's motion to compel the production of TOS revisions is GRANTED. Anaconda shall produce the following entries from its privilege log: Entry Nos. 688, 704, 705, 722, 723.

IT IS FURTHER ORDERED that the production of documents listed on Anaconda's privilege log shall be held in abeyance pending the resolution of objections, if any, to this Memorandum Order.

    **25.** Given that the court has relied upon material that technically remains under seal, the court is releasing this Memorandum Order under seal, pending review by the parties. In the unlikely event that the parties believe that certain material in this Memorandum Order should be redacted, the parties shall jointly submit a proposed redacted version by no later than **May 26, 2026**, for review by the court, along with a motion supported by a declaration that includes a clear, factually detailed explanation as to why disclosure of any proposed redacted material would "work a clearly defined and serious injury to the party seeking closure." *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) (quoting *Miller v. Ind. Hosp.*, 16 F.3d 549, 551 (3d Cir. 1994) (internal quotation marks omitted)). If the parties do not file a proposed redacted version and corresponding motion, or if the court determines the motion lacks a meritorious basis, the documents will be unsealed within fourteen (14) days of the date the Memorandum Order issued.

**26.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2).  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order.  Fed. R. Civ. P. 72(a).  The objections and responses to the objections are limited to four (4) pages each.

**27.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge