# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AIRBUS SAS,<br>AIRBUS DS GOVERNMENT SOLUTIONS, INC.,<br>AIRBUS HELICOPTERS, INC.,<br>AIRBUS U.S. SPACE & DEFENSE, INC.,<br>AIRBUS AMERICAS, INC.,<br>and AIRBUS DEFENCE AND SPACE LTD.,<br><br>    Plaintiffs,<br><br>  v.<br><br>ANACONDA, INC.,<br><br>    Defendant.<br><br>ANACONDA, INC.,<br><br>    Counterclaim-Plaintiff,<br><br>  v.<br><br>AIRBUS SAS,<br>AIRBUS DS GOVERNMENT SOLUTIONS, INC.,<br>AIRBUS HELICOPTERS, INC.,<br>AIRBUS U.S. SPACE & DEFENSE, INC.,<br>AIRBUS AMERICAS, INC.,<br>AIRBUS DEFENCE AND SPACE LTD.,<br>and AIRBUS ATLANTIC SAS,<br><br>    Counterclaim-Defendants. | C.A. No. 25-178-CFC-SRF<br><br>██████████████ |

**AIRBUS'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR THE ISSUANCE OF A REQUEST TO THE REGISTER OF COPYRIGHTS PURSUANT TO 17 U.S.C. § 411(b)(2)**

Dated: July 15, 2026

Grayson P. Sundermeir (#6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:
Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
Kayleigh E. McGlynn (*pro hac vice*)
Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com; kessel@fr.com;
pearson@fr.com; pechette@fr.com;
mcglynn@fr.com; wade@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-Counterclaim-Defendants Airbus*

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................1

II.   NATURE AND STAGE OF PROCEEDINGS ...........................................3

III.  SUMMARY OF THE ARGUMENT ...........................................................3

IV.   FACTS .........................................................................................................5

      A.   Anaconda Distribution .......................................................................5

      B.   Anaconda's Copyright Registrations ................................................6

V.    LEGAL STANDARDS ................................................................................7

      A.   Section 411 ........................................................................................7

      B.   Deposit Requirement .........................................................................8

VI.   ARGUMENT ................................................................................................9

      A.   Anaconda's Applications, Deposits, and Correspondence Contain
           Known Inaccuracies That Would Have Caused the Register to Refuse
           Registration ....................................................................................10
           1.   Anaconda represented to the Office (and this Court) that each
                registration covers only one software work, but now contends
                each registration covers a compilation of hundreds of distinct
                works it claims to own, including works it did not author .......10
           2.   Anaconda obtained the 2025.06-1 Registration by knowingly
                providing incorrect technical information to the Office ..........14
           3.   Anaconda knowingly misrepresented information related to
                other application and deposit requirements to the Office .........17

      B.   Anaconda's Inaccuracies Were Knowing ..........................................22

VII.  CONCLUSION ............................................................................................24

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brunson v. Cook*,
   2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) ................................................23

*Enter. Mgmt. Ltd. v. Construx Software Builders, Inc.*,
   73 F.4th 1048 (9th Cir. 2023) ...................................................................20

*Foss v. Marvic, Inc.*,
   814 F. Supp. 3d 167 (D. Mass. 2026) ........................................................14, 16

*HeltheState, LLC v. U.S.*,
   160 Fed. Cl. 91 (2022) ..............................................................................8

*HeltheState, LLC v. U.S.*,
   168 Fed. Cl. 624 (2023) ............................................................................19

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir. 2014), *as amended* (July 9, 2014) .............................9

*PalatiumCare, Inc. v. Notify LLC*,
   2023 WL 2929462 (E.D. Wis. Apr. 13, 2023) .............................................22

*Palmer/Kane LLC v. Rosen Book Works LLC*,
   188 F. Supp. 3d 347 (S.D.N.Y. 2016) ........................................................8

*Paysys Int'l, Inc. v. Atos SE*,
   226 F. Supp. 3d 206 (S.D.N.Y. 2016) ....................................................9, 17

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
   595 U.S. 178 (2022)..................................................................................8

**Statutes**

17 U.S.C. § 101 ............................................................................................11

17 U.S.C. § 408(a) .........................................................................................9

17 U.S.C. § 410(c) ........................................................................................19

17 U.S.C. § 411(a) ...............................................................................................7

17 U.S.C. § 411(b)(1)........................................................................................1, 7

17 U.S.C. § 411(b)(2)......................................................................................1, 3, 8

**Other Authorities**

Response of Register, *Foss v. Marvic, Inc.,*
    (D. Mass. Mar. 23, 2026)................................................................................14

Response of Register, *Geospatial Tech Assocs. LLC v. U.S.,*
    (Fed. Cl. May 23, 2023)..............................................................................18, 21

Response of Register, *HealtheState, LLC v. U.S.,*
    (Fed. Cl. Jun. 18, 2022) ..........................................................................18, 19, 21

Response of Register, *Palatiumcare, Inc. v. Notify LLC,*
    (E.D. Wis. Apr. 13, 2023)................................................................................22

## I.    INTRODUCTION

A copyright registration is invalid if the applicant knowingly included "inaccurate information" in its application and the Register of Copyrights would have refused registration had she known of the inaccuracy. 17 U.S.C. §411(b)(1). When a party alleges such facts, "the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* §411(b)(2).

Here, Anaconda knowingly provided inaccurate information to the Copyright Office in each of its five copyright registration applications and in response to the Office's inquiries. The Register would have refused registration had she known about those inaccuracies. For example:

- Anaconda told the Office (and this Court) that each registration covers a single work (a "release" of Anaconda Distribution). Anaconda now claims each registration covers a compilation of ***hundreds*** of distinct works, each owned by Anaconda. Had Anaconda attempted to register its releases of Anaconda Distribution as compilations in this manner, the Office would have refused registration including because of Anaconda's failure to comply with application requirements for compilations, including the requirement to identify the works

1

purportedly included within, and the fact that Anaconda has no claim to authorship in many of these works.

- Anaconda did not tell the Office that nearly all purported "source code" it submitted as representative of Anaconda Distribution was computer-generated, non-source-code, and/or third-party material that is not protected by any Anaconda copyright.

- Whereas Anaconda's expert likened Anaconda's deposits to "object code" instead of source code, Anaconda said nothing to the Office about object code, and did not comply with the requirements for object code deposits.

Anaconda made these (and other) misstatements and omissions *about its own technology and software* knowingly. Anaconda knew, for example, that it provided inaccurate technical information about its own software to the Office in response to its inquiries, that its purported code deposits facially did not correspond to the work Anaconda sought to register, and that it was applying for registrations that contradicted its contemporaneous litigation positions. Thus, Airbus moves the Court to refer the questions in the proposed order to the Register to advise whether she would have refused registration had she known of these inaccuracies.[1]

---

[1] Airbus requests only referral of the questions in its Proposed Order to the Register. Airbus does not move the Court for a dispositive invalidity determination as to

## II.    NATURE AND STAGE OF PROCEEDINGS

Airbus filed this declaratory-judgment action in February 2025 following escalating litigation threats from Anaconda. D.I. 1. Anaconda counterclaimed, asserting copyright infringement based on one registration. D.I. 11. Anaconda later amended its counterclaims to add four registrations it sought mid-litigation. D.I. 332. Fact discovery closed in March 2026. Expert discovery is ongoing. The parties exchanged opening and rebuttal expert reports. Reply reports are due July 20. D.I. 389. Dispositive and *Daubert* motions are due August 20. D.I. 345, 2. Trial is set for February 2027. D.I. 24 ¶20.

## III.    SUMMARY OF THE ARGUMENT

1.    If a party alleges that an applicant for copyright registration knowingly provided inaccurate information to the Copyright Office, "the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2).

2.    Here, Anaconda knowingly made three categories of inaccurate statements to the Office. Thus, the Court should request that the Register provide her

---

Anaconda's registrations here. The Court need not make such a finding to refer to the Register under §411(b).

3

opinion whether the inaccuracies, if known, would have caused her to refuse registration.

3.    First, Anaconda presented its applications to the Office as each covering an individual computer program. Anaconda now claims its registrations cover "compilations" of hundreds of separate works that it claims to have partially authored. But Anaconda failed to comply with the requirements for compilation applications, did not identify the works in the "compilations," and did not disclose that it made no contributions to many of those works. The Office would have refused registration for each of these inaccuracies, and would not have issued a registration treating works that Anaconda did not author as individual works of Anaconda authorship, as Anaconda now claims it did.

4.    Second, Anaconda knowingly made three misrepresentations to the Office about its version 2025.06-1 application: the files in the deposit submitted to the Office (a) were written by humans, (b) provided instructions to the conda and Navigator applications, and (c) were akin to source code because they included templating language. Anaconda knew that *none* of these statements about its own technology are true.

5.    Third, Anaconda knowingly made misrepresentations about the contents of the deposits it submitted to the Office, the publication dates of the versions of the Anaconda Distribution it sought to register, and the authors of the

4

versions of the Anaconda Distribution. These inaccuracies directly contradicted Anaconda's own internal data. Each, if known, would have caused the Office to refuse registration.

## IV.  FACTS

### A.  Anaconda Distribution

Anaconda's copyright-infringement counterclaim concerns the Anaconda Distribution ("AD"). AD consists of (1) "conda," a free, open-source tool for installing, managing, and downloading software packages and (2) a set of conda-compatible packages, which are software components formatted so conda can interact with them. Ex. 1 ¶¶41-42; D.I. 332 Counterclaims ¶¶17, 18-22.

The software in the conda-compatible packages is almost all developed by the open-source community and freely available from many sources. Ex. 1 ¶¶41-48; D.I. 332 Counterclaims ¶¶17, 79. Anaconda copies this free software, converts it into the conda package format using an application called conda-build (another free, open-source tool), and publishes the resulting packages in an online repository. Ex. 2, 17; Ex. 1 ¶¶30-48. Each release of AD is simply a subset of the packages from Anaconda's repository and the conda tool to manage them. Ex. 1 ¶¶41-45.

To convert third-party software into conda-compatible packages, Anaconda uses "meta.yaml" files, also known as "recipe" files. Ex. 1 ¶¶31-32; D.I. 332 Counterclaims ¶17. These recipe files are used by Anaconda to bundle code into

conda-compatible packages, but they are not used (or needed) by end users of AD. Still, Anaconda includes them in most conda-compatible packages within AD. Ex. 1 ¶¶154-157. These recipe files are the focus of Anaconda's copyrightability arguments, per Anaconda's counterclaims, briefing, expert reports, and Office correspondence. *See*, *e.g.*, Ex. 3; D.I. 101 ¶64; D.I. 97, 4-5, 10-11; D.I. 191, 2-4; Ex. 4, 83:21-84:4; Ex. 5 ¶¶18, 22.

Anaconda concedes its recipe files are mostly copied from a third-party volunteer organization called conda-forge (D.I. 101 ¶94; Ex. 1 ¶¶106-108), but claims its copyrights cover its modifications to those files. Ex. 2, 17-18; D.I. 101 ¶64.

There are two types of meta.yaml files: human-authored "template" recipes, and computer-generated "rendered" recipes. Ex. 1 ¶¶33-40. The rendered recipes are generated based on the template recipes. *Id.* ¶39. So while Anaconda may edit *template* recipes, no human directly creates or modifies any *rendered* recipes. Ex. 6, 35:4-36:5, 61:16-20.

### B.    Anaconda's Copyright Registrations

Anaconda has five copyright registrations, each covering a different version of AD as a single work: the 2024.02-1, 2024.06-1, 2024.10-1, 2025.06-0, and 2025.06-1 versions. D.I. 332 Exs. B-F. Anaconda applied for its first registration ("2024.02-1") in July 2024. Ex. 12; D.I. 332 Ex. B. Later, during this case, Anaconda

applied to register four more versions, described as "just new incremental versions of [the] same software." *See* 2026-02-27 Hr'g Tr. 64:17-19, 114:14-16.

Anaconda admits its registrations exclude the free, third-party software that comprises the bulk of AD. Ex. 1 ¶81 (citing D.I. 101 ¶64). Indeed, each registration states it excludes "[t]hird party computer programs." D.I. 332 Exs. B-F ("Material excluded from this claim:"). Subtracting third-party materials from AD, what remains is (1) a handful of packages Anaconda wrote itself, such as Anaconda Navigator, a graphical user interface alternative to conda and (2) portions of "recipe" files. Ex. 1 ¶79.

## V.    LEGAL STANDARDS

### A.    Section 411

Except under limited circumstances not relevant here, a party alleging copyright infringement must own a valid copyright registration. 17 U.S.C. §411(a). A registration certificate satisfies the statutory requirement "regardless of whether the certificate contains any inaccurate information, unless—

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."

*Id.* §411(b)(1).

"In any case in which inaccurate information described under paragraph (1) is

alleged, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* §411(b)(2);[2] *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) ("[C]ourts are in agreement that the provision is mandatory in nature, requiring district courts to solicit the advice of the Copyright Office when the statutory conditions are satisfied."). Referral "allow[s] the Register to provide the Court with her advisory opinion based on her expert knowledge of the USCO's registration policies and procedures." *HealtheState, LLC v. U.S.*, 160 Fed. Cl. 91, 97 (2022).

"Knowledge" for purposes of §411(b) simply is "the fact or condition of being aware of something." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 184-85 (2022). "[W]illful blindness may support a finding of actual knowledge." *Id.* at 187. "Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information." *Id.* at 187-88.

## B.    Deposit Requirement

A copyright registration applicant must submit a "deposit" of the work to be

---

[2] Emphasis added and quotations cleaned up unless otherwise noted.

registered. 17 U.S.C. §408(a). A key purpose of the deposit is "to prevent confusion about which work the author is attempting to register." *Paysys Int'l, Inc. v. Atos SE*, 226 F. Supp. 3d 206, 216 (S.D.N.Y. 2016). To register a computer program, the applicant must deposit "one copy of identifying portions for the specific version of the program that the applicant intends to register." U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES §1509.1(F) (3d ed. 2021).[3]

## VI.    ARGUMENT

Anaconda knowingly included inaccurate information in its applications and deposits. Anaconda also knowingly provided incorrect or misleading information to the Office in response to correspondence about Anaconda's most recent application. Each instance is independently sufficient for referral. The Court should ask the Register to advise if she would have refused registration to Anaconda had she known of these inaccuracies.

---

[3] Courts routinely defer to the *Compendium* and adopt the Office's interpretations of copyright law where reasonable and persuasive. *See, e.g.*, *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1042 (9th Cir. 2014), *as amended* (July 9, 2014) (deferring to *Compendium*); COMPENDIUM (THIRD), Introduction, 2 & Table of Authorities, 27-40 (collecting cases citing *Compendium*).

A.   **Anaconda's Applications, Deposits, and Correspondence Contain Known Inaccuracies That Would Have Caused the Register to Refuse Registration**

1.   *Anaconda represented to the Office (and this Court) that each registration covers only one software work, but now contends each registration covers a compilation of hundreds of distinct works it claims to own, including works it did not author*

Anaconda represented to the Office that each of its registrations covers one work: a particular "release" of AD published on a particular date. Exs. 8-12, "Title". Similarly, Anaconda represented to this Court that each registration covers "one" "version" of AD. *See* 2026-02-27 Hr'g Tr. 5:9-13 ("[W]e had copyrights in every *version* of Anaconda Distribution that we released after the *one* that we had registered."), 64:12-19; D.I. 170, 12 ("[E]ach of these registrations cover[s] a different *version* of the same Anaconda Distribution.").

Now, however, attempting to vastly inflate its statutory damages claim, Anaconda contends that each registration covers a compilation of *hundreds* of separate Anaconda-owned works, each corresponding to an open-source package within AD. Ex. 13, 30-34 (referring to "its copyrighted compilations of upstream software packages" and conceding that although these packages are "not independently registered," they are "discrete works" "for the purposes of [Anaconda's] statutory damages"). And Anaconda claims that its one-work registrations bestow a presumption of validity on these hundreds of unspecified individual works, even though Anaconda has no claim of authorship in many of

10

them. Ex. 15, 11, 16-18 (contending that copyrights in individual packages are entitled to presumption of validity).

Had Anaconda informed the Office it intended for each registration to cover a compilation of individual works (including works it did not author), the Office would have refused registration. Anaconda failed to comply with the requirements for such registrations, contributed no authorship to many of the individual packages it now claims are its own distinct works, failed to identify the packages in its applications, and did not submit corresponding deposits. The Office would not have issued Anaconda single-work registrations had it known Anaconda's intent to sneak separate, unspecified individual works into Anaconda's claims without any scrutiny by the Office.

A registration normally covers an individual work. Ex. 14 (Circular 34), 1. A registration can, however, cover a "compilation" of materials or multiple separate works. *Id.*, 1-3; COMPENDIUM (THIRD) §§618.6-618.7; 17 U.S.C. §101. But compilation registrations have special requirements, including:

- The application should: (i) identify preexisting material or data in the compilation (and, if applicable, specifically claim it); and (ii) identify the "selection, coordination, and/or arrangement authorship," which may be demonstrated in the deposit (if clearly evident from it) or a more specific authorship statement. COMPENDIUM (THIRD) §618.6.

11

- If the compilation is a "collective work"—*i.e.*, "a number of contributions, constituting separate and independent works in themselves, …assembled into a collective whole," 17 U.S.C. §101—the application should: (i) identify the authorship being registered (the selection, coordination, and/or arrangement of the works and/or the separate and independent works themselves); (ii) identify the title for each separate and independent work being registered; and (iii) if applicable, identify the "selection, coordination, and/or arrangement authorship," which may be demonstrated in the deposit (if clearly evident from it) or a more specific authorship statement. COMPENDIUM (THIRD) §§610.4(A), 618.7-618.7(A).

- If a compilation or collective work contains an appreciable amount of unclaimable material (*e.g.*, material not owned by the claimant, previously registered work, etc.), then the applicant should exclude that material. *Id.* §§618.6-618.7.

Here, none of Anaconda's applications indicated it was for a compilation of hundreds of individual works, and none provided the information required to register a compilation. Instead, Anaconda disclaimed "third party computer programs" and presented each application as corresponding to a singular software work: a particular "version" of AD, consistent with what Anaconda represented to this Court. Ex. 8-

12

12, "Title," "Author Created," "Limitation of copyright claim"; 2026-02-27 Hr'g Tr. 5:9-13, 64:12-19; D.I. 170, 12. Had Anaconda presented its applications as compilations, the Register would have refused registration for multiple reasons.

First, the Register would have refused registration because Anaconda did not comply with the corresponding registration requirements. For example, Anaconda did not identify whether it was claiming authorship of selection, coordination, and/or arrangement of the component works (packages) or how it selected, coordinated, and/or arranged them. *See* COMPENDIUM (THIRD) §§618.6-618.7(A).

Second, Anaconda has no claim to authorship for many of the packages within AD. Anaconda could not have identified *any* authorship for many of its purported individual package works because many of these packages reflect no Anaconda authorship at all (or vanishingly minimal Anaconda contributions). Ex. 14 (Circular 34), 2-3. For example, 27 of the packages in the 2024.02-1 release consist *entirely* of third-party source code and recipe files copied from conda-forge, with no Anaconda authorship whatsoever—a fact Anaconda knows from its own recipe authorship records. D.I. 101 ¶100, fig.12 (showing all five registered AD versions have packages with recipe files copied entirely from conda-forge); Ex. 19, 52:33-54:5. The Register would have refused to issue a registration treating packages that Anaconda did not author as individual works of Anaconda authorship—exactly how Anaconda seeks to use its registration here. *See* Ex. 15, 11, 16-18 (contending that

13

individual packages bundled with AD are entitled to presumption of validity based on Anaconda's registrations).

Third, Anaconda failed to disclose to the Office what specific packages would be subject to registration and did not include a deposit corresponding to those packages. There is no listing of individual packages, let alone packages with even an arguable contribution from Anaconda, in the applications or deposits. The Register would not have issued Anaconda's registrations had she known the registrations corresponded to an unspecified compilation or collection of individual works, with no way of telling what Anaconda purports each registration to cover. *See* COMPENDIUM (THIRD) §§618.6-618.7(A).

The Register has advised regarding the requirements for registering compilations and circumstances under which she would have registered a work as a compilation or refused registration. *See, e.g.*, Ex. 16, Response of the Register, 17-18, *Foss v. Marvic, Inc.* (D. Mass. Mar. 23, 2026). The Court should refer Anaconda's registrations to the Register to advise here.

2.     *Anaconda obtained the 2025.06-1 Registration by knowingly providing incorrect technical information to the Office*

The Office initially rejected Anaconda's most recent registration (2025.06-1), whose corresponding deposit consisted of various rendered meta.yaml recipe files. The Office explained that the deposit was only 37 pages (regulations require 50 pages) and included what appeared to be "markup code" (regulations require "*source*

14

code," defined as "a set of statements and instructions written by a *human being* using a particular programming language"). Ex. 3, -00167734; COMPENDIUM (THIRD) §721.3.

In response, Anaconda made three misrepresentations about its deposit's contents to convince the Office that the deposited rendered meta.yaml files were "source code" eligible for registration:

First, Anaconda represented that the deposited files were "developed and edited *directly by human beings*." Ex. 3, -00167733. Anaconda knew that was not true. Anaconda's deposit corresponded to *rendered* meta.yaml files, which Anaconda's corporate designee conceded are not edited by humans. Ex. 6, 34:25-36:5 (admitting not having "any reason to believe that the rendered meta.yaml files included in this deposit were directly edited by human beings" and noting Anaconda's representation was "not necessarily accurate"). Indeed, the face of these files indicate they were "created by [the] conda-build" application, not a human. Ex. 17, -6523.

Second, Anaconda claimed the rendered recipe files "provide instructions to the Anaconda Navigator and conda software." Ex. 3, -00167732. That is not correct. A rendered recipe is merely a record of how a particular package was built. Ex. 18, 84:19-24; Ex. 6, 29:8-30:4. Anaconda witnesses admitted that neither conda nor Navigator obtains instructions from the deposited files—indeed, they have no direct

interaction with meta.yaml files at all. Ex. 6, 29:23-30:19; Ex. 19, 32:24-33:6; Ex. 20, 61:5-10. Anaconda's expert also conceded that recipe files have no direct interaction with conda or Navigator. Ex. 21 ¶¶50-53.[4]

Third, Anaconda claimed that its deposited meta.yaml files are like "scripting language source code" because they "can include templating language, including conditional statements and control structures typical of source code, such as 'if' statements and 'for' loops." Ex. 3, -00167733. Again, that statement is untrue. Anaconda submitted *rendered* meta.yaml files, which Anaconda's expert conceded do not contain "templating language." Ex. 21 ¶75.

Had Anaconda not knowingly made these misrepresentations, the Office would have maintained its initial rejection of Anaconda's application. The Court should refer the 2025.06-1 Registration to the Register to advise whether she would have refused registration had she known Anaconda's technical descriptions of its deposited meta.yaml files were inaccurate. *See, e.g., Foss v. Marvic, Inc.*, 814 F. Supp. 3d 167, 170-71 (D. Mass. 2026) (referring to Register where defendants alleged plaintiff intentionally misrepresented information in application following communications with Office and previous denials of applications).

---

[4] Anaconda's expert nonetheless maintains that meta.yaml files remain "relevant" because they are used to "produce the artifact and metadata that conda later uses." Ex. 21 ¶¶50-53. But that is irrelevant; it is not what Anaconda told the Office.

3.    *Anaconda knowingly misrepresented information related to other application and deposit requirements to the Office*

Anaconda also knowingly misrepresented other parts of its applications in ways that the Register has previously advised would have caused her to refuse registration.

(a)    Deposits

**The 2024.02-1 Deposit**. Anaconda knowingly deposited *thousands* of pages of material with the Office to obscure what code Anaconda did and did not write. Anaconda was required to deposit 50 pages of source code for the registered work. Ex. 22 (Circular 61), 2, 4-5. This requirement exists "to prevent confusion about which work the author is attempting to register." *Paysys*, 226 F. Supp. 3d at 216. Instead, Anaconda deposited over 4,000 pages of almost entirely irrelevant material that did not even arguably correspond to the work it purportedly sought to register, including large amounts of material Anaconda did not write. Ex. 1 ¶58. The deposit includes, for example, thousands of pages of release notes, lists, license agreements, readme files, and images that are not even arguably "source code," as well as material that is not even part of AD (*e.g.*, material from a separate product called Miniconda). Ex. 1 ¶¶58, 61; Ex. 6, 59:7-23; *e.g.*, Ex. 23, -0713. What little source code *is* present in the deposit is almost all unmodified third-party code that Anaconda did not author and admits is excluded from the scope of the registration the deposit supports. Ex. 1 ¶62; D.I. 101 ¶64. Anaconda did not tell the Office that

17

its deposit was mostly irrelevant or third-party material.[5]

Anaconda's application did not inform the Office that its deposit was almost completely irrelevant to the application. The Register has advised that she would have refused registration where code deposits did not accurately represent the claimed works. *See, e.g.*, Ex. 24, Response of Register, 15, *Geospatial Tech. Assocs., LLC v. U.S.* (Fed. Cl. May 23, 2023) ("The Office would not have registered Work if it had been aware that Geospatial failed to exclude…previously published or previously registered material…, or copyrightable material owned by a third party, if that material constituted an appreciable portion of the work."); Ex. 25, Response of Register, 15-16, *HealtheState* (similar). The Court should ask the Register to advise regarding Anaconda's deposits.

**The 2024.06-1, 2024.10-1, 2025.06-0, 2025.06-1 Deposits**. The 2025.06-1 deposit consists of rendered meta.yaml files. Ex. 1 ¶¶71-76. As discussed (§VI.A.1, *supra*), Anaconda misrepresented that such files in the 2025.06-1 deposit consisted of human-generated source code. Anaconda has tried to justify that misrepresentation by relying on its expert's opinion that rendered meta.yaml files are analogous to "object code" versions of human-edited *template* recipe files. Ex.

---

[5] After all improper or irrelevant material is set aside, fewer than 50 pages of purportedly Anaconda-authored source code remain in the 2024.02-1 Deposit. Ex. 1 ¶64. Similarly, the 2025.06-0 and 2025.06-1 Deposits contain just 41 and 20 pages of purportedly Anaconda-authored source code, respectively. *Id.* ¶¶55-64, Fig.4.

¶46. Anaconda contends that because "object code" is an acceptable form of deposit in lieu of source code, rendered meta.yaml file deposits were appropriate. But if rendered meta.yaml files were "object code," then the Office would have imposed additional requirements on Anaconda and withheld a significant benefit. The Office accepts object code deposits *only* if the applicant expressly requests registration under the "Rule of Doubt," which withholds the presumption of validity of the copyright and of the facts stated in the registration certificate. Ex. 22 (Circular 61), 6; *see* 17 U.S.C. §410(c). Anaconda made no such request and did not disclose to the Office that the deposited meta.yaml files supposedly correspond to object code. This problem also affects the 2024.06-1, 2024.10-1, and 2025.06-0 Deposits, which indisputably consist of the same type of rendered files. The Court should refer the question of deposited rendered meta.yaml files to the Register.

(b)     Publication Dates

An application must state the date of the work's first publication. Ex. 25, Response of Register, 14-15, *HealtheState*. Where a work incorporates previously published material, the application must identify that preexisting material and exclude it from the claim, and a registration cannot sweep previously published components into a single later publication date. Ex. 22 (Circular 61) 2. Similarly, material created *after* the first date of publication cannot be considered published on an earlier date. *HealtheState, LLC v. U.S.*, 168 Fed. Cl. 624, 648-50 (2023).

19

Here, each of Anaconda's registrations lists a single date of first publication tied to the release it identifies, but the deposited material does not correspond to that date.[6] Ex. 26, -5230; Ex. 5 ¶30. For example, each package within AD was published to Anaconda's package repository before the claimed first-publication date, sometimes months earlier. *E.g.,* Ex. 5 ¶¶34-35; Appx., Appx. C, 2 ("typing-inspection" package published months before 2025.06-1 first publication date, 6/18/2025). The first deposit also contains material created *after* the claimed first-publication date. Ex. 1 ¶61; Ex. 23, -3212 (last modified date of June 21, 2024). Because the dates Anaconda certified do not match its dates of publication, Anaconda's deposits misrepresent the works applied for. Indeed, Anaconda has admitted: "Anaconda's Registered works, including the individual packages registered as part of [the registered works], ***have been distributed in Anaconda's prior version*** 0.x, 1.x, 2.x, 4.x, 5.x, 2018.x, 2019.x, 202.x [sic], 2021.x, 2022.x, and 2023.x Anaconda Distribution releases[.]" Ex. 27, 38-39.

The Register has advised that she would have refused registrations whose deposits—like Anaconda's—contained material outside the claimed publication

---

[6] Although Anaconda's 2024.02-01 application acknowledged that the work in question was "derivative" of earlier software and that Anaconda sought its registration to encompass the earlier software in the derivative, Ex. 12 (citing *Enter. Mgmt. Ltd. v. Construx Software Builders, Inc.*, 73 F.4th 1048 (9th Cir. 2023)), Anaconda failed to identify that earlier software, failed to provide accurate publication dates, and failed to disclose that its deposit also included material published *after* the averred publication date.

date. *See, e.g.*, Ex. 24, Response of Register, 14-15, *Geospatial* ("If the deposit copy Geospatial provided for the [Registration] was not first published or completed on the dates indicated in the application, the Office would have refused registration."); Ex. 25, Response of Register, 15-16, *HealtheState* (similar). The Court should ask the Register to advise regarding Anaconda's publication dates.

(c)    Authors

An application must identify the author(s) of the work. COMPENDIUM (THIRD) §613.1. An author is the person who created the material being registered. *Id*. Another party may be considered the author only where the person who created the work was an employee acting within the scope of employment, or where the work was created per an express written work-made-for-hire agreement between the creator and the party ordering or commissioning it. *Id.* §§613.1, 613.4; Ex. 28 (Circular 30), 1. Otherwise, authorship remains with the creator. COMPENDIUM (THIRD) §506.3.

Each of Anaconda's applications names Anaconda as the sole author and claims that it owns the entire work, apart from the excluded third-party computer programs. Exs. 26; 29-32. But even this narrow band of material Anaconda does claim as its own—*e.g.*, portions of recipe files—was authored in part by people Anaconda does *not* employ and with whom it has no work-made-for-hire agreement. Ex. 1 ¶¶130-132. These contributors fall into two groups: contractors Anaconda

21

engaged to maintain its recipes but for whom Anaconda has produced no copyright assignment or work-made-for-hire agreement;[7] and individuals with no identifiable affiliation with Anaconda at all. At least twelve unaffiliated individuals contributed to the recipe templates in the registered versions of AD. Ex. 1 ¶130. These contributions of non-Anaconda authors are significant, averaging nearly 10% of the lines in the meta.yaml files in the registered versions of AD. Ex. 1 ¶130.

The Register has advised that she would have refused registration had she known that an application omitted authors of the work. *See, e.g.*, Ex. 33, Response of Register, 15, *Palatiumcare, Inc. v. Notify LLC* (E.D. Wis. July 11, 2023); *PalatiumCare, Inc. v. Notify LLC*, 2023 WL 2929462, at *8-9 (E.D. Wis. Apr. 13, 2023) (referring where third-party contractors who worked on source code did not have work-for-hire agreements with plaintiff that met applicable legal standards). The Court should ask the Register whether she would have refused registration here.

## B.    Anaconda's Inaccuracies Were Knowing

Anaconda knew its statements were inaccurate: they all concern information Anaconda possessed (*e.g.*, the technical operation of Anaconda's software, its code, authorship, ownership, or publication dates) and its litigation positions. Anaconda did not tell the Office that it was applying for compilation registrations despite taking

---

[7] Anaconda has produced agreements between some of these contractors and their employers, but none between these contractors and Anaconda, as is required. COMPENDIUM (THIRD) §§506.2-506.3.

this position in litigation, and did not tell the Office that it sought a registration bestowing a presumption of validity on individual works in which it knew it had no claim of authorship based on its own recipe-creation records. *Supra* §VI.A.1. Despite knowing how its software and technology works, it provided inaccurate technical information to the Office to overcome an initial refusal of its deposit. *Supra* §VI.A.2. And it provided inaccurate applications and deposits, misstating publication dates (listed on its own website), authorship information (included in its own recipe-creation records), and deposit contents. *Supra* VI.A.3.

Anaconda also knew the relevant law. Anaconda relied on its counsel (Latham & Watkins) to prepare its applications and deposits. Ex. 6, 7:22-9:6, 19:8-13, 20:22-21:4, 21:23-22:6; Ex. 18, 160:7-17. Those lawyers have significant experience with copyright law and the Office's registration rules, including for software specifically. Ex. 34, 1-3; Ex. 35, 2. Considering their experience, they either knew the law and the Office's rules discussed in §VI.A or were willfully blind to them. Another court found similar experience evidenced knowledge of legally inaccurate information and referred to the Register. *Brunson v. Cook*, 2023 WL 2668498, at *16 (M.D. Tenn. Mar. 28, 2023) (finding knowledge where plaintiff's attorney specialized in "soft intellectual property," reviewed a definition emailed by the Office, and accessed the *Compendium*).

Thus, the Court should refer Anaconda's registrations to the Register.

23

## VII.  CONCLUSION

Airbus respectfully requests that this record be sent with a request to the Register of Copyrights to advise on the questions in the Proposed Order concerning the invalidity of Anaconda's registrations.

Dated:  July 15, 2026

Respectfully submitted,

**FISH & RICHARDSON P.C.**

/s/ *Grayson P. Sundermeir*
Grayson P. Sundermeir (No. 6517)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:

Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
Kayleigh E. McGlynn (*pro hac vice*)
Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com;
kessel@fr.com; pearson@fr.com;
pechette@fr.com; mcglynn@fr.com;
wade@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024

24

Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-*
*Counterclaim-Defendants, Airbus*

25

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 5000 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, I caused the foregoing to be served via electronic mail upon all counsel of record.

/s/ Grayson P. Sundermeir
Grayson P. Sundermeir (#6517)