## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

AIRBUS SAS,
AIRBUS DS GOVERNMENT SOLUTIONS, INC.,
AIRBUS HELICOPTERS, INC.,
AIRBUS U.S. SPACE & DEFENSE, INC.,
AIRBUS AMERICAS, INC.,
and AIRBUS DEFENCE AND SPACE LTD.,

        Plaintiffs,

    v.

ANACONDA, INC.,

        Defendant.

ANACONDA, INC.,

        Counterclaim-Plaintiff,

    v.

AIRBUS SAS,
AIRBUS DS GOVERNMENT SOLUTIONS, INC.,
AIRBUS HELICOPTERS, INC.,
AIRBUS U.S. SPACE & DEFENSE, INC.,
AIRBUS AMERICAS, INC.,
AIRBUS DEFENCE AND SPACE LTD.,
and AIRBUS ATLANTIC SAS,

        Counterclaim-Defendants.

C.A. No. 25-178-CFC-SRF

**AIRBUS'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR THE ISSUANCE OF A REQUEST TO THE REGISTER OF COPYRIGHTS PURSUANT TO 17 U.S.C. § 411(b)(2)**

Dated: August 7, 2026

Grayson P. Sundermeir (#6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:
Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
Kayleigh E. McGlynn (*pro hac vice*)
Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com; kessel@fr.com;
pearson@fr.com; pechette@fr.com;
mcglynn@fr.com; wade@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-Counterclaim-Defendants Airbus*

# TABLE OF CONTENTS

I.    INTRODUCTION.......................................................................................1

II.   ARGUMENT .............................................................................................2

    A.    Anaconda does not address evidence that it knew its responses to Office questions regarding the 2025.06-1 deposit were inaccurate.......2

    B.    Anaconda does not dispute its inaccurate statements regarding compilations and multiple works. ......................................................6

    C.    Anaconda does not dispute the other identified inaccuracies. .............8

        1.    Deposits.....................................................................................8

        2.    Publication Dates .....................................................................9

        3.    Authors...................................................................................10

    D.    Anaconda's Procedural Arguments Do Not Bar Referral...................11

    E.    Anaconda's Timing Objection Is Misplaced......................................12

III.  CONCLUSION........................................................................................12

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brunson v. Cook*,
  2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023) .................................................4

*DeliverMed Holdings, LLC v. Schaltenbrand*,
  734 F.3d 616 (7th Cir. 2013) ...........................................................................11

*Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*,
  73 F.4th 1048 (9th Cir. 2023) .............................................................................9

*Geospatial Tech. Assocs., LLC v. United States*,
  171 Fed. Cl. 288 (2024)....................................................................................11

*HealtheState, LLC v. United States*,
  160 Fed. Cl. 91 (2022)..................................................................................2, 11

*LADS Network Sols., Inc. v. Agilis Sys., LLC*,
  138 F.4th 1059 (8th Cir. 2025) .........................................................................11

*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013) .............................................................................10

*Palmer/Kane LLC v. Rosen Book Works LLC*,
  188 F. Supp. 3d 347 (S.D.N.Y. 2016) .........................................................11, 12

*Paysys Int'l, Inc. v. Atos SE*,
  226 F. Supp. 3d 206 (S.D.N.Y. 2016) ............................................................5, 8

*Real World Media LLC v. Daily Caller, Inc.*,
  744 F. Supp. 3d 24 (D.D.C. 2024)....................................................................11

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
  595 U.S. 178 (2022).........................................................................................12

*Warren v. Fox Fam. Worldwide, Inc.*,
  171 F. Supp. 2d 1057 (C.D. Cal. 2001) ............................................................10

**Other Authorities**

17 U.S.C. § 411(b)(1)........................................................................................11

## I.    INTRODUCTION

Anaconda's main argument—that Airbus supposedly identified no evidence proving knowledge justifying referral—is wrong on the record and law.

For example, Airbus explained that Anaconda knowingly made inaccurate statements in response to Office correspondence: Anaconda stated that its deposit files were human-authored, knowing they were computer-generated; Anaconda stated the deposited files "provide instructions" to Anaconda Navigator and conda, when its witnesses confirmed no such interaction; and Anaconda told the Office the deposited files contained "templating language," but its expert admitted they do not. Airbus also showed how Anaconda made two inaccurate statements it now conflates: Anaconda told the Office that it was not registering a compilation, yet claims that it *did* register a compilation; and it told the Office and this Court that each of its registrations covered a single work, yet claims that each registration covers *hundreds* of works. Rather than a "grab bag," Airbus explained the several distinct knowing inaccuracies made here.

Anaconda taking positions at the Office that contradict its contemporaneous positions in this Court reflects "knowing" inaccuracy. The same experienced counsel made the statements to the Office and this Court, where Anaconda's witnesses admitted that what Anaconda told the Office was inaccurate. And Anaconda blocked Airbus from investigating Anaconda's knowledge in its applications and Office

1

correspondence, repeatedly asserting privilege in depositions and discovery responses, including over Anaconda's decision to deposit thousands of pages of irrelevant material instead of material representative of its work. Ex. A, 32:15-33:11, 41:7-42:19, 46:8-51:3. Although Anaconda argues its errors were "inadvertent and unknowing," it submits no sworn declaration supporting this attorney argument, despite submitting a sworn statement on other issues. There is thus strong circumstantial evidence of knowledge that clears the threshold for referral.

Relatedly, Anaconda wrongly identifies that threshold. It claims that Airbus must prove Anaconda's statements were knowingly inaccurate "as a matter of law" before referral, but that is a summary-judgment standard. Airbus need only sufficiently allege knowing inaccuracies to trigger referral; Airbus's burden to *prove* its factual allegations is for trial. *See, e.g.*, *HealtheState, LLC v. U.S.*, 160 Fed. Cl. 91, 95 (2022). Factual disputes about Anaconda's knowledge are no reason to deny referral.

## II.    ARGUMENT

### A.    *Anaconda does not address evidence that it knew its responses to Office questions regarding the 2025.06-1 deposit were inaccurate.*

Anaconda's claim of "no evidence" that its responses to the Office's questions regarding the 2025.06-1 deposit were knowingly inaccurate ignores the record.

RB14.[1] The Office rejected Anaconda's application because it found that instead of depositing source code—defined as "a set of statements and instructions *written by a human*"—Anaconda appeared to deposit something different. D.I. 398-3, -00167733-34. The Office was correct: as Anaconda concedes, its deposit "included only rendered meta.yaml files," not written by humans but generated via "an automated process (called 'conda-build')." RB15-16. Nevertheless, to overcome the rejection, Anaconda's litigation counsel made three false representations. There is ample evidence supporting an inference that Anaconda knew these were false, including Anaconda's sworn expert pleading contemporaneous with Anaconda's statements, and its own 30(b)(6) testimony admitting they were "not necessarily accurate." To wit:

- Anaconda told the Office that the deposited files were "developed and edited directly by human beings" (D.I. 398-03, -00167733), but its corporate deponent admitted there was no "reason to believe that the rendered meta.yaml files…were directly edited by human beings." D.I. 398-6, 34:25-36:5. Anaconda contemporaneously filed an expert declaration here, conceding such files are *neither* developed nor edited directly by human beings. D.I. 101 ¶¶52-53 (the "conda-build [tool]

---

[1] "BB" refers to Airbus's brief (D.I. 397); "RB" refers to Anaconda's brief (D.I. 415).

evaluates and populates the metadata in the raw recipe files" to create "a built meta.yaml file," *not* a human author).

- Anaconda told the Office that the deposited files "provide instructions to the Anaconda Navigator and conda" (D.I. 398-03, -001667732), but Anaconda's witnesses admitted the files don't do that. BB15-16 (collecting testimony).

- Anaconda told the Office that the deposited files were like source code because they "can include templating language" (D.I. 398-03, -00167733), but Anaconda's expert admitted the files do *not*. D.I. 398-21 ¶75.

*Brunson* is on point. There, as here, the Office inquired about an "issue with the application," and counsel "specializ[ing] in…copyrights" answered contrary to facts known to the applicant. *Brunson v. Cook*, 2023 WL 2668498, at *2-3, 16 (M.D. Tenn. Mar. 28, 2023). Anaconda's attempt to distinguish *Brunson* as involving information "clearly presented" to counsel is refuted by Anaconda's own Statement of Facts, which recounts the Office's inquiry letter. Anaconda knew what the Office was asking, knew the correct answers—*e.g.*, it had just submitted a sworn declaration to this Court with one right answer, D.I. 101 ¶¶52-53 (rendered meta.yaml files are made by conda-build, *not* a human author)—and provided incorrect information anyway.

4

Anaconda otherwise attempts to defend its statements by mischaracterizing them. It claims that although the Office's rejection specifically concerned Anaconda's deposit—indeed, Anaconda responded with a revised deposit—Anaconda's correspondence did not address the material it deposited, but provided only a "general description of the operation of meta.yaml files." RB17. That is not true. D.I. 398-3, -00167731-33 (making the points above in the context of "[t]he files submitted in the deposit"). Nor does it cure the plain inaccuracies in what Anaconda told the Office. In fact, Anaconda's brief admits them: (1) "an automated process (called 'conda-build')" generates rendered files, not humans; (2) "the recipe files are used to create a 'package artifact,' which is what *directly* provides instructions to the conda and Anaconda Navigator programs," not the recipe files themselves; and (3) the "specific deposited files" did not "contain[] templating language[.]" RB15-17. The Office raised issues with the specific deposit that Anaconda submitted, and Anaconda responded to those issues. The notion that Anaconda's response was not discussing its specific deposit, but was a "general description of meta.yaml files" that did not apply to the deposited files, is unsupported and implausible.

An answer accurate only as to files ***not*** deposited is not "ambiguous," RB16; it is a misleading attempt to overcome the Office's rejection. The deposit exists to identify the work. *Paysys Int'l, Inc. v. Atos SE*, 226 F. Supp. 3d 206, 216 (S.D.N.Y. 2016). Anaconda's brief confirms that Anaconda misled the Office.

5

**B.      Anaconda does not dispute its inaccurate statements regarding compilations and multiple works.**

Anaconda's argument on compilations and multiple works conflates two inaccuracies. It claims: "The question of whether Anaconda is entitled to separate awards of statutory damages for Airbus's downloads of the individual packages within the Distribution is a distinct legal question from whether the Distribution was properly registered as a computer program rather a compilation or collective work." RB11. That may be true, but is beside the point, sidestepping Anaconda's two knowing inaccuracies.

First, Anaconda concedes that it elected not to disclose to the Office that it sought "compilation" protection, while simultaneously arguing here that its registration ***was*** for a compilation. *Compare* RB11 n.2 (Anaconda didn't file a compilation application because that "may have impeded Anaconda's ability to seek separate awards of statutory damages"), *with* D.I. 398-13, 30-35 (claiming "copyrighted compilations of upstream software packages"). This demonstrates both inaccuracy and knowledge: the statements directly contradict each other, and were made within weeks of each other, *while this case was pending*.

Second, Anaconda told the Office (and the Court) that each registration corresponded to a single computer program. BB10. This definition of its work was important not only for statutory damages purposes, *but because registering a single work bestows a presumption of validity in the copyright on that specifically*

6

*registered work*—a fact Anaconda's brief ignores. Despite representing that it was registering a single work, Anaconda now contends that the Office granted it a registration that provides a presumption of validity as to hundreds of separate works, which were never identified to the Office, many of which Anaconda concedes it didn't author. D.I. 398-15, 16-18 (arguing copyright on individual packages entitled to presumption of validity).

The issue is thus not Anaconda's entitlement "to separate awards of statutory damages," but rather Anaconda's misstatements regarding the work it sought to register to obtain the presumption of validity. Anaconda's decision to identify a single work, instead of telling the Office that it sought registration (and the concomitant presumption) for hundreds of works, was knowingly inconsistent with its contemporaneous litigation positions. The same is true of Anaconda's failure to disclose that it was seeking to register a compilation work, when taking the opposite position here.

Anaconda's other excuses fail. For example, Anaconda's reliance on the "Associated Packages" title language does not cure the defect. Compendium §618.7 requires identifying the component works, authorship claimed, and selection, coordination, or arrangement claimed—Anaconda has no claim that a title arguably *hinting* at multiplicity complies. BB13.

7

### C.    Anaconda does not dispute the other identified inaccuracies.

Anaconda fails to meaningfully dispute that the other statements at issue were knowingly inaccurate.

### 1.    *Deposits*

Anaconda's argument as to the 4,000-page 2024.02-1 deposit misses the point. The problem is not "that Anaconda deposited *too much* source code" (RB18), but that Anaconda chose to deposit *thousands* of pages of irrelevant material not corresponding to the work it sought to register. BB17-18. Anaconda, represented by competent outside counsel, knew that it needed to submit relevant, representative code to the Office. *See* 2026-02-27 Hr'g Tr. at 92:15-17 ("I was general counsel at the Copyright Office. I litigate copyright cases all the time."); *see also Paysys*, 226 F. Supp. 3d at 216 (public notice function of deposits). Anaconda instead submitted irrelevant materials not reflective of its work, and then blocked Airbus from exploring its selection of deposit material via privilege instructions. Ex. A, 56:9-59:6.  Anaconda cannot simultaneously argue that its state of mind is privileged and that Airbus lacks evidence of its state of mind.  Notably, Anaconda does not even dispute that its deposit comprised thousands of pages of irrelevant material over which it had no legitimate claim of ownership.

As to the deposited rendered meta.yaml files, Anaconda concedes that they are machine-generated. RB15. That they are human-*readable* (RB18-19) does not

make them human-*authored*. Thus, like object code, the rendered meta.yaml files are not themselves the allegedly human-authored work being registered, nor do they show that content to the Office. This is why a "Rule of Doubt" registration would be appropriate, as Anaconda concedes for "analogous" object code. BB18-19. If Anaconda viewed what it submitted as an "object code" analogue to meta.yaml "source code"—and Anaconda confirmed that it did, after the Office correspondence—then it should have said so. Its failure to do so is a knowing inaccuracy. Anaconda does not explain why object code (rather than source code) is analogous for its expert copyrightability arguments but not for its own registration practices.

### 2.    *Publication Dates*

As to publication dates, Anaconda *admits* that the dates are inaccurate and apparently admits knowledge. RB19 ("That is true, but there is nothing improper about it."). Instead, Anaconda argues that the inaccuracies do not matter because Anaconda's registration was a derivative-work registration, thus capturing previously-published material under *Enterprise Management*. RB19-20. But *Enterprise Management* only permits a derivative registration to reach earlier unregistered elements and says nothing about the decision not to provide accurate dates of publication. 73 F.4th 1048, 1057 (9th Cir. 2023). And it does *not* excuse

9

failing to identify and exclude preexisting material—and material created *after* the proper date cannot be swept in at all.

### 3.   Authors

As to authors, Anaconda does not dispute that it failed to list the unaffiliated contributors to the AnacondaRecipes repositories who contributed to the meta.yaml templates Anaconda claims are the heart of its copyright. BB21-22. Anaconda now claims that their work is excluded because of Anaconda's disclaimer of "third party computer programs." *But that is the opposite of Anaconda's long-standing litigation position that they are Anaconda authors, not third parties*. *E.g.*, Ex. B (identifying third parties as Anaconda contributors).

As for code written by contractors, Anaconda's silence on its agreements with the contractors confirms it doesn't have them. Instead, Anaconda cites two cases to claim that it only needs an agreement with the contractors' employer, but neither helps Anaconda. RB21-22. *Marvel* says nothing about source code, nor anything excusing Anaconda's failure to adduce agreements between contributors and Anaconda. *See* 726 F.3d 119 (2d Cir. 2013). *Warren* involved music for a television series where a *separate* agreement was required to make the company an author. *See* 171 F. Supp. 2d 1057, 1067 (C.D. Cal. 2001). Anaconda has no similar agreements with individual contractors here.

10

Thus, its failure to list contractors and other contributors as authors is inaccurate. Anaconda does not deny that it knew of at least the contractors' work when it submitted its applications, and does not appear to deny that it knew it lacked contractor agreements. This is not a case of excusable confusion by inexperienced counsel.

### D.    Anaconda's Procedural Arguments Do Not Bar Referral

Anaconda misstates the procedural standards.

First, Anaconda asserts Airbus must prove inaccuracy and knowledge "as a matter of law." RB1-2. But Airbus need only "*allege[]* the type of inaccuracy described in § 411(b)(1)" for referral. *HealtheState*, 160 Fed. Cl. at 95. Airbus's "burden to *prove* its factual allegations does not arise until the merits stage of the proceeding, where the court can more appropriately make the findings necessary to determine § 411(b)'s scienter requirement." *Id.* Anaconda's cases do not instruct otherwise. *HealtheState* considered Anaconda's *DeliverMed* and *Palmer/Kane* cases (RB5-6). In *Real World* (RB6-7), the issue was timing of referral. And *LADS* and *Geospatial* (RB6-7) hold only that disputes of the ultimate issue of *invalidity* cannot be resolved at summary judgment. They do not bar *referral*.

Second, Anaconda misstates what knowledge evidence Airbus must present. Airbus need not identify a specific document where Anaconda confesses awareness of its misstatements. *Cf.* RB8. Actual knowledge or willful blindness may be shown

by "[c]ircumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 187-88 (2022). The record here surpasses that threshold. For example, the same counsel made contrary statements to the Office and this Court simultaneously, showing both knowledge and inaccuracy. *E.g.*, §§II.A,B, *supra*; BB14-16, BB22-23.

### E. Anaconda's Timing Objection Is Misplaced

Finally, referral will not affect the schedule. Airbus has not sought a stay pending the Register's response, and the Court may impose a deadline for that response. Airbus moved promptly after developing the record—the 2025.06-1 Registration issued in December 2025, and the supplemental corporate depositions on the registrations, deposits, and Office correspondence were taken in April 2026. Airbus only deposed Anaconda's expert on registration validity this Sunday, just days after his last report was served. There was no delay (RB1), and certainly none that counsels against mandatory referral. *See, e.g.*, *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 348-49 & n.1 (S.D.N.Y. 2016).

### III. CONCLUSION

For the above-stated reasons, the Court should grant this Motion.

Dated: August 7, 2026

Respectfully submitted,

**FISH & RICHARDSON P.C.**

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (No. 6517)
222 Delaware Avenue, 17ᵗʰ Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:

Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
Kayleigh E. McGlynn (*pro hac vice*)
Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com;
kessel@fr.com; pearson@fr.com;
pechette@fr.com; mcglynn@fr.com;
wade@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-
Counterclaim-Defendants Airbus*

13

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 2,493 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

/s/ Grayson P. Sundermeir
Grayson P. Sundermeir (#6517)

14

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2026, I caused the foregoing to be served via electronic mail upon all counsel of record.

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)