**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

AIRBUS SAS,
AIRBUS DS GOVERNMENT SOLUTIONS, INC.,
AIRBUS HELICOPTERS, INC.,
AIRBUS U.S. SPACE & DEFENSE, INC.,
AIRBUS AMERICAS, INC.,
and AIRBUS DEFENCE AND SPACE LTD.,

Plaintiffs,

v.

ANACONDA, INC.,

Defendant.

C.A. No. 25-178-CFC-SRF

[redacted]

ANACONDA, INC.,

Counterclaim-Plaintiff,

v.

AIRBUS SAS,
AIRBUS DS GOVERNMENT SOLUTIONS, INC.,
AIRBUS HELICOPTERS, INC.,
AIRBUS U.S. SPACE & DEFENSE, INC.,
AIRBUS AMERICAS, INC.,
AIRBUS DEFENCE AND SPACE LTD.,
and AIRBUS ATLANTIC SAS,

Counterclaim-Defendants.

**AIRBUS'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT (NO. 4) OF NO CONTRACT FORMATION AND LIMITATION OF LIABILITY**

Dated: August 20, 2026

Grayson P. Sundermeir (#6517)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:
Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
Kayleigh E. McGlynn (*pro hac vice*)
Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com;
kessel@fr.com; pearson@fr.com;
pechette@fr.com; mcglynn@fr.com;
wade@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-Counterclaim-Defendants Airbus*

# TABLE OF CONTENTS

**PAGE**


I. INTRODUCTION ........................................................................ 1

II. NATURE AND STAGE OF THE PROCEEDINGS........................... 1

III. SUMMARY OF THE ARGUMENT .................................................. 2

IV. FACTUAL BACKGROUND ............................................................ 2

V. LEGAL STANDARDS ..................................................................... 3

VI. ARGUMENT.................................................................................... 4

A. No Contract Was Formed Based on the 2025 Terms ................ 4

B. The 2024 Terms Cap Potential Damages.................................. 6

VII. CONCLUSION ................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ... 3

*HEALTHeSTATE, LLC v. U.S.*,
168 Fed. Cl. 624 (2023), *aff'd*, No. 2024-1336, 2026 WL 787163 (Fed. Cir. Mar. 20, 2026) ... 3, 4, 5

*Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*,
261 A.3d 1199 (Del. 2021) ... 3

*Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*,
433 F. App'x 842 (11th Cir. 2011) (per curiam) ... 4, 6, 7

*Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*,
55 A.3d 330 (Del. 2012) ... 3

*Waters v. Delaware Moving & Storage, Inc.*,
300 A.3d 1 (Del. Super. Ct. 2023) ... 7

## Other Authorities

FED. R. CIV. P. 56(a) ... 3

## I. INTRODUCTION

Anaconda's original breach of contract counterclaim was based on its March 31, 2024 Terms of Service ("2024 Terms"), which contain a jury waiver and bilateral limitation of liability capping Anaconda's potential damages to a trivial sum. During this litigation, Anaconda revised its terms, effective July 15, 2025 ("2025 Terms"), including removing the jury-waiver provision and rewriting the limitation-of-liability provision. However, before the 2025 Terms took effect, Airbus notified Anaconda that it did not accept, and its employees were not authorized to accept, the new terms. Nevertheless, Anaconda's amended counterclaim alleges breach of the 2025 Terms. But no agent with authority to bind Airbus accepted those terms, so no contract was formed with Airbus. Accordingly, Airbus moves for summary judgment that the parties did not form a contract based on the 2025 Terms and any damages for alleged breach of the 2024 Terms are capped.

## II. NATURE AND STAGE OF THE PROCEEDINGS

Anaconda asserts a breach of contract counterclaim based on its terms of service. D.I. 332, Counterclaims ¶¶96-102. When Anaconda moved to amend its counterclaims to replace the 2024 Terms with the 2025 Terms, the Court allowed Anaconda to add the 2025 Terms, but did not allow it to drop the 2024 Terms via amendment. D.I. 290, 112:1-10. Fact and expert discovery are complete. D.I. 24, 17;

D.I. 345, 2. Airbus now moves for partial summary judgment on Anaconda's breach of contract counterclaim.

## III. SUMMARY OF THE ARGUMENT

1. Anaconda cannot meet its burden on contract formation for the 2025 Terms. No agent with authority to bind Airbus accepted the terms on Airbus's behalf.

2. The 2024 Terms cap potential contract damages against each Airbus counterclaim-defendant at the fees that party paid to Anaconda in the 12-month period immediately preceding the first claim, or where no fees were paid, $100.

## IV. FACTUAL BACKGROUND

The relevant facts are undisputed.[1] The 2024 Terms contain a limitation-of-liability provision. SOF ¶1. Before the 2025 Terms became effective, Airbus notified Anaconda in writing that: (1) Airbus did not, and would not, accept the terms; (2) the only Airbus employees authorized to accept the terms on Airbus's behalf were legal executives, and other Airbus employees were not authorized; and (3) to the extent Anaconda detected access to its servers it contends is covered by the terms, such access would be inadvertent and should not be interpreted as acceptance of the terms. SOF ¶¶2-4. No Airbus legal executive accepted the 2025 Terms. SOF ¶5.

---

[1] Airbus provides a separate concise statement of undisputed material facts ("SOF") filed contemporaneously with this brief.

## V. LEGAL STANDARDS

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Where the nonmoving party bears the burden of proof on an issue, the moving party's burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

A breach-of-contract plaintiff must prove, *inter alia*, the existence of a valid contract between the parties. *HEALTHeSTATE, LLC v. U.S.*, 168 Fed. Cl. 624, 643 (2023), *aff'd*, No. 2024-1336, 2026 WL 787163 (Fed. Cir. Mar. 20, 2026). In the absence of factual disputes, contract formation is a question of law that may be decided at summary judgment. *Id.*

Courts interpret contracts as a matter of law at summary judgment "where the language at issue is clear and unambiguous." *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 334 (Del. 2012). Clear and unambiguous terms are interpreted "according to their ordinary meaning." *Id.* at 334-35. Parties' disagreement over interpretation does not alone render a contract ambiguous. *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021).

## VI. ARGUMENT

### A. No Contract Was Formed Based on the 2025 Terms

Anaconda's theory of contract formation for the 2025 Terms is based on downloads and "click-throughs" by unnamed individuals or computers allegedly affiliated with Airbus. *E.g.*, D.I. 332, Counterclaims ¶¶41, 97. This theory necessarily sounds in agency, requiring Anaconda to show both the identity of the actor responsible for a download or "click-through" and that the actor had authority to bind Airbus to the terms. *See, e.g.*, *HEALTHeSTATE*, 168 Fed. Cl. at 645 (where contract formation theory was based on installation and access to software, "Plaintiff…bears the burden of showing that such agent had actual authority to bind the government in contract" (internal quotations omitted)); *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 433 F. App'x 842, 843-44 (11th Cir. 2011) (per curiam) (applying agency principles to "click-through" terms).

Anaconda fails to meet its burden of demonstrating that the parties formed a valid contract based on the 2025 Terms. Anaconda's purported evidence of contract formation are logs of IP addresses that downloaded Anaconda software or allegedly "clicked-through" Anaconda's terms of service, recorded via Anaconda's "TOS plugin." Ex. 1, 61-65; Ex. 2, 26-31; D.I. 99 ¶22, 99-2; D.I. 101 ¶140; D.I. 332-7. But there are no records of any Airbus employee or agent downloading or "clicking-through" Anaconda's 2025 Terms—certainly not an employee or agent with

authority to bind Airbus. This is not enough to carry Anaconda's burden and is analogous to *HEALTHeSTATE*, where the plaintiff's failure to establish that any particular agent with authority accepted the terms was "the fatal flaw that destroy[ed] each of Plaintiff's contract formation theories," and pointing to installation and access to software was not enough to carry the plaintiff's burden or create a genuine dispute of material fact. 168 Fed. Cl. at 644-45 (granting summary judgment of no contract formation).

Moreover, Anaconda cannot meet its burden on contract formation because the only actors with authority to bind Airbus (legal executives) expressly informed Anaconda that Airbus did not accept the 2025 Terms. Before the 2025 Terms became effective, Airbus's Vice President of Intellectual Property notified Anaconda that:

- "Airbus does not accept the [terms] and no Airbus entity, employee, or agent can or will accept the [terms] other than as set forth in this letter" (emphasis omitted);
- "Unless you are notified otherwise by letter from the undersigned or a different legal executive at Airbus, no Airbus entity, employee, or agent is authorized to enter into a license agreement or contract with Anaconda"; and
- "Anaconda should not interpret any access by Airbus entities, employees, agents, devices, or IP addresses to Anaconda's services allegedly subject to the [terms]—which would be inadvertent—as an agreement on behalf of Airbus…to be bound by the [terms]."

SOF ¶¶2-4. No legal executive ever entered into any such agreement with Anaconda. SOF ¶5.

Airbus's letter is analogous to the notification in *National Auto Lenders*, where the plaintiff was not bound to online terms because its employees lacked authority. *See* 433 F. App'x at 843-44. There, the defendant posted "click-through" terms on its website that affected the plaintiff's rights in an ongoing dispute between the parties, and the plaintiff notified the defendant that it would not accept the terms, only certain executives were authorized to bind the company to such terms, other employees lacked authority, and any "acceptance" by a user associated with the plaintiff was not acceptance by the company because no user was authorized. *Id.* The court found that an employee using the website and clicking the "acceptance" button did not bind the plaintiff to the terms because "the vigilance with which [plaintiff] guarded against subsequent EULAs affecting its rights in the dispute…makes reliance on any employee's apparent authority regarding that dispute unreasonable." *Id.* at 843.

There are thus no facts in the record to support the threshold contract formation element of Anaconda's breach claim. The Court should grant summary judgment that the parties did not form a contract based on the 2025 Terms, and therefore, Anaconda cannot proceed with a breach counterclaim based on those terms.

### B. The 2024 Terms Cap Potential Damages

The 2024 Terms contain a bilateral limitation of liability, that, by its plain

language, caps Anaconda's contract damages against a party at the fees that party paid to Anaconda in the 12-month period immediately preceding the first claim, or where no fees were paid, $100:

> [T]he maximum aggregate liability of each party under these TOS is limited to:…the fees received by Anaconda for the applicable Anaconda Offering and attributable to the 12 month period immediately preceding the first claim giving rise to such liability; provided if no fees have been received by Anaconda, the maximum aggregate liability shall be one hundred US dollars ($100).[2]

SOF ¶1. "This limitation of liability is cumulative and not per incident" and "applies whether the claims are in warranty, contract, tort (including negligence), infringement, or otherwise, even if either party has been advised of the possibility of such damages." *Id.*[3] The Court should give effect to the plain meaning of this clear and unambiguous provision. *See, e.g.*, *Waters v. Delaware Moving & Storage, Inc.*, 300 A.3d 1, 25-26 (Del. Super. Ct. 2023) (at summary judgment, finding limitation of liability was not ambiguous and interpreting contract language).

Anaconda does not appear to dispute that the limitation-of-liability provision applies to the 2024 Terms. When Airbus raised this provision in discovery correspondence, Anaconda declined to address the provision or explain how it is consistent with Anaconda's apparent claimed contract damages. Ex. 3, 1-2; Ex. 4, 1-

---

[2] "[S]oftware licensed on a perpetual basis" is not relevant here. *See* SOF ¶1.
[3] Copyright claims are excluded. *Id.* ("Except as a result of violation of Anaconda's Intellectual Property Rights…").

2. Anaconda also declined to address this provision in its interrogatory responses, responding to an interrogatory seeking its contentions regarding Airbus's defenses by noting only that damages for breach *of the 2025 Terms* are not limited. Ex. 5, 39; *see also* Ex. 6, 99.

The Court should grant summary judgment that Anaconda's potential damages against each Airbus counterclaim-defendant for alleged breach of the 2024 Terms are capped at the fees that party paid to Anaconda in the 12-month period immediately preceding the first claim, or where no fees were paid, $100.

## VII. CONCLUSION

For the foregoing reasons, Airbus respectfully requests that this Court grant its motion for partial summary judgment on Anaconda's breach of contract counterclaim.

Dated: August 20, 2026

Respectfully submitted,

**FISH & RICHARDSON P.C.**

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (No. 6517)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
sundermeir@fr.com

OF COUNSEL:

Frank E. Scherkenbach (*pro hac vice*)
Adam J. Kessel (*pro hac vice*)
Andrew Pearson (*pro hac vice*)
Alexander M. Pechette (*pro hac vice*)
Kayleigh E. McGlynn (*pro hac vice*)
Daniel H. Wade (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive, Suite 1700
Boston, MA 02210
Telephone: (617) 542-5070
scherkenbach@fr.com;
kessel@fr.com; pearson@fr.com;
pechette@fr.com; mcglynn@fr.com;
wade@fr.com

C. William Bootle (*pro hac vice*)
FISH & RICHARDSON P.C.
1000 Maine Avenue SW, Suite 1000
Washington, D.C. 20024
Telephone: (202) 783-5070
bootle@fr.com

*Attorneys for Plaintiffs-Counterclaim-Defendants Airbus*

**WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 1,711 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the foregoing document. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

Dated: August 20, 2026

*<u>/s/ Grayson P. Sundermeir</u>*
Grayson P. Sundermeir (No. 6517)

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2026, I caused the foregoing to be served via electronic mail upon all counsel of record.

*/s/ Grayson P. Sundermeir*
Grayson P. Sundermeir (#6517)